**Ellynn Greenhaus and Laurie Gersh, derivatively on behalf of themselves and all other similarly situated shareholders of West Hills Day Camp, Inc.**

**v.**

**Kevin Gersh, Gersh Academy, Inc., West Hills Montessori School Inc., and Gersh Management Services Inc.**

# Expert Witness Report

_____

**Report Date: March 18, 2018**



GETTRY MARCUS CPA, P.C.

ACCOUNTING | TAX | CONSULTING



| GETTRYMARCUS | Ellynn Greenhaus, et al. v. Kevin Gersh, et al.<br>Expert Witness Report<br>March 18, 2018 |
|---|---|

## EXPERT WITNESS REPORT

March 18, 2018

Patrick McCormick, Esq.
Campolo, Middleton & McCormick, LLP
4175 Veterans Memorial Highway, Suite 400
Ronkonkoma, NY 11779

Dear Mr. McCormick:

The enclosed report documents my procedures performed and summarizes my opinions regarding the following matter:

**Ellynn Greenhaus and Laurie Gersh, derivatively on behalf of themselves and all other similarly situated shareholders of West Hills Day Camp, Inc.,**

Plaintiffs

v.

**Kevin Gersh, Gersh Academy, Inc., West Hills Montessori School Inc., and Gersh Management Services Inc.,**

Defendants

**Supreme Court of the State of New York**
**County of Suffolk**
**Index Number 605905/2015**

Very Truly Yours,

Andrew P. Ross
CPA, CFE, CVA, PFS

Attachments: Exhibits A through O and Appendices 1 through 16

Case 2:19-cv-04246-JS-ST    Document 132    Filed 09/27/21    Page 3 of 119 PageID #: 52

**GETTRYMARCUS**

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

# TABLE OF CONTENTS

I.    OVERVIEW .................................................................................... 1

1.    Assignment ................................................................................ 1

2.    Opinions ..................................................................................... 2

   2.1    Damages Due to WHDC from the Kevin Gersh Entities and Kevin Gersh ............... 4
   2.2    Adjusted Loan Balance Due to WHDC from the Kevin Gersh Entities and Kevin Gersh ................................................................... 4

3.    Qualifications ............................................................................. 5

4.    Information That Was Considered .............................................. 5

5.    Background ................................................................................ 5

   5.1    West Hills Day Camp, Inc. ......................................................... 5
      5.1.1 WHDC Financial Results ..................................................... 6

   5.2    E. Gersh Realty Corp. .............................................................. 6
      5.2.1 E. Gersh Realty Lease Agreement ...................................... 6

   5.3    Gersh Academy, Inc. ................................................................. 7
   5.4    Comanche Campers .................................................................. 7
   5.5    West Hills Montessori School, Inc. ............................................. 7
      5.5.1 West Hills Montessori Lease ............................................... 7

   5.6    Gersh Management Services, Inc. .............................................. 8
      5.6.1 Management of WHDC by Gersh Management ..................... 8

      5.6.2 Management Fees Charged from Gersh Management ........... 9

      5.6.3 Gersh Management Lease ................................................... 9

   5.7    The Gersh Experience, LLC ...................................................... 10

II.    HIGHLIGHTS OF FINDINGS ......................................................... 11

III.    ANALYSIS AND PROCEDURES ................................................... 14

6.    Lost Net Revenue from Comanche Campers ............................. 15

   6.1    Comanche Revenue ................................................................. 17
      6.1.1 Alternative Calculation of Comanche Revenue .................... 17

   6.2    Comanche Revenue Repayments Received from the Kevin Gersh Entities by WHDC ............................................................ 18
   6.3    Comanche Expenses Paid for by the Kevin Gersh Entities ........ 18

7.    West Hills Montessori Startup Costs Paid by WHDC .................. 18

8.    Additional West Hills Montessori Expenditures Paid by WHDC ... 19

9.    Gersh Academy Expenditures Paid by WHDC ........................... 20

10.    Analysis of Management Fees Paid to Gersh Management and Kevin Gersh ..................................................................... 21

   10.1    Excess Management Fees Paid to Gersh Management and Kevin Gersh ............. 29

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

10.2    Additional Gersh Management Disbursements ........................................ 30

11.    Barn Rent Paid by WHDC ............................................................... 31

12.    Other Non-WHDC Expenditures Paid by WHDC ........................................ 32

12.1    Other Undeterminable Non-WHDC Expenses Paid by WHDC .............................. 32

13.    Kevin Gersh Camper Discounts ........................................................ 33

14.    Barter Activity Paid by WHDC ........................................................ 34

15.    Interest Due for Interest-Free Loans ................................................ 35

16.    Statutory Interest .................................................................. 35

17.    Damages .............................................................................. 36

18.    Loans Between WHDC and the Kevin Gersh Entities/Kevin Gersh Personally ............................................................................ 36

19.    Damages Plus Adjusted Loan Balance Due to WHDC from the Kevin Gersh Entities and Kevin Gersh After Damages and Statutory Interest .................. 37

IV.    ADDITIONAL INFORMATION ............................................................. 38

20.    Compensation ......................................................................... 38

21.    Restrictions ......................................................................... 38

22.    Assumption ........................................................................... 38

Exhibit A - Andrew P. Ross - Curriculum Vitae

Exhibit B - Information That Was Considered

Exhibit C - Summary of Damages Due To WHDC From the Kevin Gersh Entities and Kevin Gersh June 5, 2009 through October 15, 2016

Exhibit D - Adjusted Loan Amount Due to WHDC from the Kevin Gersh Entities and Kevin Gersh

June 5, 2009 through October 15, 2016

Exhibit E - Lost Revenue from Comanche Campers June 5, 2009 through October 15, 2016

Exhibit E(1) - Lost Revenue from Comanche Campers – Alternative Calculation June 5, 2009 through October 15, 2016

Exhibit F - West Hills Montessori Start Up Costs Paid by WHDC June 5, 2009 through October 15, 2016

Exhibit G - Additional West HIlls Montessori Expenditures Paid by WHDC June 5, 2009 through October 15, 2016

Exhibit H - Gersh Academy Expenditures Paid by WHDC June 5, 2009 through October 15, 2016

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Exhibit I - Reconciliation of Total Management Fees Paid to Gersh Management and Kevin Gersh and Excess Management Fees Disbursed June 5, 2009 through October 15, 2016

Exhibit I(1) - Excess Management Fees Paid to Gersh Management and Kevin Gersh June 5, 2009 through October 15, 2016

Exhibit J - Additional Gersh Management Disbursements June 5, 2009 through October 15, 2016

Exhibit K - Barn Rent Paid by WHDC June 5, 2009 through October 15, 2016

Exhibit L - Other Non-WHDC Expenditures Paid by WHDC June 5, 2009 through October 15, 2016

Exhibit M - Kevin Gersh Camper Discounts June 5, 2009 through October 15, 2016

Exhibit N- Interest Due for Interest-Free Loans June 5, 2009 through October 15, 2016

Exhibit N(1) - Calculated of Statutory Interest Due to WHDC for $100,000 Interest-Free Loan June 5, 2009 through October 15, 2016

Exhibit N(2) - Calculated of Statutory Interest Due to WHDC for $200,000 Interest-Free Loan June 5, 2009 through October 15, 2016

Exhibit O - Statutory Interest Calculated through February 28, 2018

APPENDICES

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018                                                      Page 1

## I.      OVERVIEW

### 1.      Assignment

Gettry Marcus CPA, P.C. ("Gettry Marcus") was retained as a financial damages expert by the law firm of Campolo, Middleton & McCormick, LLP to provide litigation support services on behalf of the plaintiffs in the above-referenced matter, currently pending before the Supreme Court of the State of New York, County of Suffolk.

As part of my retention, I was asked to determine the damages due to West Hills Day Camp, Inc. ("WHDC") from the defendants related to the actions and alleged self-dealing of Kevin Gersh, Gersh Academy, Inc., West Hills Montessori School, Inc., and Gersh Management Services, Inc. ("Kevin Gersh", "Kevin Gersh Entities", or "defendants").  These actions are related to the operations and financial reporting of WHDC during the period June 5, 2009 through October 15, 2016 ("Damage Period"). October 15, 2016 represents the last date that I was provided financial information.  My analysis and conclusions are presented below.

My analysis was based on documents, financial data, and other information available to me at the time I prepared my report.  I may update my analysis, as appropriate, should additional information become available, and to respond to any assertions made by the defendants or by any expert witnesses on behalf of the defendants.  For purposes of this assignment, I was asked to assume that the plaintiffs will prevail on their claims.

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018                                                    Page 2

## 2.     Opinions

Based on my analysis, it is my opinion that:

- There are damages due to WHDC from the Kevin Gersh Entities and Kevin Gersh totaling $5,406,105 for the period June 5, 2009 through October 15, 2016[1], which includes damages of $3,838,216 and statutory interest of $1,567,889[2] that was calculated through February 28, 2018.  See Section 2.1 and Exhibit C;

- In addition to the above, the Adjusted Loan Balance due to WHDC from the Kevin Gersh Entities and Kevin Gersh is $145,899 at October 15, 2016, and not the $303,141 that WHDC's general ledger reflects as WHDC owing to the Kevin Gersh Entities and Kevin Gersh.  See Section 2.2 and Exhibit D;

- The total amount owed by the Kevin Gersh Entities and Kevin Gersh to WHDC as of October 15, 2016 totals **$5,552,004** ($3,838,216 + $1,567,889 + $145,899). This amount represents the Damages Due to WHDC from the Kevin Gersh Entities and Kevin Gersh, including Statutory Interest, through February 28, 2018 (Section 2.1) plus the Adjusted Loan Balance Due to WHDC from the Kevin Gersh Entities and Kevin Gersh.  See Exhibit D;

- Kevin Gersh, as the president of WHDC, has decreased the profitability of WHDC through a scheme to divert revenue generated on the WHDC Property to entities solely owned and operated by Kevin Gersh personally;

- Kevin Gersh, as the president of WHDC, conducted a scheme to make disbursements from WHDC bank accounts for expenses for the benefit of the Kevin Gersh Entities and Kevin Gersh personally;

- I have requested the following information that would have a material effect on damages, but which the defendants have refused to produce: (i) full access to WHDC's CampMinder account; (ii) Excel files used to allocate payroll of the employees of WHDC and employees of the Kevin Gersh Entities; (iii) third party payroll records of Gersh Academy, Inc.; (iv) third party payroll records of West Hills Montessori, Inc.; (v) third party payroll records of Gersh Management Services, Inc.; (vi) WHDC's IMS barter statements for all periods; (vii) WHDC's ITEX barter statements for the periods: April 2010, July through September 2012, December 2012 through January 2013, August 2013 through January 2014, and March 2014 through January 2016; (viii) WHDC's NCE barter statements for the periods: February through June 2010, August through September 2010, December 2010 through April 2011, August through December 2011, and January 2014 through December 2015; (ix) WHDC's TradeWorks barter statements for the periods: January 2010 through January 2012, March 2012, May 2012, August 2012, October through December 2012, and January 2014

---

[1]  There may be additional damages for the period after October 16, 2016.
[2]  Statutory interest of $946 per day for each day after February 28, 2018.

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018                                                  Page 3

through present; (x) Gersh Academy, Inc.'s TradeWorks barter statements for the periods: January 2010 through May 2015 and January 2017; (xi) all barter statements for any other barter services used by Gersh Academy, Inc.; (xii) all barter statements for any barter services used by West Hills Montessori, Inc.; (xiii) all barter statements for any barter services used by Gersh Management Services, Inc.; (xiv) the QuickBooks file for Gersh Academy, Inc.; (xv) the QuickBooks file for West Hills Montessori, Inc; (xvi) the QuickBooks file for Gersh Management Services, Inc.; (xvii) financial statements for Gersh Academy, Inc. prepared by a CPA; (xviii) financial statements for West Hills Montessori, Inc. prepared by a CPA; (xix) financial statements for Gersh Management Services, Inc. prepared by a CPA; (xx) federal income tax return of Gersh Academy, Inc. for the years 2010 and 2016; (xxi) federal income tax return of West Hills Montessori, Inc. for the year 2010; (xxii) federal income tax return for Gersh Management Services, Inc. for the year 2010; (xxiii) listing of all government reimbursements received by each entity and to which campers/students they relate, and; (xxiv) all payment request forms maintained by WHDC and the Kevin Gersh Entities, which indicate the entity in which WHDC expenditures were made on behalf of. The Plaintiff's refusal to produce these documents has caused me to make certain assumptions as explained in this report.

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018                                                        Page 4

## 2.1    Damages Due to WHDC from the Kevin Gersh Entities and Kevin Gersh

The following table summarizes the total damages of $5,406,105, including statutory interest, due to WHDC from the Gersh Entities.

| Category | Damage Amount | Statutory Interest | Total Damages |
|---|---|---|---|
| Lost Net Revenue from Comanche Campers | $2,472,090 | $964,525 | $3,436,615 |
| West Hills Montessori Start Up Costs Paid by WHDC | 119,227 | 84,853 | 204,080 |
| Additional West Hills Montessori Expenditures Paid by WHDC | 111,351 | 56,953 | 168,304 |
| Gersh Academy Expenditures Paid by WHDC | 76,657 | 42,144 | 118,801 |
| Excess Management Fees Paid to Gersh Management and Kevin Gersh | 468,338 | 139,443 | 607,781 |
| Additional Gersh Management Disbursements | 266,479 | 116,107 | 382,586 |
| Barn Rent Paid by WHDC | 23,000 | 8,671 | 31,671 |
| Other Non-WHDC Expenditures Paid by WHDC | 184,467 | 94,029 | 278,496 |
| Kevin Gersh Camper Discounts | 116,607 | 33,252 | 149,859 |
| Interest-Free Loans | - | 27,912 | 27,912 |
| **Total** | **$3,838,216** | **$1,567,889** | **$5,406,105** |

My findings are based on the investigations and analysis expressed in this report.

## 2.2    Adjusted Loan Balance Due to WHDC from the Kevin Gersh Entities and Kevin Gersh

The defendants have claimed that the Kevin Gersh Entities and Kevin Gersh are owed in excess of $1 million from WHDC for alleged management fees, including $686,662 listed on a schedule titled "Fees Paid to Gersh Management 2010 – 2014"[3].

As will be explained in this report, this schedule contains various omissions, contradicts statements made by the former controller of Gersh Management and WHDC, and contradicts the accounting records of WHDC maintained in QuickBooks.

According to the accounts in the WHDC QuickBooks file, as of October 15, 2016, WHDC owed $303,141 to the Kevin Gersh Entities and Kevin Gersh. I have made adjustments to this amount in accordance with the assumptions mentioned in this report, and have reduced this aggregate loan balance by $449,040, resulting in a receivable due from the Kevin Gersh Entities and Kevin Gersh to WHDC in the amount of $145,899[4].  This amount is before consideration of Damages Due WHDC from the

---

[3]  Appendix 1, Bates number D-75.
[4]  See Section 18 and Exhibit D for a listing of the QuickBooks general ledger accounts that comprise the $303,141 balance WHDC allegedly owes the Gersh Entities and Kevin Gersh as of October 15, 2016 and my adjustments totaling $449,040, reducing this balance to $145,899 owed to WHDC.

**GETTRYMARCUS**

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 5

Kevin Gersh Entities and Kevin Gersh. Therefore, this $145,899 should be added to the damages of $5,406,105, including statutory interest, to settle all Kevin Gersh Entities and Kevin Gersh amounts due to WHDC.

| Description | Amount[5] |
|---|---|
| Unadjusted Loan Balance Due from WHDC to the Kevin Gersh Entities and Kevin Gersh per WHDC's QuickBooks | $ (303,141) |
| Plus: Gettry Marcus Adjustments | 449,040 |
| Adjusted Loan Balance Due to WHDC from the Kevin Gersh Entities and Kevin Gersh | **$145,899** |

## 3. Qualifications

I, Andrew P. Ross, am a Partner in the Business Valuation & Litigation Services Group of Gettry Marcus. My business experience is concentrated in the areas of forensic accounting, damage calculations, business valuations, bankruptcy, and litigation services associated with a wide array of legal claims. My curriculum vitae is presented in Exhibit A.

## 4. Information That Was Considered

Refer to the attached Exhibit B of this report for a list of information that was considered in the preparation of this Expert Witness Report.

## 5. Background

The following background information relates to this matter.

### 5.1 West Hills Day Camp, Inc.

West Hills Day Camp, Inc. ("WHDC"), incorporated in its current legal form on May 29, 1986[6], is a day camp for children located in Huntington, New York. WHDC leases the camp grounds property from E. Gersh Realty Corp., an entity owned equally by the four WHDC shareholders. There are 200 outstanding shares for WHDC, which are comprised of 20 Class A voting common shares and 180 Class B non-voting common shares. The shares are owned by the following individuals[7]:

| Name | Class A Voting Shares | Class B Nonvoting Shares | Total Shares |
|---|---|---|---|
| Kevin Gersh | 20 | 45 | 65 |
| Ellynn Greenhaus | - | 45 | 45 |
| Laurie Gersh | - | 45 | 45 |
| Roxanne Gersh | - | 45 | 45 |
| **Total** | **20** | **180** | **200** |

---

[5] Amounts in brackets represent amounts owed to the Kevin Gersh Entities and Kevin Gersh from WHDC. Amounts not in brackets represent amounts due to WHDC from the Kevin Gersh Entities and Kevin Gersh.
[6] Per West Hills Day Camp, Inc. 2016 Income Tax Return (1120S), Bates number P-12037.
[7] Information derived from shareholders meeting for West Hills Day Camp, Inc. held on October 2, 2017.

**GETTRYMARCUS**

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 6

### 5.1.1  WHDC Financial Results

The financial condition of WHDC has deteriorated significantly over the past few years. WHDC's revenue and net income for the years 2010 through 2015, as reflected in the WHDC QuickBooks file, has been as follows[8]:

| Year | Revenue | Net Income/(Loss) |
|------|---------|-------------------|
| 2010 | $5,029,338 | $(46,532) |
| 2011 | 4,318,690 | (518,022) |
| 2012 | 3,971,675 | 229,180 |
| 2013 | 4,072,218 | (113,853) |
| 2014 | 4,215,307 | 473,374 |
| 2015 | 2,861,448 | (607,909) |

WHDC's revenue for 2015 was approximately 57% of the revenue in 2010.  In addition to the decreasing revenue, WHDC's net profitability is being further eroded by WHDC paying expenses for the benefit of the Kevin Gersh Entities.

### 5.2  E. Gersh Realty Corp.

E. Gersh Realty Corp. ("E. Gersh Realty") is an entity that is owned 25% by each of the WHDC shareholders, and WHDC pays E. Gersh Realty rent for use of the land.  It is my understanding that E. Gersh Realty owns the WHDC Property (as defined below).

### 5.2.1  E. Gersh Realty Lease Agreement

There was a lease agreement between E. Gersh Realty and WHDC, notarized on January 8, 2008, and effective as of January 1, 2007 ("January 2007 Lease").  The lease is for "certain real property known as tax map parcel nos. 191.00-02.00-025.000 and 191.00-02.00-004.000 located in the Town of Huntington, County of Suffolk, State of New York commonly known as 21 Sweet Hollow Road, Huntington, New York" ("WHDC Property").

In the January 2007 Lease, WHDC is required to pay rent to E. Gersh Realty $30,000 per month, which was later reduced to $20,000 per month in an amendment to the lease dated January 4, 2010.

Section 4 of the January 2007 Lease states that the property "shall be used and occupied by Tenant [WHDC] for day camp purposes only **('Tenant's Use')**" (emphasis in original).  Section 6 of the January 2007 Lease states that "Tenant shall … alter, add to and improve the Property as necessary for Tenant's Use set forth in Section 4 … subject to Landlord's prior written consent, which consent may be withheld in Landlord's sole and absolute discretion."

---

[8] "Revenue" from QuickBooks differs from "Gross Receipts" on WHDC's income tax returns due to line- item classifications.  There are slight, unexplained differences between "Net Income/(Loss)" per QuickBooks and the amount reported on WHDC's income tax returns.

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018                                                              Page 7

### 5.3    Gersh Academy, Inc.

Gersh Academy, Inc. ("Gersh Academy") is a school for children on the autism spectrum.   Gersh Academy is owned solely by defendant Kevin Gersh[9].   Gersh Academy currently has schools in the following locations:

- West Hempstead, New York;
- Hauppauge, New York;
- San Juan, Puerto Rico.

### 5.4    Comanche Campers

Aside from the above locations, Gersh Academy receives revenue for certain campers that attend WHDC during the summer months.   This program is known on some documents as "Gersh Academy at West Hills Day Camp" and on CampMinder, the software system utilized by WHDC to track its campers, as campers in the Comanche bunk ("Comanche Campers") of WHDC.

### 5.5    West Hills Montessori School, Inc.

West Hills Montessori School, Inc. ("West Hills Montessori") is an entity owned solely by Kevin Gersh[10].   West Hills Montessori operates a preschool program ("Montessori Students") on the WHDC Property.

#### 5.5.1  West Hills Montessori Lease

There is a lease agreement between WHDC (defined in lease as "Landlord") and West Hills Montessori (defined in lease as "Tenant"), which is not notarized or dated by the signatories, stated as entered into and effective on September 1, 2010.

The property location identified under the lease was "a portion of the Property and Buildings designated as **West Hills Day Camp- Arts and Craft Building and Nursery Classroom** (Leased Premises)" (emphasis in original).

Some of the key provisions from the Montessori lease[11]:

- West Hills Montessori is to pay WHDC $50,000.04 per year, payable in installments of $4,166.67 per month. "Each installment payment shall be due in advance on the first day of each calendar month during the lease term to Landlord";

- The term is from September 1, 2010 through August 31, 2015, with an option to renew the lease for an additional five year term;

- "Tenant shall make, at **Tenant's expense**, all necessary repairs to the Leased Premises" (emphasis added);

---

[9]  Deposition of Kevin Gersh on February 21, 2017, page 199.
[10] Deposition of Kevin Gersh on February 21, 2017, page 202.
[11] Appendix 2, Commercial Lease Agreement between WHDC and West Hills Montessori.

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018                                                    Page 8

- "Tenant, at **Tenant's expense**, shall have the right, upon obtaining Landlord's consent, to remodel, redecorate, and make additions, improvements and replacements" (emphasis added);

- "Tenant shall be responsible, at **its expense**, for fire and extended coverage insurance on all of its personal property, including removable trade fixtures, located in the Lease Premises" (emphasis added);

- "Tenant and Landlord shall, each at its own expense, maintain a policy or policies of comprehensive general liability insurance with respect to the particular activities … [and] Tenant shall provide Landlord with current Certificates of Insurance evidencing Tenant's compliance with this Paragraph";

- "**Tenant shall pay all charges for water, sewer, gas, electricity, telephone and other services and utilities used by Tenant on the Lease Premises during the term of this lease unless otherwise expressly agreed in writing by Landlord. In the event that any utility or service provided to the Leased Premises is not separately metered, Landlord shall pay the amount due and separately invoice Tenant for Tenant's pro rata share of the charges.**" (emphasis in original).

### 5.6    Gersh Management Services, Inc.

Gersh Management Services, Inc. ("Gersh Management") is an entity owned solely by Kevin Gersh[12].  Phil Caparotta, the former controller of Gersh Management and subsequently WHDC, stated that Gersh Management "didn't have its own business.  All the employees of Gersh Management Services, their sole role was to provide whatever they did, accounting, finance, sales, payroll, whatever it might be, to the other Gersh companies in the Gersh group"[13].

### 5.6.1   Management of WHDC by Gersh Management

For the period in which Mr. Caparotta did work for WHDC while being employed at Gersh Management in 2011, he stated that "during the two months of the summer, I would say, at least 50 percent of my time" was devoted to WHDC matters, and "[a]fter the summer ended … for the next ten months until the next summer began, ten percent of my time, if that.  Minimal amount of my time.  In the summers for a couple years, it was probably 50 percent of my time, and then the non-summers, it was probably five or ten percent of my time.  Was quite small."[14]

According to Mr. Caparotta, roughly "sometime just before July of '11, … Kevin [Gersh] decided that the Gersh – the accounting and finance and other staff of Gersh Management Services was going to take over the accounting for the West Hills Day Camp.  Because there was a woman there, her name was … Karen Bronzert … [s]he

---

[12] Deposition of Kevin Gersh on February 22, 2017, page 318.
[13] Deposition of Philip Caparotta on March 30, 2017, page 10.
[14] Ibid, pages 25 and 26.

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018                                                    Page 9

had been the long time controller, if you will, of [WHDC], and she was leaving that role"[15].

Mr. Caparotta stated that WHDC "didn't require as much of my time as the Kevin Gersh Entities did" because "for ten months out of the year, it's a very minimal business. There isn't much that goes on."[16]

Mr. Caparotta stated that at some point in roughly the fall of 2013, "Kevin and whoever else … decided that they were going to split the – I'm going to call it, 'the back office operations' … instead of where it had been for the last two or so years, where the Gersh [M]anagement people were doing the work for the West Hills Day Camp, they decided to separate again."  He goes on to state that "at that point, I was given the responsibility of just the West Hills Day Camp."[17]

### 5.6.2   Management Fees Charged from Gersh Management

Defendants have claimed that there was an agreement between WHDC and Gersh Management prior to the death of Edward Gersh[18], in which Gersh Management was to receive a management fee from WHDC of $25,000 per month.  Although the amount recorded in each period has varied, and Gersh Management has charged WHDC with costs for Gersh Management employee time in addition to management fees and other charges.

### 5.6.3   Gersh Management Lease

There is a lease between WHDC (defined in lease as "Landlord") and Gersh Management (defined in lease as "Tenant"), which is not notarized or dated by the signatories, stated as entered into and effective on September 1, 2010.[19]

The property made available to the Tenant under the Gersh Management lease was "a portion of the Property and Buildings designated as **West Hills Day Camp- Main Building – 2nd Floor.** (Leased Premises)" (emphasis in original).

Some of the key provisions from the Gersh Management lease:

- Gersh Management is to pay WHDC $50,000.04 per year, payable in installments of $4,166.67 per month. "Each installment payment shall be due in advance on the first day of each calendar month during the lease term to Landlord";

- The term of the lease is from April 1, 2011 through March 31, 2016, with a renewal option for an additional five year term;

---

[15] Ibid, page 13.
[16] Ibid, pages 14 and 15.
[17] Ibid, pages 15 and 16.
[18] Edward Gersh, WHDC's founder and father of the four current shareholders, passed away on June 15, 2014.
[19] See Appendix 3, Commercial Lease Agreement between WHDC and Gersh Management.

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 10

- "During the Lease term, Tenant shall make, at Tenant's expense, all necessary repairs to the Leased Premises. Repairs shall include such items as routine repairs of floors, walls, ceilings, and other parts of the Leased Premises damaged or worn through normal occupancy, except for major mechanical systems or the roof";

- Tenant, at Tenant's expense, shall have the right, upon obtaining Landlord's consent, to remodel, redecorate, and make additions, improvements and replacements of and to all or any part of the Leased Premises from time to time as Tenant may deem desirable";

- "Tenant shall be responsible, at its expense, for fire and extended coverage insurance on all of its personal property, including removable trade fixtures, located in the Lease Premises";

- "Tenant and Landlord shall, each at its own expense, maintain a policy or policies of comprehensive general liability insurance with respect to the particular activities … [and] Tenant shall provide Landlord with current Certificates of Insurance evidencing Tenant's compliance with this Paragraph";

- "**Tenant shall pay all charges for water, sewer, gas, electricity, telephone and other services and utilities used by Tenant on the Lease Premises during the term of this lease unless otherwise expressly agreed in writing by Landlord. In the event that any utility or service provided to the Leased Premises is not separately metered, Landlord shall pay the amount due and separately invoice Tenant for Tenant's pro rata share of the charges.**" (emphasis in original).

### 5.7    The Gersh Experience, LLC

The Gersh Experience, LLC ("Gersh Experience") is an unnamed party in this action, and is an entity owned and controlled by Kevin Gersh[20]. Gersh Experience had operations in Buffalo, New York and Patchogue, New York, and WHDC made disbursements for the benefit of this entity.

---

[20] Deposition of Kevin Gersh on February 22, 2017, page 323.

Case 2:19-cv-05465-JS-ST   Document 132   Filed 08/27/21   Page 16 of 119 PageID #: 44

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018                                                   Page 11

## II.    HIGHLIGHTS OF FINDINGS

Kevin Gersh, as president of WHDC, has decreased the profitability of WHDC through his actions, including:

➢ A scheme to divert revenues generated by WHDC, and for which substantially all the corresponding expenses were paid for by WHDC, to the Kevin Gersh Entities;

➢ WHDC paying for the renovation of the arts and crafts buildings on the WHDC Property for the purpose of establishing West Hills Montessori School Inc., which was expensed or recorded on the books as an asset of WHDC rather than a loan due to WHDC from the Kevin Gersh Entities, and for which the revenue generated by this project goes to just one shareholder of WHDC, Kevin Gersh;

➢ Charging WHDC unsubstantiated management and other fees by the Kevin Gersh Entities;

➢ WHDC paying expenses on behalf of the Kevin Gersh Entities, which in many cases have been expensed on the books and records of WHDC;

➢ Purchasing fixed assets by WHDC on behalf of the Kevin Gersh Entities;

➢ the use of WHDC barter accounts for expenditures of the Kevin Gersh Entities and for Kevin Gersh personally, including approximately $60,000 identified as for the wedding of Kevin Gersh on July 19, 2014;

➢ Failure of the Kevin Gersh Entities to pay timely rent due to WHDC under lease agreements;

➢ WHDC paying Kevin Gersh for the supposed rental of a barn owned by Kevin Gersh for an undetermined business purpose;

➢ the relief of debts owed to WHDC by the Kevin Gersh Entities against amounts purportedly owed to the Kevin Gersh Entities from WHDC for purported management fees that, in some periods, were charged to WHDC in an amount designed to offset obligatory payments that were due to WHDC from the Kevin Gersh Entities under two separate lease agreements;

➢ WHDC making interest-free loans to the benefit of the Kevin Gersh Entities and Kevin Gersh personally;

➢ Authorization of camper discounts to attend WHDC to: (i) individuals who performed personal services for Kevin Gersh (e.g. home construction); and (ii) relatives of individuals employed by the Kevin Gersh Entities (not WHDC).

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018                                                     Page 12

Operation of WHDC Under the Kevin Gersh Entities and Kevin Gersh

Upon the review of the available documents, I have determined that Kevin Gersh, as President[21] of WHDC, has operated WHDC to the detriment of WHDC, and to the benefit of his own corporations and himself personally.

An example of this can be seen in the table below, comparing the 2011 through 2015 distributions of $226,902 received by the shareholders of WHDC to the $4,229,618 of distributions received by Kevin Gersh, the sole shareholder of Gersh Academy, during the same period. Gersh Academy is an entity that partially operates on the WHDC Property. Gersh Academy received diverted revenue from WHDC. In addition, WHDC has paid certain expenditures of Gersh Academy representing amounts relating to both the Gersh Academy activities occurring on the WHDC Property and the other Gersh Academy locations.

| Year | Gersh Academy[22] | | | West Hills Day Camp[23] | | |
|---|---|---|---|---|---|---|
| | Gross Receipts | Net Income per Books | Distributions to Kevin Gersh | Gross Receipts | Net Income (Loss) per Books[24] | Distributions to WHDC Shareholders |
| 2011 | $8,512,140 | $922,287 | $371,025 | $4,582,708 | $(517,588) | $39,727 |
| 2012 | 8,598,755 | 823,414 | 288,481 | 4,275,904 | 229,186 | 73,656 |
| 2013 | 7,540,903 | 1,302,269 | 228,575 | 4,340,659 | (113,855) | 111,119 |
| 2014 | 8,358,043 | 1,911,341 | 1,325,975 | 4,257,455 | 473,375 | 2,400 |
| 2015 | 8,777,008 | 1,516,294 | 2,015,562 | 2,736,277 | (604,425) | - |
| Total | $41,786,849 | $6,475,605 | $4,229,618 | $20,193,003 | $(533,307) | $226,902 |

Internal Controls and Accounting Procedures

I have determined that: (i) the internal controls implemented in WHDC's accounting functions are inadequate; (ii) the books and records of WHDC are inextricably entangled with the Kevin Gersh Entities in a manner that does not appreciate the differences in ownership between the entities; (iii) goods and services that have been purchased by WHDC for the benefit of the Kevin Gersh Entities have been recorded on the books and records of WHDC as expenses and assets of WHDC rather than the books and records of the Kevin Gersh Entities, and; (iv) the accounting records proffered by the defendants have been inadequate to justify the substantial charges from the Kevin Gersh Entities to WHDC.

Accounting Principles and Financial Reporting

Kevin Gersh Entities and Kevin Gersh personally, in the role of custodian of the books and records of WHDC, violated the Consistency Principle of accounting, which states that once you adopt an accounting method, it should be followed from period to period, which is necessary for purposes of comparison between the financial results of various

---

[21] In addition to President, Kevin Gersh appointed himself as Vice President, Secretary, and Treasurer during the October 2, 2017 Shareholders Meeting for West Hills Day Camp Minutes of Meeting, page 21.

[22] For 2011, from the tax return of Gersh Academy, Inc. and Subsidiaries, and for 2012 through 2015, from the tax return of Gersh Academy, Inc.

[23] From the tax returns of West Hills Day Camp, Inc. for the years 2011 through 2015.

[24] Amounts in brackets represent a loss.

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018                                                    Page 13

periods[25].  Examples of the inconsistency in which the books and records of WHDC were maintained include: (i) the use of various loan and payables accounts on WHDC's books and records for the recording of loans between WHDC and entities controlled and owned by Kevin Gersh, which made the task of determining the loan balances between WHDC and the Kevin Gersh Entities/Kevin Gersh nearly impossible without accessing the WHDC QuickBooks file; (ii) the use of multiple income statement and balance sheet accounts to record revenue from the Comanche Campers, and; (iii) the use of <u>five</u> separate accounts to classify the disbursements of funds from WHDC, received from the Comanche Campers, to the Kevin Gersh Entities during the Damage Period.  Such examples added an extra layer of obfuscation in assessing financial transactions between WHDC and the Kevin Gersh Entities.

The sloppiness in the organization of the accounting books, and the recording of expenses and assets on the books of WHDC that were for the benefit of the Kevin Gersh Entities and Kevin Gersh personally, created a situation in which the shareholders were not able to receive accurate, transparent, and consistent financial information, and WHDC was required to hire outside accountant consultants to attempt to organize and attempt to disentangle the books and records of WHDC from those of the Kevin Gersh Entities.

---

[25] See Financial Accounting Standards Board Statement of Financial Concepts No. 2, Qualitative Characteristics of Accounting Information.

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 14

## III.   ANALYSIS AND PROCEDURES

I calculated Damages Due to WHDC from the Kevin Gersh Entities and Kevin Gersh for the period June 5, 2009 through October 15, 2016[26] for the following categories:

| Category | Damage Amount | Statutory Interest | Total Damages | Report Section | Exhibit |
|---|---|---|---|---|---|
| Lost Net Revenue from Comanche Campers | $2,472,090 | $964,525 | $3,436,615 | 6 | E |
| West Hills Montessori Start Up Costs Paid by WHDC | 119,227 | 84,853 | 204,080 | 7 | F |
| Additional West Hills Montessori Expenditures Paid by WHDC | 111,351 | 56,953 | 168,304 | 8 | G |
| Gersh Academy Expenditures Paid by WHDC | 76,657 | 42,144 | 118,801 | 9 | H |
| Excess Management Fees Paid to Gersh Management and Kevin Gersh | 468,338 | 139,443 | 607,781 | 10.1 | I(1) |
| Additional Gersh Management Disbursements | 266,479 | 116,107 | 382,586 | 10.2 | J |
| Barn Rent Paid by WHDC | 23,000 | 8,671 | 31,671 | 11 | K |
| Other Non-WHDC Expenditures Paid by WHDC | 184,467 | 94,029 | 278,496 | 12 | L |
| Kevin Gersh Camper Discounts | 116,607 | 33,252 | 149,859 | 13 | M |
| Interest-Free Loans | - | 27,912 | 27,912 | 15 | N |
| **Total** | **$3,838,216** | **$1,567,889** | **$5,406,105** | | **C** |

In addition to the above damages, the Adjusted Loan Balance Due to WHDC from the Kevin Gersh Entities and Kevin Gersh Before Damages and Statutory Interest is $145,899 at October 15, 2016 (Section 18).

Therefore, the total amount due to WHDC from Kevin Gersh and the Gersh Entities at October 15, 2016, including statutory interest[27] and the adjusted loan balance is $5,552,004 (Section 19).

The following analysis details my procedures, findings and opinions in calculating total damages[28].  See Exhibit C for the Summary of Damages Due to WHDC from Kevin Gersh and the Kevin Gersh Entities for the period June 5, 2009 through October 15, 2016.

---

[26] QuickBooks records were only provided through mid-October 2016 for WHDC, so an analysis of a more current version of the QuickBooks and other financial records may result in further damages.

[27] Statutory Interest is computed through February 28, 2018.  I have calculated statutory interest on the amount due to be $946 for each day thereafter.

[28] Section 6 through Section 19 of my Expert Witness Report should be read in conjunction with Exhibit C through Exhibit O and appendices 1 through 16.

Case 2:19-cv-05846-JS-ST   Document 132   Filed 09/27/21   Page 20 of 119 PageID #: 49

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018                                                    Page 15

### 6.    Lost Net Revenue from Comanche Campers

The plaintiffs have incurred damages of $2,472,090, plus statutory interest of $964,525, totaling $3,436,615, related to the diversion of Comanche Camper revenue from WHDC to Gersh Academy.

WHDC pays almost all of the expenses related to the Comanche Campers, including: salaries[29], transportation, insurance, lunch, and other costs necessary for the generation of revenue from the Comanche Campers.  WHDC also pays for the repair, maintenance, and all expenses related to upkeep and wear-and-tear of the camp grounds and other assets.

By contrast, according to classifications and notations within the WHDC QuickBooks records produced, Gersh Academy may have incurred only $39,479[30] of expenses related to the production of revenue from the Comanche Campers, for the period June 5, 2009 through October 15, 2016, which is dwarfed by the amount expended by WHDC to generate the Comanche Campers revenue over the same period, yet a significant portion of the revenue generated from the Comanche Campers was disbursed from WHDC to Gersh Academy.

The task of quantifying Comanche Camper revenue was made unnecessarily difficult due to multiple general ledger accounts, both income statement accounts and balance sheet accounts, being used (including in the same year) to classify the receipt of Comanche Camper revenue.  In some years, many of the Comanche Camper deferred revenue, revenue, and receivable accounts were mixed with other WHDC accounts through the use of journal entries; all of the aforementioned added an extra layer of obfuscation that made it nearly impossible for a user of the financial information to understand or track these transactions.

In addition, the disbursement of funds for Comanche Revenue from WHDC to Gersh Academy were done in a similarly opaque manner.  For example, in the disbursement of Comanche Revenue from WHDC, five different WHDC QuickBooks general ledger accounts, mixed between income statement accounts and balance sheet accounts, were used to classify (i.e., the general ledger account that is debited when the transaction is either disbursed or moved to accounts payable) the disbursements of Comanche Revenue to the Kevin Gersh Entities during the period June 5, 2009 through October 15, 2016, including the use of multiple accounts in a single year.  See the notes on Exhibit E(1) for the amount classified to each account in each year.

The defendants did not provide full access to CampMinder[31], the software program utilized by WHDC that can be used to identify and track revenue and receipts for each individual camper.  Therefore, I was forced to rely on alternative methods to calculate the damages due to WHDC related to the revenue generated by Comanche Campers.

---

[29] $39,479 in salaries were incurred by Gersh Academy.

[30] See Exhibit E, Column D.

[31] In meetings with representatives of the defendants, I was informed that CampMinder provides a detailed summary, by camper, of the revenue generated by the Comanche Campers.

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018                                    Page 16

The limited access provided on CampMinder identified the number of campers in each "division", although access to the financial reports for these campers was restricted, and as of date of this report, the defendants have removed all access to CampMinder, which limits my ability to determine even the number of campers in certain periods.  According to the information that I was able to retrieve, the "Gersh"[32] division had the following number of campers for the years 2012 through 2016:

- 2012 – 45;
- 2013 – 82;
- 2014 – 97;
- 2015 – 86;
- 2016 – 92.

For the years 2010 and 2011[33], I have assumed that the number of Comanche Campers for those years was 45, the same number as 2012[34].

Due to the aforementioned limitations, to calculate Lost Net Revenue from Comanche Campers for the period June 5, 2009 through October 15, 2016, I:

- Determined the amount of Comanche Revenue (Exhibit E, Column B) for each year based on the number of campers in the Gersh division on CampMinder multiplied by $6,000 per camper[35]. This amount totaled $2,952,000;

- Subtracted $440,431 of Comanche Revenue Repayments Received from Gersh Academy by WHDC (Exhibit E, Column C) based on the QuickBooks and banking records of WHDC;

- Subtracted $39,479 of Comanche Expenses Paid by Gersh Academy (Exhibit E, Column D) based on the QuickBooks records of WHDC;

- Calculated the sum of the previous steps to arrive at Lost Net Revenue from Comanche Campers Before Statutory Interest of $2,472,090 (Exhibit E, Column E);

- Calculated Statutory Interest in the amount of $964,525 (Exhibit E, Column F). To calculate Statutory Interest, I:

  - Multiplied Lost Net Revenue from Comanche Campers Before Statutory Interest by the statutory interest rate in New York State of 9%;

---

[32] Based on discussions with representatives of the defendants, it is my understanding that the Gersh division represents the Comanche bunk.

[33] I did not have information regarding the number of Comanche Campers in 2010 and 2011.

[34] The plaintiffs believe that the 45 campers used in my 2010 through 2012 calculation is grossly understated.  For example, if it were determined that the actual annual camper totals were 80, instead of 45, then damages (before statutory interest) would increase by $210,000 ((80 minus 45) times $6,000) for each of the years 2010 through 2012.  We were denied full access to the CampMinder software that could have clarified this issue.

[35] Tuition varies based on the number of weeks attended by each camper.  I assumed an average of six weeks per camper.  The rates for each year have increased/decreased insignificantly during the Damage Period.

Case 2:19-cv-05846-JS-ST Document 113-2 Filed 09/27/21 Page 22 of 119 PageID #: 50

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 17

- o Divided the above result by the number of days in each year to arrive at a daily rate of interest (e.g. for 2010, $270,000 x 9% / 365 = $66.5753);

- o Multiplied the daily rate of interest yielded above by the number of days between the middle of each respective year (July 1) and the date through which interest was calculated, February 28, 2018 (e.g., for 2010, $66.5753 x 2,799 days = $186,344);

➢ Added Statutory Interest to Lost Net Revenue from Comanche Campers Before Statutory Interest to arrive at Lost Net Revenue from Comanche Campers After Statutory Interest of $3,436,615 (Exhibit E, Column G).

### 6.1 Comanche Revenue

The limitation created by the defendants not producing Gersh Academy accounting records and the financial reports contained in WHDC's CampMinder precluded my ability to exactly determine the amount of Comanche Camper revenue collected by Gersh Academy.

I calculated the Comanche Revenue for the period June 5, 2009 through October 15, 2016. To complete this procedure, I:

➢ Reviewed the WHDC's CampMinder reports to determine the number of Comanche Campers, by year;

➢ Multiplied the number of Comanche Campers in each year by $6,000 per camper;

➢ This resulted in Comanche Revenue of $2,952,000 (Exhibit E, Column B).

### 6.1.1 Alternative Calculation of Comanche Revenue

I created an alternative to the calculation for Comanche Revenue based on the amount of Comanche Camper revenue disbursed from WHDC to Gersh Academy. Under this methodology, the plaintiffs have incurred damages of $1,234,901, plus statutory interest of $502,089, totaling $1,736,990. The weakness in this calculation is that it excludes any revenue for Comanche Campers that was collected by Gersh Academy rather than WHDC, and this method likely understates Comanche Revenue.

I calculated the Disbursements of Comanche Revenue to the Kevin Gersh Entities for the period June 5, 2009 through October 15, 2016. To complete this procedure, I

➢ Reviewed the general ledgers and other information in QuickBooks to determine which disbursements from WHDC to Gersh Academy were related to Comanche Campers. The total amount of Disbursements of Comanche Revenue to the Kevin Gersh Entities for the period totaled $1,714,811 (Exhibit E(1), Column B);

➢ I completed the same steps outlined in Section 6, to arrive at Lost Revenue from Comanche Campers After Statutory Interest – Alternative Calculation of $1,736,990 (Exhibit E(1), Column G).

Case 2:19-cv-05846-JS-ST   Document 132   Filed 09/27/21   Page 23 of 119 PageID #: 54

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 18

### 6.2 Comanche Revenue Repayments Received from the Kevin Gersh Entities by WHDC

I calculated the Comanche Revenue Received from the Kevin Gersh Entities by WHDC for the period June 5, 2009 through October 15, 2016. To complete this procedure, I reviewed the general ledger and other information in QuickBooks to determine which cash receipts from the Kevin Gersh Entities were for revenue from Comanche Campers. The total amount of Comanche Revenue Repayments Received from Gersh Entities by WHDC for the period was $440,431 (Exhibit E, Column C).

### 6.3 Comanche Expenses Paid for by the Kevin Gersh Entities

I calculated the amount of Comanche Expenses that were incurred or paid for by the Kevin Gersh Entities according to the books and records of WHDC. To perform this step I:

> ➢ Reviewed all loan and expense accounts in WHDC's QuickBooks file related to the Kevin Gersh Entities and the Comanche Campers;

> ➢ Included any amounts indicated as being expenses incurred or paid for by the Kevin Gersh Entities related to the Comanche Campers, which totaled $39,479 (Exhibit E, Column D).

### 7. West Hills Montessori Startup Costs Paid by WHDC

The plaintiffs have incurred damages of $119,227, plus statutory interest of $84,853, totaling $204,080, for the startup costs of West Hills Montessori incurred by WHDC.

Aside from the operations of West Hills Montessori occurring exclusively on the same grounds as WHDC, WHDC expended significant capital expenditures in order to establish the Montessori school, yet all of the revenue generated from the Montessori Students benefits just one shareholder of WHDC, Kevin Gersh, and the funds to start up the Montessori school have never been returned to WHDC.

Between approximately 2009 and 2010, WHDC incurred a significant amount of expenditures related to the permitting, design, and remodeling of the Montessori school building. According to information in WHDC's QuickBooks files, such expenditures included filing fees, attorney fees, a feasibility study, a topographic survey, a zoning board of appeals application, carpets, windows, paneling, cabinets, soundproofing, engineering, and other construction costs.

In fact, WHDC either recorded an expense, or in some cases recorded an asset, costs related to the establishment of the Montessori school and other miscellaneous costs related to the ongoing operations of West Hills Montessori rather than treating these amounts as loans due to WHDC from West Hills Montessori.

For the purposes of this report, I have separated damages related to West Hills Montessori into two categories: (i) West Hills Montessori Startup Costs, which relate to

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018                                                    Page 19

two journal entries[36] that <u>expensed to the books of WHDC</u> $119,227 of costs, related to the renovation of the arts and crafts building on the WHDC Property into a school to be operated by West Hills Montessori and (ii) all other Additional West Hills Montessori Expenditures Paid by WHDC (Section 8), totaling $111,351[37].

I calculated West Hills Montessori Startup Costs Paid by WHDC for the period June 5, 2009 through October 15, 2016.  To complete this calculation, I:

➢ Reviewed QuickBooks for transactions relating to the construction and startup costs of West Hills Montessori;

➢ Analyzed two journal entries in the amount of $33,335.10 and $85,892.05 that were dated December 31, 2010 and December 31, 2011, respectively, that classified West Hills Montessori expenditures as expenses of WHDC;

➢ Exported to Excel the individual transactions that make up the two journal entries noted in the preceding step and sorted chronologically;

➢ Totaled the amount of the transactions noted in the previous step to arrive at West Hills Montessori Startup Costs Paid by WHDC Before Statutory Interest of $119,227 (Exhibit F, Column F);

➢ Calculated Statutory Interest for each individual transaction, which totaled $84,853 (Exhibit F, Column G);

➢ Added Statutory Interest to West Hills Montessori Startup Costs Paid by WHDC Before Statutory Interest to arrive at West Hills Montessori Startup Costs Paid by WHDC After Statutory Interest, which totaled $204,080 (Exhibit F, Column H).

## 8.      Additional West Hills Montessori Expenditures Paid by WHDC

The plaintiffs have incurred damages of $111,351, plus statutory interest of $56,953, totaling $168,304, related to additional West Hills Montessori expenditures paid by WHDC.

West Hills Montessori may have violated its lease with WHDC due to a failure to pay rent and the clause of the Montessori Lease stating: "Tenant shall pay all charges for water, sewer, gas, electricity, telephone and other services and utilities used by Tenant on the Lease Premises".  The Montessori Lease also states that "Tenant, at Tenant's expense, shall have the right … to remodel, redecorate, and make additions, improvements and replacements".

---

[36] The first journal entry is dated December 31, 2010, and it reclassified $33,335.10 of a loan due to WHDC from West Hills Montessori into an expense of WHDC.  The second journal entry is dated December 31, 2011, and it reclassified $85,892.05 of transactions that were originally classified in asset account # 1272 WEST HILLS-SCHOOL EXPENSES WIP to an expense of WHDC. See Exhibit F.

[37] See Exhibit G.

Case 2:19-cv-05866-JS-ST   Document 132   Filed 09/27/21   Page 25 of 119 PageID #:53

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 20

I calculated Additional West Hills Montessori Expenditures Paid by WHDC after reviewing the lease agreement between WHDC and West Hills Montessori and the accounting records of WHDC.

To calculate Additional West Hills Montessori Expenditures Paid by WHDC, I:

➤ Analyzed QuickBooks for all other disbursements related to West Hills Montessori that were not included in the two journal entries from Section 7 of this report;

➤ Reviewed the barter statements produced to determine whether any transactions were made on behalf of West Hills Montessori;

➤ Searched for the term "a&c", which stands for "arts & crafts", the building occupied by West Hills Montessori, in QuickBooks to identify disbursements on behalf of West Hills Montessori, and added any relevant transactions to Exhibit G;

  o Based on the memo of a May 9, 2011 transaction that states "427-3058 A&C alarm line", I identified all disbursements made on behalf of this phone number, and added any relevant transactions to Exhibit G;

➤ Searched for the terms "Montessori" and "WHM", which stands for "West Hills Montessori", in QuickBooks to identify disbursements on behalf of West Hills Montessori, and added any relevant transactions to Exhibit G;

➤ Sorted each transaction chronologically;

➤ Totaled the amount of the transactions to arrive at Additional West Hills Montessori Expenditures Paid by WHDC Before Barter Fees and Statutory Interest of $109,114 (Exhibit G, Column F);

➤ Added Barter Fees of $2,237 (Exhibit G, Column G) to Additional West Hills Montessori Expenditures Paid by WHDC Before Barter Fees and Statutory Interest to arrive at Additional West Hills Montessori Expenditures Paid by WHDC Before Statutory Interest of $111,351 (Exhibit G, Column H);

➤ Calculated Statutory Interest for each individual transaction, which totaled $56,953 (Exhibit G, Column I);

➤ Added Statutory Interest to Additional West Hills Montessori Expenditures Paid by WHDC Before Statutory Interest to arrive at Additional West Hills Montessori Expenditures Paid by WHDC After Statutory Interest, which totaled $168,304 (Exhibit G, Column J).

**9.    Gersh Academy Expenditures Paid by WHDC**

The plaintiffs have incurred damages of $76,657, plus statutory interest of $42,144, totaling $118,801 for Gersh Academy expenditures paid by WHDC.

Case 2:19-cv-05846-JS-ST   Document 132   Filed 09/27/21   Page 26 of 119 PageID #: 54

**GETTRYMARCUS**

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018                                                    Page 21

I calculated expenditures paid by WHDC that were treated as expenses of WHDC on the books and records of WHDC, but which were for the benefit of Gersh Academy, including expenditures for Gersh Academy Hauppauge, Gersh Academy West Hempstead, and a Gersh Academy school that existed in Queens.  In addition, I identified other transactions that were disbursed to Gersh Academy, but for which supporting documentation has not been provided.  To calculate Gersh Academy Expenditures Paid by WHDC, I:

➢ Searched QuickBooks for "Gersh Academy", "GA", "Hauppauge", "Queens", "Hempstead", and "Gersh" to identify transactions;

➢ Reviewed WHDC barter statements to determine whether each transaction was incurred on behalf of WHDC or the Kevin Gersh Entities/Kevin Gersh;

➢ Reviewed invoices paid by WHDC for instances in which invoices were billed to Gersh Academy;

➢ Added all identified transactions to an Excel schedule and sorted chronologically;

➢ Identified the classification of each of one of the transactions from the preceding step from WHDC's QuickBooks file;

➢ Removed all transactions that classified the disbursement as a loan due to WHDC, which left only transactions that were expensed or recorded as assets by WHDC, to arrive at Gersh Academy Expenditures Paid by WHDC Before Statutory Interest and Barter Fees of $74,230 (Exhibit H, Column F);

➢ Added Barter Fees of $2,427 (Exhibit H, Column G) to the amount from the preceding step to arrive at Gersh Academy Expenditures Paid by WHDC Before Statutory Interest of $76,657 (Exhibit H, Column H);

➢ Calculated Statutory Interest on each transaction through February 28, 2018 in the amount of $42,144 (Exhibit H, Column I);

➢ Added Statutory Interest to Gersh Academy Expenditures Paid by WHDC Before Statutory Interest to arrive at Gersh Academy Expenditures Paid by WHDC After Statutory Interest in the amount of $118,801 (Exhibit H, Column J).

## 10.    Analysis of Management Fees Paid to Gersh Management and Kevin Gersh

WHDC was charged for management fees that were not supported by a valid management agreement, charged a "management fee" that was designed to offset the rent that was due to WHDC from the Kevin Gersh Entities, and did not record a management fee in the amount of $25,000 per month, which the defendants claim is due for the entire Damage Period, until July 30, 2015.

Case 2:19-cv-05846-JS-ST   Document 113-2   Filed 09/27/21   Page 27 of 119 PageID #: 55

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 22

Inconsistencies Regarding Management Fees Charged to WHDC

On March 23, 2012, Phil Caparotta, the controller of Gersh Management at that time, emailed[38] Valerie Vlacancich, who Mr. Caparotta described at his deposition as "the COO of the entire organization, which would have included the camp"[39], stating "[i]f the rent for GM [Gersh Management] and WHM [West Hills Montessori] ends beginning Nov 1 ( **when WHDC Mgt fee ended**), then an agreement is needed to cancel the leases" (emphasis added).   This email from Mr. Caparotta represents that the management fees from WHDC to Gersh Management <u>ended</u> effective November 1, 2011, months prior to the sending of this email by Mr. Caparotta.

The assertion by Mr. Caparotta that the management fee from WHDC to Gersh Management ended effective November 1, 2011 is further supported by a modification to a journal entry by QuickBooks user "phil" that was originally created by QuickBooks user "Megan".  On November 16, 2011, Megan recorded a transaction for $25,000 with the memo "NOVEMBER MGMT FEES".  On February 14, 2012, "phil" modified the transaction by <u>changing the amount to zero</u>[40].

Additional support for the ending of the management fees from WHDC to Gersh Management effective November 1, 2011 is provided through a document titled "West Hills Day Camp Management Fee to GM (to Offset Rents)"[41], which lists a new management fees from WHDC to Gersh Management amount of $9,167 for the months November 2011 through April 2012.  In this document, with handwritten notations by Mr. Caparotta[42], it is stated that "These Management Fees Begin in November 2011", and for the period November 2011 through April 2012, a management fee of $9,167 was to be recorded on the books of WHDC as an expense and the books of Gersh Management as income.  A handwritten notation by Mr. Caparotta shows a calculation titled "offset rents" with an amount of $5,000 plus $4,166.67 equaling $9,166.67. [43]

In the WHDC QuickBooks file that has been produced, each of the entries listed on "West Hills Day Camp Management Fee to GM (to Offset Rents)" were indeed entered into QuickBooks, all on the same day for the six month period November 2011 through April 2012, by the user "Megan" (presumably Megan Plapp) on April 9, 2012 from approximately 10:07 AM TO 10:10 AM, according to the QuickBooks Audit Trail Report[44], at the amount of $9,167 per month[45], each with a memo stating the month and "MGMT FEES" (e.g., NOVEMBER MGMT FEES); with <u>no accrual for a management fee in any other amounts, except for $9,167 per month, during that period</u>.

---

[38] Appendix 4, Bates number GREENHAUS002606.
[39] Deposition of Philip Caparotta on March 30, 2017, page 116.
[40] Appendix 5, QuickBooks Audit Trail - $25,000, modified October 1, 2011 through December 31, 2011.
[41] Appendix 6, Bates number GREENHAUS002363.
[42] Deposition of Philip Caparotta on March 30, 2017, page 120.
[43] It should be noted that although Mr. Caparotta stated that the management fee was intended to offset the rent due to WHDC from the Kevin Gersh Entities, the monthly amount due for each lease was actually $4,166.67 ($50,000/12), so the total monthly rent due to WHDC from the Kevin Gersh Entities was $8,333.33 ($4,166.67 x 2), but the rental amount recorded in QuickBooks for the years 2012 through 2014 as due to WHDC from Montessori was ten payments of $5,000, which may be the reason for the miscalculation.
[44] The Audit Trail Report in QuickBooks creates an unalterable history of entries and changes made to existing entries, with a timestamp of when each entry or change was made.
[45] Appendix 7, QuickBooks Audit Trail Report, 4/9/2012, $9,167.

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018                                                          Page 23

Additionally, a document produced by the defendants entitled "Fees Paid to Gersh Management 2010 - 2014"[46], reflects that immediately prior to November 1, 2011, a management fee of $25,000 had been paid from WHDC to Gersh Management for October 2011, but for the period November 2011 through December 2012, the "Amount" column lists $9,167. No payments for management fees, according to this same document, were made from WHDC to Gersh Management between the time when a payment was made on October 6, 2011 for the month of October 2011 and March 11, 2013, when a single payment was made to pay the purported management fees of $9,167 per month for the period November 2011 through December 2012.

That WHDC was charged management fees from Gersh Management in the amount of $9,167 for the period November 2011 through December 2012 is further supported by a general journal entry in QuickBooks dated August 31, 2012 with the memo: "Jan-June 2012 Mgt fee @9167 per month"[47]. The journal entry is for $55,002 ($9,167 x 6 months = $55,002). The debit account of this transaction is account # "7398 – OUTSIDE SERVICES-GERSH MGMT PY", and the credit account of this transaction is account # "7115 – BUS TRANSPORTATION".

In his deposition, Mr. Caparotta stated that the intention of the management fee in the amount of $9,167 <u>was to offset the rent that the Kevin Gersh Entities were supposed to be paying WHDC</u>, and that there were "a number of months where Kevin [Gersh] had stopped paying the rent [to WHDC], that we were just recording the payable or receivable on each side, and then they came up with – the management fee was basically the same amount in the opposite direction. So we were recording receivables and payables on both sides, and the net of it would be close to zero. A wash."[48] Mr. Caparotta's recollection is supported by the bank and QuickBooks records, which show no payments for rent from West Hills Montessori or Gersh Management to WHDC for rental expense in 2012.

Despite the contemporary documents, accounting records, and the testimony of Phil Caparotta, the defendants assert on the "Fees Paid to Gersh Management 2010 – 2014" schedule that the actual management fee due for each year was $300,000, which would result in a monthly fee of $25,000, and the defendants claim that for the fourteen month period November 2011 through December 2012, in which Gersh Management charged WHDC a management fee of $9,167 per month, Gersh Management is owed $221,662, the difference between $25,000 per month and $9,167 per month (($25,000 x 14 months = $350,000) less ($9,167 x 14 months = $128,338)).

It should be noted that subsequent to the commencement of this matter by the plaintiffs, the defendants have since reduced amounts that are owed to WHDC from the Kevin Gersh Entities by applying amounts due to WHDC from the Kevin Gersh Entities against the purported management fees of $300,000 annually that WHDC allegedly owes to the Kevin Gersh Entities.

---

[46] Appendix 1, Bates number D-75.
[47] Appendix 8, QuickBooks Transaction Detail – Account # 7398 – OUTSIDE SERVICES-GERSH MGMT PY, January through December 2012.
[48] Deposition of Philip Caparotta on March 30, 2017, page 124.

Case 2:19-cv-05846-JS-ST   Document 132   Filed 09/27/21   Page 29 of 119 PageID #57

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 24

GETTRYMARCUS

QuickBooks Audit Trail Report of the "Jan-June 2012 Mgt fee @9167 per month"

According to the QuickBooks Audit Trail Report, a journal entry was originally created by "phil" on September 14, 2012, at 9:47 AM, dated August 31, 2012[49].  The relevant part of the journal entry follows:

| Account | Debit Amount | Credit Amount | QuickBooks Memo |
|---|---|---|---|
| 2. -ADMINISTRATIVE EXPENSES: 7398·OUTSIDE SERVICES-GERSH MGMT PY | $55,002 | | Reclass prepaid management fees to expense |
| 1.- OPERATING EXPENSES: 7115-BUS TRANSPORTATION | | $55,002 | Reclass prepaid management fees to expense |
| 1.- OPERATING EXPENSES: 7115-BUS TRANSPORTATION | $55,002 | | Reclass prepaid management fees to expense |
| 1100·Prepaid Exp:1140 · Management Fees | | $55,002 | Reclass prepaid management fees to expense |

The effects of the above transaction are: (i) account # 7398, an expense account, is increased by $55,002; (ii) the balance of account # 7115, an expense account, is not affected by this portion of the transaction, and; (iii) account # 1100-Prepaid Exp:1140 – Management Fees, a prepaid asset account, was reduced, which represents that this is a prepaid asset that is being incurred as an expense, and this transaction represents WHDC being contemporaneously charged management fees from Gersh Management at the rate of $9,167 per month, which contradicts the defendants' current position that WHDC was required to pay a management fee of $25,000 to Gersh Management for the entire Damage Period.

According to the same Audit Trail Report, the above journal entry was modified on July 12, 2013 at 11:53 AM by "phil".  The entries from the above table were altered, and those four entries, respectively, were changed to the following:

| Account | Debit Amount | Credit Amount | Memo |
|---|---|---|---|
| 7398·OUTSIDE SERVICES-GERSH MGMT PY | $55,002 | | Jan-June 2012 Mgt fee @9167 per month |
| 7115-BUS TRANSPORTATION | | $55,002 | Jan-June 2012 Mgt fee @9167 per month |
| 7115-BUS TRANSPORTATION | $55,002 | | Jan-June 2012 Mgt fee @9167 per month |
| 1100·Prepaid Exp:1140 · Management Fees | | $55,002 | Jan-June 2012 Mgt fee @9167 per month |

The effects of the modifications made on July 12, 2013 to the above transaction: (i) the prefixes of the account type were removed from the account name, which suggests that two of the accounts were formerly sub-accounts of other accounts, and (ii) the memo was changed to clarify that the transaction represented the expensing of management fees from WHDC to Gersh Management for six months in 2012 at $9,167 per month.

---

[49] Appendix 9, QuickBooks Audit Report – "Jan-June 2012 Mgt fee @9167 per month".

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 25

QuickBooks records have been requested from Gersh Management that would provide additional contemporaneous evidence regarding the accounting treatment and intent of the Management fees from WHDC to Gersh Management, but as of the writing of this report, this request has been refused by the defendants.  If the QuickBooks file were produced, I could opine as to whether and how this transaction was contemporaneously recorded on Gersh Management's records, and whether the accounting records have been altered in any way.

The following is a summary, by year, of the management fees charged to WHDC from Gersh Management and Kevin Gersh.  This information is summarized on Exhibit I.

2009 Management Fees Charged to WHDC

A management fee in the amount of $147,844 was charged to WHDC in 2009.  I was not provided with Paychex payroll reports for 2009; therefore, I do not have enough information regarding this period to determine if there were any damages incurred by WHDC.

2010 Management Fees Charged to WHDC

A management fee of $300,000 was paid to Gersh Management and Kevin Gersh from WHDC in 2010.  The "Fees Paid to Gersh Management 2010 – 2014" schedule (Appendix 1, Bates # D-75) fails to include a transaction in the amount of $10,800 dated December 31, 2010, with the memo "RECLASS KG's PAYROLL", and this transaction brings the total amount in account # 7398 – OUTSIDE SERVICES-GERSH MGMT PY to $300,000 for the year.  Therefore, Gersh Management is owed no fees for 2010.

I was not provided with Paychex payroll reports for 2010; therefore, I cannot determine whether there were any damages incurred WHDC.

2011 Management Fees Charged to WHDC

A management fee of $250,000 was paid to Gersh Management for the period January through October 2011, which is consistent with what was stated in an email by the former controller of Gersh Management and WHDC, Phil Caparotta, regarding the ending the management fees between Gersh Management and WHDC effective November 1, 2011.

For the period November through December 2011, a management fee of $18,334 ($9,167) per month was charged with the intention, according to the former controller of WHDC and Gersh Management, Phil Caparotta, to offset the rent that was due to WHDC from West Hills Montessori and Gersh Management.

The "Fees Paid to Gersh Management 2010 – 2014" schedule fails to include $4,200 paid directly to Kevin Gersh according to payroll records produced[50], which was later reclassified to account # 7398 – OUTSIDE SERVICES-GERSH MGMT PY.

---

[50] Appendix 10, Bates number PAYCHEX000016.

**GETTRYMARCUS**

Ellyn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 26

Therefore, under the assumption that the management fee of $25,000 from WHDC to Gersh Management ended in October 2011, in accordance with Phil Caparotta's email and the accounting records, Gersh Management was overpaid $18,334 for 2011.

<u>2012 Management Fees Charged to WHDC</u>

In 2012, management fees of $100,004 were recorded in QuickBooks[51] and later paid to Gersh Management[52].  For whatever reason, for two of the months in 2012, a fee of $4,167 was recorded rather than $9,167.  As previously mentioned, Phil Caparotta indicated that this management fee was intended to offset the rent that the Kevin Gersh Entities were required to pay WHDC.

Therefore, Gersh Management was overpaid $100,004 for 2012.

<u>2013 Management Fees Charged to WHDC</u>

In 2012, no management fees were charged to WHDC from Gersh Management according to WHDC's QuickBooks file; however, Kevin Gersh did receive a salary of $119,318[53].  It should be noted that this amount was not included on the schedule "Fees Paid to Gersh Management 2010 – 2014", which purports to show management fees owed to the Kevin Gersh Entities by WHDC.

Therefore, Kevin Gersh was overpaid $119,318 for 2013.

<u>2014 Management Fees Charged to WHDC</u>

Gersh Management received a management fee of $150,000 on or around November 5, 2014[54].  The memo for the entry in QuickBooks states: "2014 MANAGEMENT FEE", and there is no indication that this represented only six months as represented on the "Fees Paid to Gersh Management 2010 – 2014" schedule, and <u>there was no accrual on the books and records of WHDC for an additional $150,000</u> that the defendants now claim is due.

It should be noted that the plaintiffs did agree at a meeting of the shareholders of WHDC in October 2014 that Kevin Gersh should receive a fee of $150,000 if WHDC had a net profit of at least $400,000 in 2014, which it did.  Therefore, I have excluded this amount as damages due from the Kevin Gersh Entities.

Additionally, Kevin Gersh received a salary of $5,682 in 2014, and this amount was not included on the schedule "Fees Paid to Gersh Management 2010 – 2014".

Therefore, Kevin Gersh was overpaid $5,682 for 2014.

---

[51] Appendix 8, QuickBooks Transaction Detail – Account # 7398 – OUTSIDE SERVICES-GERSH MGMT PY, January through December 2012.
[52] Check number 15201 dated March 11, 2013.
[53] Appendix 11, Bates number PAYCHEX000690.
[54] WHDC check number 21047.

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 27

### 2015 Management Fees Charged to WHDC

A journal entry was created on July 30, 2015 by "Megan" dated July 1, 2015 to record Management fees from WHDC to Gersh Management at $25,000 per month, for a total of $150,000[55] ($25,000 x six months).  This is the <u>first instance since October 2011, the month that the Management fees from WHDC to Gersh Management "ended" according to Phil Caparotta, the former controller of WHDC and Gersh Management, that the management fees of $25,000 per month were recorded on the books and records of WHDC</u>.  The transaction recording management fees of $25,000 per month on July 30, 2015 for the six months January through June 2015 occurred 1,393 days after the last time a management fee from WHDC to Gersh Management of $25,000 was recorded, which was in October 2011.  The relevant portion of the journal entry dated July 1, 2015 is as follows:

| Account | Debit Amount | Credit Amount | *Memo* |
|---|---|---|---|
| 7398·OUTSIDE SERVICES-GERSH MGMT PY | $150,000 | | 010115-063015 |
| 2000·Accounts Payable | | $150,000 | 010115-063015 |

The effects of the above transaction are: (i) account # 7398, an expense account, is increased by $150,000 and (ii) the balance of account # 2000, Accounts Payable, is increased by $150,000.  This payable was paid to Gersh Management in two checks.[56]  This transaction demonstrates that the management fee of $25,000 per month that the defendants claim is now due to Gersh Management was initially recorded in one transaction on July 30, 2015, for the period January through June 2015, after the filing of this action, demonstrating that the management fee of $25,000 was not charged contemporaneously after the period October 2011, which agrees with the statement of the former controller of Gersh Management and WHDC that the management fee "ended" effective November 1, 2011.

For each of the months of July through December 2015, a journal entry was created by the QuickBooks user "Megan" that debited account number 7398, OUTSIDE SERVICES-GERSH MGMT PY, for $25,000 and credited account number 2000, Accounts Payable, for $25,000[57].

The total amount of management fees charged to WHDC in 2015 was $300,000, and $225,000 of this amount was disbursed to Gersh Management.  Much of the remaining $75,000 ($300,000 - $225,000) was used to offset moneys due to WHDC for Kevin Gersh's personal expenses and expenditures made by WHDC on behalf of the Kevin Gersh Entities.

Therefore, Gersh Management was overpaid $225,000 for 2015.

---

[55] Appendix 12, QuickBooks Audit Trail - $150,000 Journal Entry entered July 30, 2015.
[56] Check number 22349 dated March 30, 2016 and check number 22605 dated June 28, 2016.
[57] Appendix 13, QuickBooks Audit Trail - $25,000 Journal Entries affecting account # 7398 OUTSIDE SERVICES-GERSH MGMT PY, entered January 1, 2015 through January 6, 2016.

Case 2:19-cv-05846-JS-ST    Document 132    Filed 09/27/21    Page 33 of 119 PageID #:

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 28

<u>2016 Management Fees Charged to WHDC</u>

A journal entry was created by the QuickBooks user "Megan" for $25,000 for the months of January through September 2016, totaling $250,000, for the period in which I was provided QuickBooks data.

As of October 15, 2016, none of this amount was disbursed to Gersh Management.

<u>Dispute Over Handwriting</u>

There is a purported management agreement between Gersh Management and WHDC titled "Management Agreement"[58] with a handwritten effective date as of October 19, 2009 in which the Management fees from WHDC to Gersh Management are to be $300,000 per year ($25,000 per month).

In her deposition, Laurie Gersh, a 25% shareholder of WHDC, a plaintiff in this matter, the former director/co-director of WHDC from approximately 1988 through approximately 1996[59], and the daughter of Edward Gersh, states regarding the initials of Edward Gersh that appear to be on the document: "this 'EG, EG, EG, EG,' those are not my father's signatures … that's not his handwriting. That wasn't the way he signed his initials … I am not unfamiliar with my father's [initials] … [w]hat I see does not look like my father's initials, and I don't know how Kevin Gersh signs his."[60]

I am not a handwriting expert, and have no opinion regarding the legitimacy of the document entitled "Management Agreement" [61], but I can state that from the period October 7, 2011 through July 29, 2015, there were <u>no entries</u>[62] <u>or accruals on WHDC's books and records</u> to indicate that there was indeed a management fee of $25,000 due from WHDC to Gersh Management in effect, and this is consistent with Phil Caparotta's email on March 23, 2012, in which he stated that the management fees from WHDC to Gersh Management "ended" effective November 1, 2011.

Additionally, I have been informed by the plaintiffs that they were unaware of the purported management agreement until after the commencement of this matter, and no mention of this agreement was made at the meeting of the shareholders in or about October 2014, when discussions were ongoing amongst the shareholders regarding the compensation of Kevin Gersh for the management of WHDC.

For the purposes of calculating damages, I have been asked to assume: (i) that the management fees from WHDC to Gersh Management ended effective November 1, 2011, as stated by Philip Caparotta in his March 23, 2012 email; (ii) the management fees from WHDC to Gersh Management for the period January 2010 through October 2011 should be excluded from damages due to WHDC; (iii) the management fee for 2014 of $150,000 paid to Gersh Management from WHDC should be excluded from

---

[58] Appendix 14, Bates number D-80.
[59] Deposition of Laurie Gersh taken on January 20, 2017, page 37.
[60] Deposition of Laurie Gersh taken on January 20, 2017, pages 145 and 147.
[61] Appendix 14, Bates number D-80.
[62] With the exception of a $25,000 entry for November 2011 that was created on November 16, 2011, and subsequently altered on February 14, 2012 to change the amount to zero dollars.

Case 2:19-cv-05246-JS-ST    Document 132    Filed 09/27/21    Page 34 of 119 PageID #: 62

**GETTRYMARCUS**

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 29

damages; (iv) salary received by Kevin Gersh and management fees paid to Kevin Gersh are to be considered the same; and (v) all other disbursements to Gersh Management for services and other miscellaneous charges are to be reclaimed by WHDC.

See Exhibit I for a Reconciliation of Total Management Fees Paid to Gersh Management and Kevin Gersh and Excess Management Fees Paid to Gersh Management and Kevin Gersh, and see Exhibit I(1) for the individual transactions comprising the excess management fees.

### 10.1   Excess Management Fees Paid to Gersh Management and Kevin Gersh

The plaintiffs have incurred damages of $468,338, plus statutory interest of $139,443, totaling $607,781 for excess management fees paid to Gersh Management and Kevin Gersh.

I calculated Total Management Fees Paid to Gersh Management and Kevin Gersh.  To perform this calculation, I:

- ➢ Searched QuickBooks and disbursement records to determine all disbursements to Gersh Management;

- ➢ Quantified the amount of Management Fees Paid to Gersh Management by reviewing account # 7398 – OUTSIDE SERVICES-GERSH MGMT PY to arrive at Management Fees Paid to Gersh Management of $1,368,338 (Exhibit I, Column B);

- ➢ Quantified the amount of salary received by Kevin Gersh, excluding amounts included in the previous step, by reviewing Paychex records, to arrive at Kevin Gersh Salary of $125,000 (Exhibit I, Column C);

- ➢ Added the results of the previous two steps to arrive at Total Management Fees Paid to Gersh Management and Kevin Gersh of $1,493,338 (Exhibit I, Column D);

- ➢ Calculated the amount of management fees that Gersh Management and Kevin Gersh should have received based on my assumptions to arrive at Expected Management Fees in the amount of $700,000 (Exhibit I, Column E);

- ➢ Subtracted Expected Management Fees from Total Management Fees Paid to Gersh Management and Kevin Gersh to arrive at Excess Management Fees Before Adjustments in the amount of $793,338 (Exhibit I, Column F);

- ➢ Analyzed cash disbursements to determine whether each amount listed as Excess Management Fees Before Adjustments was disbursed by WHDC;

Case 2:19-cv-05846-JS-ST Document 113-2 Filed 09/27/21 Page 35 of 119 PageID #:63

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 30

➢ Determined the periods in which management fees were accrued, but not disbursed, arriving at Adjustments in the amount of negative $325,000[63] (Exhibit I, Column G);

➢ Added Excess Management Fees Before Adjustments to Adjustments to arrive at Excess Management Fees Paid to Gersh Management and Kevin Gersh in the amount of $468,338 (Exhibit I, Column H)  This amount is carried forward to Exhibit I(1);

➢ Created a schedule of each individual transaction representing the $468,338 of Excess Management Fees Paid to Gersh Management and Kevin Gersh (Exhibit I(1), Columns A through F);

➢ Calculated Statutory Interest on each individual transaction through February 28, 2018 to arrive at Statutory Interest of $139,443 (Exhibit I(1), Column G);

➢ Added Statutory Interest to Excess Management Fees Paid to Gersh Management and Kevin Gersh Before Statutory Interest to arrive at Excess Management Fees Paid to Gersh Management and Kevin Gersh After Statutory Interest in the amount of $607,781 (Exhibit I(1), Column H).

### 10.2   Additional Gersh Management Disbursements

The plaintiffs have incurred damages of $266,479, plus statutory interest of $116,107, totaling $382,586 for additional Gersh Management disbursements.

In addition to management fee charges, WHDC was also billed for a variety of other charges from Gersh Management, including charges for Gersh Management employees that were for some unknown reason not included in the purported management services provided by Gersh Management.

According to the deposition of Philip Caparotta[64], Excel documents were maintained by the Kevin Gersh Entities related to the allocation of payroll, but it is unclear how many employees these records were maintained for.

A request for third party and internal payroll records, in their native form, from Gersh Management to test the legitimacy of transactions and to determine whether the allocation of payroll matches the known fact patterns has been made, but as of the writing of this report, the defendants have refused this request.

I calculated Additional Disbursements to Gersh Management from WHDC.  To perform this calculation, I:

➢ Searched QuickBooks and disbursement records to determine all disbursements to Gersh Management;

➢ Created an Excel spreadsheet listing each transaction;

---

[63] These transactions are dealt with on Exhibit D.
[64] Deposition of Philip Caparotta on March 30, 2017, page 19.

**GETTRYMARCUS**

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 31

- ➢ Eliminated transactions due to assumptions referred to in this report;

- ➢ Eliminated transactions that were recorded on Exhibit I(1);

- ➢ Identified the classification and memo of each transaction according to QuickBooks;

- ➢ Totaled the transactions to arrive at Additional Disbursements to Gersh Management Before Statutory Interest in the amount of $266,479 (Exhibit J, Column F);

- ➢ Calculated Statutory Interest on each individual transaction through February 28, 2018 to arrive at Statutory Interest of $116,107 (Exhibit J, Column G);

- ➢ Added Statutory Interest to Additional Disbursements to Gersh Management Before Statutory Interest to arrive at Additional Disbursements to Gersh Management After Statutory Interest of $382,586 (Exhibit J, Column H).

## 11.  Barn Rent Paid by WHDC

The plaintiffs have incurred damages of $23,000, plus statutory interest of $8,671, totaling $31,671, for rent paid to Kevin Gersh for an alleged rental of his barn.

There were payments made by WHDC to Kevin Gersh for the alleged rental of a barn owned by Kevin Gersh over the period of 23 months.  There is no known business purpose for WHDC to make these disbursements.

I calculated damages related to the disbursement of funds for the alleged rental of a barned owned by Kevin Gersh.  To calculate damages, I performed the following:

- ➢ Searched QuickBooks for all transactions related to "barn";

- ➢ Identified the QuickBooks classification of each of the entries (account # 7471 – RENT-BARN 3SHR);

- ➢ Created an Excel schedule of each transaction, sorted chronologically;

- ➢ Totaled the disbursements from WHDC to Kevin Gersh for Kevin Gersh's barn to arrive at Barn Rent Paid by WHDC Before Statutory Interest in the amount of $23,000 (Exhibit K, Column F);

- ➢ Calculated Statutory Interest on each transaction from the date of the transaction through February 28, 2018 to arrive at Statutory Interest of $8,671 (Exhibit K, Column G);

- ➢ Added Statutory Interest to Barn Rent Disbursements Before Statutory Interest to arrive at Barn Rent Paid by WHDC After Statutory Interest in the amount of $31,671 (Exhibit K, Column H).

Case 2:19-cv-05846-JS-ST   Document 132   Filed 09/27/21   Page 37 of 119 PageID #: 65

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018                                                                    Page 32

## 12.    Other Non-WHDC Expenditures Paid by WHDC

The plaintiffs have incurred damages of $184,467, plus statutory interest of $94,029, totaling $278,496, for other non-WHDC expenditures paid by WHDC.

I identified other transactions of a personal nature, or for the benefit of another one of Kevin Gersh's entities.  Many of these transactions were expensed by WHDC; there also were certain barter transactions in which the QuickBooks classification could not be determined due to the deficient WHDC accounting records maintained by Kevin Gersh and the Kevin Gersh Entities.  To identify these transactions, I performed the following:

➢ Analyzed general ledgers, credit card charges, barter statements, and QuickBooks to determine the nature and classification of certain transactions;

➢ Identified any transactions, along with the associated barter fees, of a personal nature, many of which were identified as being for the benefit of Kevin Gersh, or transactions that were indicated as being on behalf of another entity owned by Kevin Gersh, and added these to the schedule to arrive at Other Non-WHDC Expenditures Paid by WHDC Before Barter Fees and Statutory Interest in the amount of $169,091 (Exhibit L, Column F);

➢ Added Barter Fees of $15,376 (Exhibit L, Column G) to Other Non-WHDC Expenditures Paid by WHDC Before Barter Fees and Statutory Interest to arrive at Other Non-WHDC Expenditures Paid by WHDC Before Statutory Interest in the amount of $184,467 (Exhibit L, Column H), which included a reduction in the amount of $68,459.99[65] and a reduction of statutory interest in the amount of $11,478.77 for a repayment made by Kevin Gersh;

➢ Calculated Statutory Interest on each individual transaction, including each associated barter fee, to arrive at Statutory Interest in the amount of $94,029 (Exhibit L, Column I);

➢ Added Statutory Interest to Other Non-WHDC Expenditures Paid by WHDC Before Statutory Interest to arrive at Other Non-WHDC Expenditures Paid by WHDC After Statutory Interest in the amount of $278,496 (Exhibit L, Column J).

### 12.1    Other Undeterminable Non-WHDC Expenses Paid by WHDC

Aside from significant expenditures made by WHDC for the benefit of the Kevin Gersh Entities and Kevin Gersh personally that are expressed in this report, there are also an undeterminable amount of expenses that may be hidden within the books and records of WHDC.

---

[65] A transaction dated 8/31/2014 in the amount of $64,390.09 related to Kevin Gersh's personal use of the barter accounts was recorded that debited account # 1275.1 – EXCHANGE – KG.  This indicates that transactions in this amount were identified as personal; however, no detail was provided regarding which transactions the $64,390.09 consists of.  Therefore, I did not make attempt to determine which transactions this affected, and included both the transactions that are likely part of the $64,390.09 and a repayment of $68,459.99 related to these expenditures made by Kevin Gersh on or about 4/19/2016 on Exhibit L, the latter as a reduction, including a corresponding reduction in statutory interest.

Case 2:19-cv-05246-JS-ST Document 132 Filed 09/27/21 Page 38 of 119 PageID #66

GETTRYMARCUS | | | Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018                                                    Page 33

For example, in a transaction dated May 26, 2015, WHDC expensed $1,554, plus a barter fee in the amount of $155.40, to account # 7065 – ADVERTISING & MARKETING with the QuickBooks memo of "HALF PAGE VERTICLE [sic] AD 6/5, 6/12", and the transaction had a barter statement description of "Great Neck News, Manhasset Times, Roslyn Times, Half Page Vertical, 2x, Insertion Dates: 6/5, 6/12".

To verify whether these advertisements for WHDC were made, as represented in the QuickBooks records of WHDC, I reviewed the June 5, 2015 issues of both Great Neck News and Roslyn Times.  In both instances, an advertisement for West Hills Academy, an entity owned by Kevin Gersh, was advertised[66] rather than WHDC.

This finding, with no indication in the QuickBooks accounting records that this transaction that was <u>expensed</u> by WHDC was in fact made on behalf of an entity owned by Kevin Gersh, demonstrates the difficulty in quantifying the full extent of damages due from the defendants, and therefore, my damages may understate the actual financial harm caused to WHDC by the Kevin Gersh Entities and Kevin Gersh.

These two instances were included in my damage calculation, however, due to the extensive commingling of the accounting records of WHDC and the Kevin Gersh Entities, I cannot account for similar transactions that may have occurred.

The defendants maintain payment request forms for WHDC that indicate which entity each expenditure was made on behalf of, and this form is attached to individual invoices.  A request has been made to defendants to review these documents, but as of the date of this report, this request has not been agreed to by the defendants.

Additionally, the failure of the defendants to provide a significant number of WHDC barter statements may further understate damages.

## 13.    Kevin Gersh Camper Discounts

The plaintiffs have incurred damages of $116,607, plus statutory interest of $33,252, totaling $149,859, for discounts provided to customers for WHDC tuition by Kevin Gersh for (i) attending West Hills Montessori; (ii) personal barter transactions and other personal relationships, and; (iii) employees of the Kevin Gersh Entities.

Discounts have been provided to various individuals to attend camp at WHDC.

I identified transactions in account numbers 2090.6 – DISCOUNTS – KG and 5050 – WH MONTESSORI DISCOUNTS that indicated the transactions were of a personal nature or were on behalf of employees from one of the Kevin Gersh Entities.  To calculate damages related to WHDC camper discounts provided by Kevin Gersh, I:

- ➢ Analyzed the transactions and associated QuickBooks memos of the transactions included in account numbers 2090.6 – DISCOUNTS – KG and 5050 – WH MONTESSORI DISCOUNTS;

---

[66] See Appendix 15 and Appendix 16, advertisements for West Hills Academy. Retrieved from https://issuu.com/theislandnow1/docs/20150605_xbs_gnn_, page 60 and https://issuu.com/theislandnow1/docs/20150605_xbs_rln_, page 60 on February 8, 2018.

Case 2:19-cv-05246-JS-ST    Document 132    Filed 09/27/21    Page 39 of 119 PageID #:67

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 34

➢ Identified transactions in which the QuickBooks memo indicated the discount was personal in nature (e.g., "PERSONAL BARTER FOR HOME CONSTRUCTION") and added these transactions and any transactions for the same customer to a schedule;

➢ Identified transactions in which the QuickBooks memo, or the customer name, indicated that the discount was on behalf of a Kevin Gersh Entity (e.g., "BARTER FOR IT WORK (NETWORK HANDLERS – GA COMPANY)") and added these transactions and any transactions for the same customer to a schedule;

➢ Totaled the transactions from the prior two steps, which resulted in Kevin Gersh Camper Discounts Before Statutory Interest in the amount of $116,607 (Exhibit M, Column D);

➢ Calculated Statutory Interest on each individual transaction, including each associated barter fee, to arrive at Statutory Interest in the amount of $33,252 (Exhibit M, Column E);

➢ Added Statutory Interest to Kevin Gersh Camper Discounts Before Statutory Interest to arrive at Kevin Gersh Discounts After Statutory Interest in the amount of $149,859 (Exhibit M, Column F).

## 14.    Barter Activity Paid by WHDC

The barter accounts of WHDC were used to the benefit of the Kevin Gersh Entities and Kevin Gersh personally.

I calculated damages due to WHDC related to barter account activity.  There are four barter associations utilized by WHDC: International Monetary Systems, ITEX, National Commerce Exchange ("NCE"), and TradeWorks.

As of the writing of this report, I have not been provided with a significant amount of barter statements, including all statements from International Monetary Systems; therefore, damages related to barter activity are likely incomplete and possibly understated.

To determine damages related to barter activity, I:

➢ Reviewed all barter statements for activity of a personal nature, or for the benefit of another entity;

➢ Searched for any transactions flagged in the previous step in WHDC's QuickBooks file to determine the classification and whether any information regarding the transaction was included in a QuickBooks memo;

➢ Reviewed invoices when available;

➢ Recorded the amount and associated barter fee for each identified barter transaction;

Case 2:19-cv-05846-JS-ST    Document 132   Filed 09/27/21   Page 40 of 119 PageID #:68

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018                                                          Page 35

GETTRYMARCUS

> Added any identified transactions, along with the associated barter fee, to the exhibit related to each respective damage category (e.g., there was a transaction for $19,050 on 3/16/2011 with the QuickBooks memo: "GA: NCE furniture 2^nd floor office (INV#35)"; this transaction has been included on Exhibit H, Gersh Academy Expenditures Paid by WHDC).

## 15.    Interest Due for Interest-Free Loans

The plaintiffs have incurred damages of $27,912 for interest-free loans authorized by and for the benefit of Kevin Gersh, calculated utilizing the statutory interest rate.

In his running of WHDC, Kevin Gersh has authorized numerous loans to the Kevin Gersh Entities and himself personally.

The nature of the loans did not contain the characteristics of a typical third-party loan, including a complete absence of interest charged on any of these loans.  This activity further demonstrates that the cash balances of WHDC are being treated as though they are a personal bank to the Kevin Gersh Entities and Kevin Gersh rather than assets belonging to all of the shareholders of WHDC.

I calculated damages due to WHDC related to the use of WHDC's bank accounts to fund loans that were unrelated to the operations of WHDC, and were for the benefit of the Kevin Gersh Entities and Kevin Gersh Personally.  To calculate damages, I:

> Identified loans taken by the Kevin Gersh Entities;

> Analyzed loan and income accounts to determine whether interest was paid on any of the identified loans;

> Scheduled out the disbursements and repayments of each loan, by date, to determine the loan balance at each specific date;

> Calculated the Number of Days that each respective balance was outstanding (e.g., Exhibit N(2), Column D) by calculating the number of days between each change in Loan Balance;

> Calculated Statutory Interest by taking the Loan Balance multiplied by the rate of Statutory Interest, divided by the number of days in the year;

> Multiplied the result from the preceding step by the Number of Days to arrive at Statutory Interest Due for Interest-Free Loans of $27,912 (Exhibit N, Column G);

> This amount was carried forward to Exhibit O, Statutory Interest.

## 16.    Statutory Interest

I calculated simple interest for the damages due to WHDC from the defendants for the period June 5, 2009 through October 15, 2016.  I used a 9% simple interest rate to

Case 2:19-cv-05346-JS-ST   Document 132   Filed 09/27/21   Page 41 of 119 PageID #: 69

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 36

arrive at the interest amount.  See Exhibit O for a summary of Statutory Interest by category.

## 17.    Damages

I calculated the damages due to WHDC from the defendants for the Damage Period June 5, 2009 through October 15, 2016 for a total of $5,406,105 including Statutory Interest in the amount of $1,567,889.  See Exhibit C for a summary by damage category.

## 18.    Loans Between WHDC and the Kevin Gersh Entities/Kevin Gersh Personally

I made adjustments to the loan accounts between WHDC and the Kevin Gersh Entities/Kevin Gersh totaling $449,040 for (i) the reversal of journal entries that eliminated amounts due to WHDC by applying these amounts against unsubstantiated management fees and other amounts charged to WHDC by the Kevin Gersh Entities; (ii) the reversal of unsubstantiated management fees and other amounts charged to WHDC, and; (iii) the expensing of amounts due to WHDC from the Kevin Gersh Entities. The result of the adjustments is that WHDC is owed $145,899 from the Kevin Gersh Entities/Kevin Gersh rather than the $303,141 represented on WHDC's accounting records as being owed by WHDC to the Kevin Gersh Entities/Kevin Gersh.

While analyzing the loan accounts between WHDC and the Kevin Gersh Entities, it became apparent that the amounts that the Kevin Gersh Entities owed WHDC were being reduced in ways other than cash repayments:  (i) there were numerous times when amounts owed to WHDC from the Kevin Gersh Entities were recorded as a WHDC expense, and most of the examples are included in the damages analyzed in other sections of this report, and (ii) many loan accounts of the Kevin Gersh Entities were systematically collapsed into a single loan account due to WHDC from Gersh Academy, and this account was then reduced by $94,336.52 in a series of transactions that applied this amount against disputed management fees and other charges purportedly owed to the Kevin Gersh Entities from WHDC.

To calculate the proper loan balance, I:

➢ Analyzed WHDC's QuickBooks file and identified loan accounts between WHDC and the Kevin Gersh Entities/Kevin Gersh (Exhibit D, Rows A through G), resulting in an Unadjusted Loan Amount Due from WHDC to the Kevin Gersh Entities and Kevin Gersh per WHDC's QuickBooks of $303,141 (Exhibit D, Row H);

➢ Identified accounting journal entries that reduced loans owed to WHDC from the Kevin Gersh Entities/Kevin Gersh by: (i) recording it as an expense of WHDC (excluding any amounts already included in other damage analysis sections) or (ii) applying it against purported management fees and other charges from the Kevin Gersh Entities (Exhibit D, Rows I through Q).  The total of the identified

GETTRYMARCUS

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 37

transactions was $449,040 (Exhibit D, Row R), these are the Total Adjustments to Loan Balances;

- Added the Total Adjustments to Loan Balances (Exhibit D, Row R) to the Unadjusted Loan Amount Due from WHDC to the Kevin Gersh Entities and Kevin Gersh per WHDC's QuickBooks of ($303,141) (Exhibit D, Row H), resulting in Adjusted Loan Amount Due to WHDC from the Kevin Gersh Entities and Kevin Gersh Before Damages and Statutory Interest of $145,899 (Exhibit D, Row S).

**19.   Damages Plus Adjusted Loan Balance Due to WHDC from the Kevin Gersh Entities and Kevin Gersh After Damages and Statutory Interest**

In conclusion, the following amounts are owed to WHDC from the Kevin Gersh Entities and Kevin Gersh as of October 15, 2016, with statutory interest calculated through February 28, 2018:

| Description | Amount | Exhibit |
|---|---|---|
| Damages Before Statutory Interest | $3,838,216 | C |
| Statutory Interest | 1,567,889 | O |
| Adjusted Loan Amount Due to WHDC from the Kevin Gersh Entities | 145,899 | D |
| **Total Amount Due to WHDC** | **$5,552,004**[67] | **D** |

---

[67] I have calculated statutory interest on the amount due to WHDC to be $946 for each day thereafter.

**GETTRYMARCUS** ▌▌▌ Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Expert Witness Report
March 18, 2018

Page 38

## IV.   ADDITIONAL INFORMATION

### 20.    Compensation

I am currently being compensated at an hourly rate of $450 per hour. Other professional members of my firm providing assistance in this matter are invoiced at rates that range from $125 to $565 per hour. My compensation is not contingent on the outcome of this litigation.

### 21.    Restrictions

I have not audited the documents used to prepare the aforementioned report or exhibits in accordance with standards promulgated by the American Institute of Certified Public Accountants and, accordingly, express no opinion on them.

This report is intended solely for use in this matter and should not be used for any other purpose or distributed to any other parties without the written consent of Gettry Marcus.

### 22.    Assumption

In performing my analysis I made the following assumption:

The validity of this report is predicated on the extent to which full and complete disclosure was made to me in discussions with management and in presenting the documents that was analyzed. To my knowledge, no additional events or changes to the information submitted to Gettry Marcus has occurred since it was provided to me. I reserve the right to update this report should I become aware of any additional information.

Sincerely,

Andrew P. Ross
CPA, CFE, CVA, PFS

# Exhibit A -
## Andrew P. Ross - Curriculum Vitae

**GETTRYMARCUS**  ALWAYS LOOKING DEEPER.™                      **CURRICULUM VITAE**

## ANDREW P. ROSS
CPA, CFE, CVA, PFS
*Partner*
T. 516.364.3390 x246 |   E. aross@gettrymarcus.com

Andrew P. Ross is a Partner at Gettry Marcus, CPA, P.C. and is a member of the firm's Business Valuation & Litigation Services Group. Mr. Ross is a Certified Public Accountant, Certified Fraud Examiner, Certified Valuation Analyst and Personal Financial Specialist.  With over 30 years of experience, Mr. Ross provides various litigation, audit and tax services to his clients. His experience includes stakeholder disputes; accountants professional liability litigation; marital dissolutions; business valuations and fraud & forensic accounting investigations.

## LICENSES AND CERTIFICATIONS

**Certified Public Accountant (CPA)**
New York State, 1986

**Certified Fraud Examiner (CFE)**
Association of Certified Fraud Examiners, 2011

**Certified Valuation Analyst (CVA)**
National Association of Certified Valuators and Analysts, 2008

**Personal Financial Specialist (PFS)**
American Institute of Certified Public Accountants, 1996

## FACULTY AND COMMITTEE APPOINTMENTS

**New York State Society of Certified Public Accountants**
<u>Nassau County Chapter</u>
- *Chairman*, Accounting & Auditing Committee, 2004 – 2010

## PROFESSIONAL

**Gettry Marcus CPA, P.C.**
- Partner
- Member of Business Valuation & Litigation Services Group
- Member of the Quality Control Committee (past)

**Friedman, LLP**
- Senior Manager

**Feldman, Meinberg & Co., LLP**
- Partner

Employed by public accounting firms and in the private sector, 1983-1998

GETTRY**MARCUS**   ALWAYS LOOKING DEEPER.™

## BOOK CONTRIBUTIONS

*Financial Forensics Body of Knowledge*
Darrell D. Dorrell, Gregory A. Gadawski
*Wiley; 1st edition / March, 2012*
Contributing Author

Intellectual Property Strategies for the 21st Century Corporation
Lanning G. Bryer, Scott J. Lebson and Mathew D. Asbell
*Wiley; 1 edition / February, 2009*
Contributing Author

## JOURNALS AND PUBLICATIONS

*"Serving as a Financial Expert in a Wrongful Death Case"*
Andrew P. Ross
The Suffolk Lawyer, Published by The Suffolk County Bar Association, June 2016

*"The Role of the Forensic Accountant in Litigation"*
Andrew P. Ross, James E. Stewart
The Suffolk Lawyer, Published by The Suffolk County Bar Association, November 2014

*"Applying the Net Worth Method-For Proving Unreported Income"*
Mark S. Warshavsky, Andrew P. Ross
National Litigation Consultants' Review, Volume 3-2012

*"Preventing and Detecting Employee Theft and Embezzlement"* Product/Book Review
National Litigation Consultants' Review, Volume 1-2012

*"Anatomy of a Fraud Investigation"* Product/Book Review
National Litigation Consultants' Review, October/November, 2010

## LECTURES AND SPEAKING ENGAGEMENTS

*"Using Forensic Accountants in Litigation"*
Issues in Commercial and Corporate Law Conference, Suffolk County Bar Association
Hauppauge, New York, October 2014

*"Fraud Prevention"*
New York State Society of Certified Public Accountants, Nassau Chapter, CFO Committee,
Mineola, New York, May 2013

*"Understanding the Business Valuation Process for Attorneys"*
Law Firm – CLE Presentation, September 2012

*"What Your Clients 'Think' You Know About Forensic Accounting"*
A one or two day course qualifying for continuing professional education credit, sponsored by
the National Association of Certified Valuation Analysts, which covered Intermediate and
Advanced Forensic Accounting Techniques presented to participants through its Consultants'
Training Institute, May 2010

**GETTRYMARCUS** | ▌▌▌ **ALWAYS LOOKING DEEPER.™**

## LECTURES AND SPEAKING ENGAGEMENTS - CONTINUED

*"Business Valuation & Forensic Accounting – Tips Tools and Techniques for the Practicing Accountant"*
National Conference of CPA Practitioners, Long Island Tax Practitioners Symposium, 2010

*"Risk Based Audits and Comp & Review Update"*
National Conference of CPA Practitioners, Long Island Tax Practitioners Symposium, 2010

*"Accounting and Auditing Update"*
New York State Society of Certified Public Accountants, Joint Nassau and Suffolk Chapters, 2009

*"Accounting and Auditing Update"*
New York State Society of Certified Public Accountants, Joint Nassau and Suffolk Chapters, 2008

*"How to Get Paid On Time and How to Manage Your Receivables"*
Limousine and Chauffeured Transportation, Eastern Conference, Uncasville, Connecticut, 2008

*"Risk Assessment Standards (SAS 104-111)"*
New York State Society of Certified Public Accountants, Joint Nassau and Suffolk Chapters, 2007

*"SAS 103 – New Audit Documentation Rules"*
New York State Society of Certified Public Accountants, Joint Nassau and Suffolk Chapters, 2006

*"Workpaper Documentation and Analytical Procedures"*
New York State Society of Certified Public Accountants, Joint Nassau and Suffolk Chapters, 2005

*"Highlights of the New Tax Law"*
New York State Society of Certified Public Accountants, Joint Nassau and Suffolk Chapters, 1998

## PROFESSIONAL ASSOCIATION MEMBERSHIPS

American Institute of Certified Public Accountants (AICPA)

Association of Certified Fraud Examiners (ACFE)

National Association of Certified Valuators and Analysts (NACVA)

New York State Society of Certified Public Accountants (NYSSCPA)

## EDUCATION

*Bachelor of Science, Accounting*
Syracuse University, 1983

# Exhibit B -
# Information That Was Considered

The following are the documents and information considered in the preparation of this expert report:

- Verified Complaint and other court filings;
- WHDC QuickBooks file, including general ledgers and other reports, through approximately October 2016;
- WHDC U.S. Income Tax Returns for the years 2010 through 2016;
- Gersh Academy, Inc. and Subsidiaries U.S. Income Tax Return for the year 2011;
- Gersh Academy, Inc. U.S. Income Tax Return for the years 2012 through 2015;
- Deposition of Kevin Gersh dated February 21 and 22, 2017;
- Deposition of Philip Caparotta dated March 30, 2017;
- Deposition of Janine Buss dated May 16, 2017;
- Deposition of Laurie Gersh dated January 20 and 23, 2017;
- Deposition of Ellynn Greenhaus dated December 15, 16, 20, and 27, 2016;
- WHDC bank statements and supporting detail, when available;
- WHDC ITEX, TradeWorks, and NCE barter statements, when available;
- WHDC Paychex payroll reports beginning December 30, 2010;
- Information contained in WHDC's CampMinder account;
- Various Kevin Gersh Entity emails;
- Various invoices;
- Other information as referenced in this report.

**Exhibit C -**
**Summary of Damages Due**
**To WHDC From the Kevin Gersh Entities and Kevin Gersh**
**June 5, 2009 through October 15, 2016**

Exhibit C

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Summary of Damages Due to WHDC from the Kevin Gersh Entities and Kevin Gersh**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E | F | G | H | I | J | K (B + C + D + E + F + G + H + I + J) | L | M (K + L) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Before Statutory Interest | | | | | | | |
| Year | Lost Net Revenue from Comanche Campers[1] | West Hills Montessori Start Up Costs Paid by WHDC[2] | Additional West Hills Montessori Expenditures Paid by WHDC[3] | Gersh Academy Expenditures Paid by WHDC[4] | Excess Management Fees Paid to Gersh Management and Kevin Gersh[5] | Additional Gersh Management Disbursements[6] | Barn Rent Paid by WHDC[7] | Other Non-WHDC Expenditures Paid by WHDC[8] | Kevin Gersh Camper Discounts[9] | Damages Due to WHDC from the Kevin Gersh Entities and Kevin Gersh Before Statutory Interest | Statutory Interest[10] | Damages Due to WHDC from the Kevin Gersh Entities and Kevin Gersh After Statutory Interest |
| 2009 | - | $29,890 | - | $4,477 | - | - | - | $2,000 | - | $36,367 | $27,838 | $64,205 |
| 2010 | $270,000 | 88,305 | $35,512 | 6,631 | - | $23,403 | - | 8,717 | - | 432,568 | 298,139 | 730,707 |
| 2011 | 261,356 | 1,032 | 6,362 | 41,550 | - | 23,304 | - | 17,489 | - | 351,093 | 213,869 | 564,962 |
| 2012 | 259,046 | - | 30,432 | 3,769 | - | - | - | 38,250 | - | 331,497 | 168,750 | 500,247 |
| 2013 | 472,119 | - | 21,213 | 9,813 | $237,656 | 145,431 | $13,000 | 88,610 | - | 987,842 | 448,258 | 1,436,100 |
| 2014 | 430,706 | - | 3,638 | 1,557 | 5,682 | 47,111 | 10,000 | 69,819 | $62,345 | 630,858 | 210,078 | 840,936 |
| 2015 | 363,891 | - | 10,828 | 3,855 | - | 1,189 | - | 22,323 | 40,879 | 442,965 | 106,449 | 549,414 |
| 2016 | 414,972 | - | 3,366 | 5,005 | 225,000 | 26,041 | - | (62,741) | 13,383 | 625,026 | 94,508 | 719,534 |
| | $2,472,090 | $119,227 | $111,351 | $76,657 | $468,338 | $266,479 | $23,000 | $184,467 | $116,607 | $3,838,216 | $1,567,889 | $5,406,105 |

Notes:
(1) From Exhibit E.
(2) From Exhibit F.
(3) From Exhibit G.
(4) From Exhibit H.
(5) From Exhibit I(1).
(6) From Exhibit J.
(7) From Exhibit K.
(8) From Exhibit L. 2016 figure includes a repayment by Kevin Gersh in the amount of $68,459.99, and there is a corresponding reduction of statutory interest in the amount of $11,478.77. See Exhibit and Expert Report for more details.
(9) From Exhibit M.
(10) From Exhibit O. Statutory Interest for each year relates to the interest being assessed for transactions that occurred in each respective year. Includes Statutory Interest assessed for interest-free loans taken by the Kevin Gersh Entities of $27,912. See Exhibit N.

- All totals have been rounded to the nearest dollar.
- There may be minor differences due to rounding.

## Exhibit D -
## Adjusted Loan Amount Due to WHDC from the Kevin Gersh Entities and Kevin Gersh
## June 5, 2009 through October 15, 2016

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Adjusted Loan Balance Due to WHDC from the Kevin Gersh Entities and Kevin Gersh Personally**
**Loan Balances as of October 15, 2016 - Statutory Interest through February 28, 2018**

| WHDC QuickBooks Account | Balance due to/(from) WHDC per WHDC QuickBooks | Row |
|---|---|---|
| 1275 · I/C Accounts Rec:1275-16 · Gersh Academy | $3,062.98 | A |
| 1275 · I/C Accounts Rec:1275-26 · WH Montessori | (4,547.28) | B |
| 1265 · Affiliates:1276-10 · KG 2 | (105.27) | C |
| 1276 · I/C EXCHANGES:1276-16 · Gersh Academy | 8,797.12 | D |
| 1276 · I/C EXCHANGES:1276-25 · WH Montessori | 100.00 | E |
| Accounts Payable: Gersh Management Services, Inc. | (304,031.00) | F |
| Accounts Payable: Gersh Academy, Inc. | (6,417.61) | G |
| **Unadjusted Loan Balance Due from WHDC to the Kevin Gersh Entities and Kevin Gersh per WHDC's QuickBooks** | **(303,141.06)** | H |
| Adjustments: | | |
| Reversal of 12/31/2014 transaction reclassifying amounts in account # 1276 · I/C EXCHANGES:1276-16 · Gersh Academy, a receivable due to WHDC, to account # 7370 · MISCELLANEOUS EXPENSE[1] | 4,256.70 | I |
| Reversal of 12/31/2014 transaction reclassifying amounts in account # 1276 · I/C EXCHANGES:1276-16 · Gersh Academy, a receivable due to WHDC, against Accounts Payable[2] | 45,000.00 | J |
| Reversal of 12/31/2014 transaction reclassifying amounts in account # 1276 · I/C EXCHANGES:1276-16 · Gersh Academy, a receivable due to WHDC, against Accounts Payable[2] | 34,050.74 | K |
| Reversal of 12/31/2014 transaction reclassifying amounts in account # 1276 · I/C EXCHANGES:1276-16 · Gersh Academy, a receivable due to WHDC, against Accounts Payable[2] | 13,471.17 | L |
| Reversal of 12/31/2014 transaction reclassifying amounts in account # 1276 · I/C EXCHANGES:1276-16 · Gersh Academy, a receivable due to WHDC, against Accounts Payable[2] | 1,814.61 | M |
| Reversal of management and other Gersh Management fees in Accounts Payable: Gersh Management Services, Inc. | 304,031.00 | N |
| Reversal of Gersh Academy fees in Accounts Payable: Gersh Academy, Inc. | 6,417.61 | O |
| Reversal of account # 1265c - KG balance reduced against Accounts Payable in transaction dated 10/1/2016 | 37,248.67 | P |
| Reversal of account # 1275.1 - EXCHANGE - KG balance reduced against Accounts Payable in transaction dated 10/1/2016 | 2,750.00 | Q |
| Total Adjustments to Loan Balances | 449,040.50 | R |
| **Adjusted Loan Balance Due to WHDC from the Kevin Gersh Entities and Kevin Gersh Before Damages and Statutory Interest** | **145,899.44** | S |
| Damages Due WHDC from the Kevin Gersh Entities and Kevin Gersh Before Statutory Interest[3] | 3,838,216.00 | T |
| Statutory Interest Due WHDC from the Kevin Gersh Entities and Kevin Gersh[4] | 1,567,889.00 | U |
| **Adjusted Loan Balance Due to WHDC from the Kevin Gersh Entities and Kevin Gersh After Damages and Statutory Interest** | **$5,552,004** | V |

Notes:
(1) This amount represents $10,476.70 less $6,220.00.
(2) Each of these transactions was applied against management fees and other miscellaneous fees charged to WHDC from the Kevin Gersh Entities with a memo in WHDC's QuickBooks stating: "TO APPLY GERSH RECONCILIATION PAYMENT - 10/24" in a transaction entered by QuickBooks user "Megan" on December 30 and 31, 2014, according to the QuickBooks Audit Trail Report.
(3) From Exhibit C, Column K.
(4) From Exhibit O, Column L.

- All totals have been rounded to the nearest dollar.
- There may be minor differences due to rounding.

**Exhibit E -**
**Lost Revenue from Comanche Campers**
**June 5, 2009 through October 15, 2016**

**Exhibit E**

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Lost Net Revenue from Comanche Campers
For the Period June 5, 2009 through October 15, 2016

| A | B | C | D | E (B - C - D) | F | G (E + F) |
|---|---|---|---|---|---|---|
| Year | Comanche Revenue | Less: Comanche Revenue Repayments Received from the Kevin Gersh Entities by WHDC | Less: Comanche Expenses Paid by the Kevin Gersh Entities | Lost Net Revenue from Comanche Campers Before Statutory Interest[10] | Statutory Interest[11] | Lost Revenue from Comanche Campers After Statutory Interest |
| 2010 | $270,000 [1] | - | - [8] | $270,000 | $186,344 | $456,344 |
| 2011 | 270,000 [2] | - | $8,644 | 261,356 | 156,857 | 418,213 |
| 2012 | 270,000 [3] | - | 10,954 | 259,046 | 131,731 | 390,777 |
| 2013 | 492,000 [4] | - | 19,881 | 472,119 | 198,251 | 670,370 |
| 2014 | 582,000 [5] | $151,294 | - | 430,706 | 142,098 | 572,804 |
| 2015 | 516,000 [6] | 152,109 | - | 363,891 | 87,304 | 451,195 |
| 2016 | 552,000 [7] | 137,028 | - [9] | 414,972 | 61,940 | 476,912 |
| Total | $2,952,000 | $440,431 | $39,479 | $2,472,090 | $964,525 | $3,436,615 |

Notes:
(1) Represents $6,000 multiplied by 45 campers.
(2) Represents $6,000 multiplied by 45 campers.
(3) Represents $6,000 multiplied by 45 campers.
(4) Represents $6,000 multiplied by 82 campers.
(5) Represents $6,000 multiplied by 97 campers.
(6) Represents $6,000 multiplied by 86 campers.
(7) Represents $6,000 multiplied by 92 campers.
(8) In 2009, WHDC expensed $22,597 in 2010 in account # 7042 - Gersh Academy with the memo in WHDC's QuickBooks: "Gersh Academy Payroll".
(9) In 2016, WHDC expensed $66,440.34 in account # 7043 - GA & WH with the memo in QuickBooks: "TO RECORD 2016 GERSH SALARY" and WHDC expensed $8,406.99 in account # 7043 - GA & WH with the memo in WHDC's QuickBooks: "TO RECORD 2016 BUS DRIVER SALARIES FOR GA TRIPS".
(10) To Exhibit C, Column B.
(11) To Exhibit O, Column B. 9% statutory interest calculated as of July 1 of each respective year through February 28, 2018. The amount listed in each year corresponds to the Lost Revenue from Comanche Campers Before Interest for each respective year.

- All totals have been rounded to the nearest dollar.
- There may be minor differences due to rounding.

**Exhibit E(1) -**
**Lost Revenue from Comanche Campers –**
**Alternative Calculation**
**June 5, 2009 through October 15, 2016**

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Lost Net Revenue from Comanche Campers - Alternative Calculation**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E (B - C - D) | F | G (E + F) |
|---|---|---|---|---|---|---|
| Year | Disbursements of Comanche Revenue to the Kevin Gersh Entities | Less: Comanche Revenue Repayments Received from the Kevin Gersh Entities by WHDC | Less: Comanche Expenses Paid by the Kevin Gersh Entities | Lost Revenue from Comanche Campers Before Statutory Interest | Statutory Interest[9] | Lost Revenue from Comanche Campers After Statutory Interest - Alternative Calculation |
| 2010 | $154,860 [1] | - | - [7] | $154,860 | $106,879 | $261,739 |
| 2011 | 145,168 [2] | - | $8,644 | 136,524 | 81,937 | 218,461 |
| 2012 | 225,826 [3] | - | 10,954 | 214,872 | 109,268 | 324,140 |
| 2013 | 370,223 [4] | - | 19,881 | 350,342 | 147,115 | 497,457 |
| 2014 | - | $151,294 | - | (151,294) | (49,915) | (201,209) |
| 2015 | 458,279 [5] | 152,109 | - | 306,170 | 73,456 | 379,626 |
| 2016 | 360,455 [6] | 137,028 | - [8] | 223,427 | 33,349 | 256,776 |
| **Total** | **$1,714,811** | **$440,431** | **$39,479** | **$1,234,901** | **$502,089** | **$1,736,990** |

Notes:

(1) $149,410 of the disbursements classified to account # 3028 - GERSH ACADEMY@WHDC, an income statement account. $5,450 classified to account # 2095 - Deposits GA @ WHDC, a balance sheet accou

(2) $2,750 of the disbursements classified to account # 3028 - GERSH ACADEMY@WHDC, an income statement account. $142,418 classified to account # 2095 - Deposits GA @ WHDC, a balance sheet accou

(3) Disbursements classified to account # 2095 - Deposits GA @ WHDC, a balance sheet account.

(4) $320,329.16 of the disbursements classified to account # 2095 - Deposits GA @ WHDC, a balance sheet account. $49,893.64 classified to account # 1276-15 - Gersh Academy - 2014 Tuition, a balance sheet account.

(5) $457,718.75 of the disbursements classified to account # 2084 - Gersh Academy - GA@WHDC TUITION, a balance sheet account.  $560 classified to account # 1205-10 - Summer Camp '15, a balance sheet account.

(6) Disbursements classified to account # 2084 - Gersh Academy - GA@WHDC TUITION, a balance sheet account.

(7) WHDC expensed $22,597 in 2010 in account # 7042 - Gersh Academy.  The WHDC QuickBooks memo for the transaction recording the expense: "Gersh Academy Payroll".

(8) In 2016, WHDC expensed $66,440.34 in account # 7043 - GA & WH with the memo in QuickBooks: "TO RECORD 2016 GERSH SALARY" and WHDC expensed $8,406.99 in account # 7043 - GA & WH with the memo in WHDC's QuickBooks: "TO RECORD 2016 BUS DRIVER SALARIES FOR GA TRIPS".

(9) 9% statutory interest calculated as of July 1 of each respective year through February 28, 2018. The amount listed in each year corresponds to the Lost Revenue from Comanche Campers Before Interest for each year.

- All totals have been rounded to the nearest dollar.
- There may be minor differences due to rounding.

**Exhibit F -**
**West Hills Montessori Start Up Costs Paid by WHDC**
**June 5, 2009 through October 15, 2016**

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
**West Hills Montessori Start Up Costs Paid by WHDC**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E | F | G | H (F + G) |
|---|---|---|---|---|---|---|---|
| Date | Transaction Type/Check Number | Name | QuickBooks Memo | QuickBooks Classification | West Hills Montessori Startup Costs Paid by WHDC Before Statutory Interest[3] | Statutory Interest[4] | West Hills Montessori Startup Costs Paid by WHDC After Statutory Interest |
| 01/12/2009 | 10357 | ISLAND-WIDE LAND SURVEYORS | Survey WH property | 7437 · Other Misc | $11,000.00 [2] | $8,652.33 | $19,652.33 |
| 06/03/2009 | 10632 | TOWN OF HUNTINGTON | Filing Fee | 7437 · Other Misc | 250.00 [2] | 196.64 | 446.64 |
| 08/17/2009 | 11076 | THOMAS ABBATE, PC | Retainer for counsel to open school | 7437 · Other Misc | 7,000.00 [2] | 5,380.03 | 12,380.03 |
| 10/09/2009 | 11261 | RMS ENGINERRING | Deposit feasibility study | 7437 · Other Misc | 1,000.00 [2] | 755.51 | 1,755.51 |
| 12/09/2009 | 11418 | RMS ENGINERRING | Meeting at TOH to review project & process | 7437 · Other Misc | 740.00 [2] | 547.94 | 1,287.94 |
| 12/22/2009 | 11455 | ISLAND-WIDE LAND SURVEYORS | Topographic survey | 7437 · Other Misc | 9,900.00 [2] | 7,298.88 | 17,198.88 |
| 01/05/2010 | 11477 | ACADEMY LAND SERVICES, LLC | Property deed for ZBA application | 7437 · Other Misc | 75.00 [2] | 55.04 | 130.04 |
| 01/12/2010 | 11482 | THOMAS A. ABBATE, AS ATTORNEY | | 7437 · Other Misc | 250.00 [2] | 183.02 | 433.02 |
| 01/12/2010 | 11483 | WH MONTESSORI SCHOOL | retainer - Inv# 1002-i01 (INV# 3) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 3,500.00 [1] | 2,562.29 | 6,062.29 |
| 01/15/2010 | 11487 | RMS ENGINERRING | Balance Feasibilty Study | 7437 · Other Misc | 9,000.00 [2] | 6,582.08 | 15,582.08 |
| 02/04/2010 | 11546 | WH MONTESSORI SCHOOL | tow bus#1 for repairs (INV# 3) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 65.00 [1] | 47.22 | 112.22 |
| 02/17/2010 | Wire | WH MONTESSORI SCHOOL | all weather tires (INV# 3) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 285.70 [1] | 206.62 | 492.32 |
| 02/18/2010 | 11552 | TOWN OF HUNTINGTON | Radius search ZBA application | 7437 · Other Misc | 75.00 [2] | 54.22 | 129.22 |
| 02/18/2010 | 11554 | TOWN OF HUNTINGTON | ZBA application fee | 7437 · Other Misc | 1,250.00 [2] | 903.70 | 2,153.70 |
| 02/19/2010 | 11555 | TOWN OF HUNTINGTON | Bldg permit for interior alterations A&C & Nursery (school) areas | 7437 · Other Misc | 2,781.00 [2] | 2,009.86 | 4,790.86 |
| 02/22/2010 | 11559 | Suffolk County Environmental Quality | Application for sewage disposal facility (w/ rms bills) change in use to full year school | 7437 · Other Misc | 2,500.00 [2] | 1,804.93 | 4,304.93 |
| 03/03/2010 | 4173 | WH MONTESSORI SCHOOL | gmc bus service (INV# 6) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 295.44 [1] | 212.64 | 508.08 |
| 03/16/2010 | 11608 | WH MONTESSORI SCHOOL | tow gmc bus (INV# 6) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 115.00 [1] | 82.40 | 197.40 |
| 03/22/2010 | 11618 | WH MONTESSORI SCHOOL | completion of design development (INV# 4) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 4,250.00 [1] | 3,039.04 | 7,289.04 |
| 04/10/2010 | 11654 | WH MONTESSORI SCHOOL | rpr-gmc bus (INV# 6) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 715.04 [1] | 507.95 | 1,222.99 |
| 04/13/2010 | 11673 | WH MONTESSORI SCHOOL | completion of contract documents (INV# 5) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 6,349.67 [1] | 4,506.00 | 10,855.67 |
| 05/16/2010 | 11763 | WH MONTESSORI SCHOOL | gmc bus oil & brakes (INV# 6) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 315.60 [1] | 221.40 | 537.00 |
| 05/16/2010 | 11766 | WH MONTESSORI SCHOOL | Montessori open house refreshments costco (INV# 8) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 192.47 [1] | 135.02 | 327.49 |
| 05/18/2010 | 11768 | THOMAS ABBATE, PC | Balance of retainter | 7437 · Other Misc | 5,000.00 [2] | 3,505.07 | 8,505.07 |
| 05/18/2010 | 11768 | THOMAS ABBATE, PC | Disbursements | 7437 · Other Misc | 201.56 [2] | 141.30 | 342.86 |
| 05/24/2010 | 11777 | BRESLIN APPRAISAL CO., INC. | retainer as expert witness zba | 7437 · Other Misc | 1,250.00 [2] | 874.42 | 2,124.42 |
| 05/27/2010 | 11790 | BRESLIN APPRAISAL CO., INC. | Balance as expert witness zba | 7437 · Other Misc | 1,250.00 [2] | 873.49 | 2,123.49 |
| 06/23/2010 | 11997 | DIVERSIFIED DESIGN ASSOCIATES | ZBA presentation boards | 7437 · Other Misc | 1,476.37 [2] | 1,021.85 | 2,498.22 |
| 07/19/2010 | 12009 | RMS ENGINERRING | Balance Feasibilty Study | 7437 · Other Misc | 10,000.00 [2] | 6,857.26 | 16,857.26 |
| 07/24/2010 | 12041 | BRESLIN APPRAISAL CO., INC. | cost of neighborhood map | 7437 · Other Misc | 275.00 [2] | 188.24 | 463.24 |
| 07/30/2010 | 12103 | WH MONTESSORI SCHOOL | 1/2 cost of animals (INV# 13) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 205.28 [1] | 140.21 | 345.49 |
| 08/04/2010 | 12111 | RMS ENGINERRING | Balance | 7437 · Other Misc | 17,563.54 [2] | 11,974.48 | 29,538.02 |
| 09/03/2010 | 12375 | WH MONTESSORI SCHOOL | 10/12 Montessori School Carpet ($15,163.06 nce) (INV# 13) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 6,438.50 [1] | 4,342.02 | 10,780.52 |
| 09/14/2010 | 12383 | WH MONTESSORI SCHOOL | interior classroom renovations (INV# 13) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 2,000.00 [1] | 1,343.34 | 3,343.34 |
| 09/14/2010 | 12382 | WH MONTESSORI SCHOOL | rb cubby/classroom paneling (INV# 13) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 152.93 [1] | 102.72 | 255.65 |
| 10/05/2010 | | WH MONTESSORI SCHOOL | Rachel Montessori Meal Program (INV# 9) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 300.00 [1] | 199.95 | 499.95 |
| 10/05/2010 | 12451 | WH MONTESSORI SCHOOL | a&c carpet (INV# 13) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 1,516.31 [1] | 1,010.61 | 2,526.92 |
| 10/08/2010 | 12456 | WH MONTESSORI SCHOOL | Montessori classroom cubbies & copy room shelves (INV# 13) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 375.00 [1] | 249.66 | 624.66 |
| 10/14/2010 | Wire | WH MONTESSORI SCHOOL | Costco applies juice $82.68 (INV# 9) & Water fountain $4987.50 (INV# 13) 323-215-4095 | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 580.14 [1] | 385.37 | 965.51 |
| 10/21/2010 | 12484 | THOMAS ABBATE, PC | ZBA legal fees | 7437 · Other Misc | 1,200.00 [2] | 795.06 | 1,995.06 |
| 10/21/2010 | 12484 | THOMAS ABBATE, PC | ZBA appearance fees | 7437 · Other Misc | 822.08 [2] | 544.67 | 1,366.75 |
| 10/21/2010 | 12478 | WH MONTESSORI SCHOOL | Fleet Account September (INV# 7) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 574.89 [1] | 380.89 | 955.78 |
| 10/26/2010 | 12495 | WH MONTESSORI SCHOOL | WH Montessori (INV# 9) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 618.71 [1] | 409.16 | 1,027.87 |
| 10/27/2010 | 12497 | WH MONTESSORI SCHOOL | cubby lumber & Hooks (INV# 13) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 306.78 [1] | 202.80 | 509.58 |
| 11/11/2010 | 12550 | WH MONTESSORI SCHOOL | Overage 9/13/10-10/12/10 (INV# 15) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 812.59 [1] | 534.17 | 1,346.76 |
| 11/16/2010 | 12587 | WH MONTESSORI SCHOOL | coffe/ milk Montessori (unused Steve Israel & Fall Fest) (INV# 13) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 193.64 [1] | 127.05 | 320.69 |
| 12/02/2010 | 12605 | WH MONTESSORI SCHOOL | ROB V build & hang cabinets, soundproofing (INV# 16) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 875.00 [1] | 570.67 | 1,445.67 |

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**West Hills Montessori Start Up Costs Paid by WHDC**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E | F | | G | H (F + G) |
|---|---|---|---|---|---|---|---|---|
| Date | Transaction Type/Check Number | Name | QuickBooks Memo | QuickBooks Classification | West Hills Montessori Startup Costs Paid by WHDC Before Statutory Interest[3] | | Statutory Interest[4] | West Hills Montessori Startup Costs Paid by WHDC After Statutory Interest |
| 12/02/2010 | | WH MONTESSORI SCHOOL | A&C bldg 10/12/10-11/9/10 (INV# 15) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 719.88 | 1 | 469.50 | 1,189.38 |
| 12/02/2010 | Wire | WH MONTESSORI SCHOOL | Overage main bldg 10/12/10-11/9/10 (INV# 15) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 35.57 | 1 | 23.20 | 58.77 |
| 12/21/2010 | 12664 | WH MONTESSORI SCHOOL | Burt Lumber-November (INV# 18) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 457.13 | 1 | 295.99 | 753.12 |
| 12/21/2010 | 12666 | WH MONTESSORI SCHOOL | Co Line Hardware-November (INV# 18) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 27.81 | 1 | 18.01 | 45.82 |
| 12/21/2010 | | WH MONTESSORI SCHOOL | A&C bldg 11/9/10-12/10/10 (INV# 15) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 723.13 | 1 | 468.23 | 1,191.36 |
| 12/21/2010 | | WH MONTESSORI SCHOOL | Overage main bldg 11/9/10-12/10/10 (INV# 15) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 337.89 | 1 | 218.79 | 556.68 |
| 04/06/2011 | 12921 | RMS ENGINERRING | bal of disputed service 8/2010 Invoice# 12319 | 7437 · Other Misc | 832.50 | 2 | 517.29 | 1,349.79 |
| 05/03/2011 | 13010 | TOWN OF HUNTINGTON | CO fee for school bldg. | 7437 · Other Misc | 200.00 | 2 | 122.94 | 322.94 |
| | | | | | $119,227 | | $84,853 | $204,080 |

Notes:

(1) Each of these transactions was originally classified in WHDC's QuickBooks account # 1275 · I/C Accounts Rec:1275-26 · WH Montessori, which represents that a receivable was due to WHDC from West Hills Montessori. A transaction dated December 31, 2010 reclassified these transactions to account # 7600 · OTHER PROG COSTS:7395 · MISC PROG-KARATE,MUSIC,TUTOR, an expense of WHDC, with a journal entry for $33,335.10.

(2) Each of these transactions was originally classified on WHDC's books in account # 1272 WEST HILLS- SCHOOL EXPENESES WIP, a fixed asset account. On 12/31/2011, a journal entry was made in the amount of $85,892.05 that classified each of these transactions to account # 7437 - Other Misc, an expense account of WHDC.

(3) To Exhibit C, Column C.

(4) To Exhibit O, Column C.

- All totals have been rounded to the nearest dollar.
- There may be minor differences due to rounding.
- For transactions originally occurring before June 5, 2009 that were subsequently reclassified as expenses of WHDC, Statutory Interest has been assessed as of June 5, 2009

**Exhibit G -**
**Additional West HIlls Montessori Expenditures Paid by**
**WHDC**
**June 5, 2009 through October 15, 2016**

Exhibit G

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Additional West Hills Montessori Expenditures Paid by WHDC**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E | F | G | H | I | J | K |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Check Number / Transaction Type | Name | QuickBooks Memo | QuickBooks Classification | Additional West Hills Montessori Expenditures Paid by WHDC Before Barter Fees and Statutory Interest[1] | Barter Fee (If Applicable)[2] | Additional West Hills Montessori Expenditures Paid by WHDC Before Statutory Interest | Statutory Interest[3] | Additional West Hills Montessori Expenditures Paid by WHDC After Statutory Interest | Gettry Marcus Notes |
| 1/1/2010 | 12566 | VERIZON | ACCOUNT# 6314273058352270 | 7630 · LANDLINES | $108.36 | | $108.36 | $79.62 | $187.98 | |
| 1/19/2010 | Wire | LIPA | a&c bldg. 11/10-1/11 actual | 7280 · HEAT, LIGHT, & POWER () | 577.85 | | 577.85 | 422.04 | 999.89 | |
| 1/22/2010 | 11497 | VERIZON | ACCOUNT# 6314273058352270 | 7630 · LANDLINES | 37.27 | | 37.27 | 27.19 | 64.46 | |
| 1/29/2010 | 11522 | HART PETROLEUM | a&c bldg. 12/17/09 #58238 | 7280 · HEAT, LIGHT, & POWER () | 787.24 | | 787.24 | 573.02 | 1,360.26 | |
| 1/29/2010 | 11523 | HART PETROLEUM | a&c bldg. 1/21/10 #59460 | 7280 · HEAT, LIGHT, & POWER () | 1,669.71 | | 1,669.71 | 1,215.37 | 2,885.08 | |
| 1/29/2010 | 11536 | VERIZON | ACCOUNT# 6314273058352270 | 7630 · LANDLINES | 35.25 | | 35.25 | 25.66 | 60.91 | |
| 4/10/2010 | 11634 | HART PETROLEUM | a&c bldg. 3/2/10 | 7280 · HEAT, LIGHT, & POWER () | 1,807.64 | | 1,807.64 | 1,284.12 | 3,091.76 | |
| 4/10/2010 | Wire | LIPA | a&c 1/11-3/10 actual | 7280 · HEAT, LIGHT, & POWER () | 525.97 | | 525.97 | 373.64 | 899.61 | |
| 4/10/2010 | Wire | VERIZON | ACCOUNT# 6314273058 | 7630 · LANDLINES | 69.04 | | 69.04 | 49.04 | 118.08 | |
| 5/16/2010 | 11741 | LIPA | a&c building 3/10-5/10 actual | 7280 · HEAT, LIGHT, & POWER () | 649.79 | | 649.79 | 455.83 | 1,105.62 | |
| 5/16/2010 | 11761 | VERIZON | ACCOUNT# 6314273058352270 | 7630 · LANDLINES | 34.62 | | 34.62 | 24.29 | 58.91 | |
| 6/5/2010 | 11826 | VERIZON | ACCOUNT# 6314273058352270 | 7630 · LANDLINES | 34.50 | | 34.50 | 24.03 | 58.53 | |
| 7/3/2010 | 11941 | LIPA | a&c bldg 5/10-6/8 actual | 7280 · HEAT, LIGHT, & POWER () | 385.46 | | 385.46 | 265.84 | 651.30 | |
| 7/3/2010 | 11958 | VERIZON | ACCOUNT# 6314273058352270 | 7630 · LANDLINES | 365.57 | | 365.57 | 252.12 | 617.69 | |
| 7/24/2010 | Wire | LIPA | a&c bldg 6/8-7/12 actual | 7280 · HEAT, LIGHT, & POWER () | 1,078.72 | | 1,078.72 | 738.38 | 1,817.10 | |
| 8/18/2010 | 12215 | LIPA | a&c bldg 7/12-8/10 actual | 7280 · HEAT, LIGHT, & POWER () | 1,417.69 | | 1,417.69 | 961.66 | 2,379.35 | |
| 8/18/2010 | 12235 | VERIZON | ACCOUNT# 6314273058352270 | 7630 · LANDLINES | 107.96 | | 107.96 | 73.23 | 181.19 | |
| 9/3/2010 | 12375 | NCE | 2/12 A&C Buidling Carpet | REPAIRS & MAINT:7480 · Grounds - Gen'l Prop Maint | 1,287.64 | | 1,287.64 | 868.36 | 2,156.00 | |
| 9/28/2010 | 12417 | LIPA | a&c bldg. 8/10-9/13 actual (LAST WH BILL) | 7280 · HEAT, LIGHT, & POWER () | 1,214.72 | | 1,214.72 | 811.70 | 2,026.42 | |
| 10/1/2010 | Wire | VERIZON | 427-3058 a&c + hut (1 mo) | 7630 · LANDLINES | 106.65 | | 106.65 | 71.19 | 177.84 | |
| 10/5/2010 | NCE Barter | Greater Windows & Doors | a&c greater windows & doors | 1500 · FIXED ASSETS:1531 · BUILDING IMPROVEMENTS | 305.88 | 30.59 | 336.47 | 224.25 | 560.72 | QuickBooks Class: WH Montessori |
| 10/5/2010 | NCE Barter | Greater Windows & Doors | a&c greater windows & doors | 1500 · FIXED ASSETS:1531 · BUILDING IMPROVEMENTS | 213.52 | 21.35 | 234.87 | 156.54 | 391.41 | QuickBooks Class: WH Montessori |
| 10/14/2010 | 12465 | VERIZON | 427-3058 a&c + hut | 7630 · LANDLINES | 111.32 | | 111.32 | 73.95 | 185.27 | |
| 11/11/2010 | 12566 | VERIZON | 631-427-3058 | 7630 · LANDLINES | 108.36 | | 108.36 | 71.23 | 179.59 | |
| 12/21/2010 | 12653 | VERIZON | 6314273058352270 | 7630 · LANDLINES | 26.40 | | 26.40 | 17.09 | 43.49 | |
| 12/31/2010 | NCE Barter | Greater Windows & Doors | NCE Greater Windows & Doors A&C & Nursery Montessori School | 1500 · FIXED ASSETS:1531 · BUILDING IMPROVEMENTS | 5,194.00 | 519.40 | 5,713.40 | 3,685.38 | 9,398.78 | |
| 12/31/2010 | NCE Barter | | NCE carpet A&C & Nursery Montessori School | 1500 · FIXED ASSETS:1531 · BUILDING IMPROVEMENTS | 15,163.06 | 1,516.31 | 16,679.37 | 10,758.88 | 27,438.25 | |
| 1/25/2011 | 12759 | VERIZON | 631-427-3058 | 7630 · LANDLINES | 37.86 | | 37.86 | 24.19 | 62.05 | |
| 2/22/2011 | 12838 | VERIZON | 427-3058 A&C alarm line | TELEPHONE:7630 · LANDLINES | 38.71 | | 38.71 | 24.46 | 63.17 | |
| 3/25/2011 | 12902 | VERIZON | A&C alarm line 427-3058 | TELEPHONE:7630 · LANDLINES | 38.60 | | 38.60 | 24.10 | 62.70 | |
| 4/12/2011 | 12949 | INTRUDER DETECTION SYSTEMS, INC. | replaced smoke detector a&c bldg. | 7503 · SECURITY/ALARM | 336.74 | | 336.74 | 208.74 | 545.48 | |
| 4/12/2011 | 12958 | VERIZON | ACCOUNT# 631 427 3058 352 27 0 | 7630 · LANDLINES | 37.19 | | 37.19 | 23.05 | 60.24 | |
| 5/3/2011 | NCE Barter | Computer Controlled Security | Montessori: Computer Controlled Security (classroom cameras) | 7376 · MISC BARTER EXPENSES | 1,000.00 | 100.00 | 1,100.00 | 676.18 | 1,776.18 | Expensed as $1,490. See 5/25/2011 transaction for $490. |
| 5/9/2011 | 13022 | INTRUDER DETECTION SYSTEMS, INC. | service call 4/14/11: A&C wire smoke det. & no tel line | 7503 · SECURITY/ALARM | 336.74 | | 336.74 | 206.50 | 543.24 | |
| 5/9/2011 | 13029 | VERIZON | 427-3058 A&C alarm line | TELEPHONE:7630 · LANDLINES | 35.38 | | 35.38 | 21.70 | 57.08 | |
| 6/9/2011 | 13141 | SUSAN DIAMOND | PRE-SCHOOL THEME DECORATIONS | 7600 · OTHER PROG COSTS:7375 · NURSERY | 686.75 | | 686.75 | 415.89 | 1,102.64 | |
| 5/25/2011 | NCE Barter | Computer Controlled Security | Montessori: Computer Controlled Security (classroom cameras) | 7376 · MISC BARTER EXPENSES | 490.00 | 49.00 | 539.00 | 328.41 | 867.41 | Expensed as $1,490. See 5/3/2011 transaction for $1,000. |
| 6/23/2011 | 13221 | JO-ANN RAIA, TOWN CLERK | WHM PARENT EVENING | 7350 · LICENSES & PERMITS | 25.00 | | 25.00 | 15.05 | 40.05 | |
| 7/14/2011 | 13335 | INTRUDER DETECTION SYSTEMS, INC. | 7/1/11-9/30/11 WHM | 7503 · SECURITY/ALARM | 556.86 | | 556.86 | 332.42 | 889.28 | |
| 8/22/2011 | 13609 | RAFAEL RODRIGUEZ | Clean carpets a&c & nursery | REPAIRS & MAINT:7480 · Grounds - Gen'l Prop Maint | 1,200.00 | | 1,200.00 | 704.81 | 1,904.81 | |
| 8/30/2011 | 13645 | HARBOR VIEW SIGNS | SIGNS FOR WHDC/WHM | 7065 · ADVERTISING & MARKETING | 500.00 | | 500.00 | 292.68 | 792.68 | |
| 10/6/2011 | 13743 | INTRUDER DETECTION SYSTEMS, INC. | 10/01/11 - 12/31/11 WHM | 7503 · SECURITY/ALARM | 556.86 | | 556.86 | 320.89 | 877.75 | |
| 10/6/2011 | 13743 | INTRUDER DETECTION SYSTEMS, INC. | | 7503 · SECURITY/ALARM | 336.74 | | 336.74 | 194.05 | 530.79 | |
| 1/26/2012 | 13938 | INTRUDER DETECTION SYSTEMS, INC. | 010112 - 033112 WHM | 7503 · SECURITY/ALARM | 556.86 | | 556.86 | 305.51 | 862.37 | |
| 3/21/2012 | 14200 | INTRUDER DETECTION SYSTEMS, INC. | 040112-063012 WHM | 7503 · SECURITY/ALARM | 556.86 | | 556.86 | 297.96 | 854.82 | |
| 4/17/2012 | 14195 | EFFICIENT POWER CORP | EPC HIGH EFFICIENCY UPGRADES | 1500 · FIXED ASSETS:1531 · BUILDING IMPROVEMENTS | 14,538.32 | | 14,538.32 | 7,682.21 | 22,220.53 | |
| 6/5/2012 | 14314 | EFFICIENT POWER CORP | EPC HIGH EFFICIENCY UPGRADES | 1500 · FIXED ASSETS:1531 · BUILDING IMPROVEMENTS | 14,538.32 | | 14,538.32 | 7,506.55 | 22,044.87 | |
| 12/7/2012 | Credit Card Charge | GUISEPPE'S PIZZA | | Undetermined | 66.50 | | 66.50 | 31.30 | 97.80 | Originally classified to account # 1276-25 WH Montessori. Later recorded as expense of WHDC. |
| 12/27/2012 | 15066 | WEST HILLS MONTESSORI SCHOOL, INC. | REIMBURSEMENT FOR PAYING THE METER RENEWAL FEE | UTILITIES:7680 · WATER | 175.00 | | 175.00 | 81.51 | 256.51 | |
| 3/11/2013 | 15202 | WEST HILLS MONTESSORI SCHOOL, INC. | | PROF FEES:7385 · Admin Support Consulting Fee | 17,454.33 | | 17,454.33 | 7,811.41 | 25,265.74 | |
| 4/11/2013 | 15284 | VERIZON - 3058 | 631-427-3058 | TELEPHONE:7630 · LANDLINES | 37.46 | | 37.46 | 16.48 | 53.94 | |
| 4/22/2013 | 15312 | PSEG-LIPA - ARTS & CRAFTS (92-3) | 0025-9001-92-3 | 7280 · HEAT, LIGHT, & POWER () | 489.40 | | 489.40 | 213.95 | 703.35 | |
| 5/7/2013 | 15369 | VERIZON - 3058 | 631-427-3058 | TELEPHONE:7630 · LANDLINES | 37.39 | | 37.39 | 16.21 | 53.60 | |
| 6/5/2013 | 15464 | VERIZON - 3058 | 631-427-3058 | TELEPHONE:7630 · LANDLINES | 37.42 | | 37.42 | 15.95 | 53.37 | |
| 7/10/2013 | 15685 | VERIZON - 3058 | 631-427-3058 | TELEPHONE:7630 · LANDLINES | 37.42 | | 37.42 | 15.63 | 53.05 | |
| 7/24/2013 | 15764 | PSEG-LIPA - ARTS & CRAFTS (92-3) | 0025-9001-92-3 | 7280 · HEAT, LIGHT, & POWER () | 827.59 | | 827.59 | 342.83 | 1,170.42 | |
| 8/6/2013 | 15872 | VERIZON - 3058 | 631-427-3058 | TELEPHONE:7630 · LANDLINES | 29.06 | | 29.06 | 11.94 | 41.00 | |
| 8/28/2013 | 15998 | PSEG-LIPA - ARTS & CRAFTS (92-3) | 0025-9001-92-3 | 7280 · HEAT, LIGHT, & POWER () | 1,345.68 | | 1,345.68 | 545.83 | 1,891.51 | |

Exhibit G

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Additional West Hills Montessori Expenditures Paid by WHDC**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E | F | G | H | I | J | |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Check Number / Transaction Type | Name | QuickBooks Memo | QuickBooks Classification | Additional West Hills Montessori Expenditures Paid by WHDC Before Barter Fees and Statutory Interest[1] | Barter Fee (If Applicable)[2] | Additional West Hills Montessori Expenditures Paid by WHDC Before Statutory Interest | Statutory Interest[3] | Additional West Hills Montessori Expenditures Paid by WHDC After Statutory Interest | Gettry Marcus Notes |
| 8/30/2013 | 16051 | VERIZON - 3058 | 631-427-3058 | TELEPHONE:7630 · LANDLINES | 31.33 | | 31.33 | 12.69 | 44.02 | |
| 10/9/2013 | 16153 | PSEG-LIPA - ARTS & CRAFTS (92-3) | 0025-9001-92-3 | 7280 · HEAT, LIGHT, & POWER () | 792.22 | | 792.22 | 313.13 | 1,105.35 | |
| 10/9/2013 | 16159 | VERIZON - 3058 | 631-427-3058 | TELEPHONE:7630 · LANDLINES | 31.33 | | 31.33 | 12.38 | 43.71 | |
| 11/14/2013 | 16249 | VERIZON - 3058 | 631-427-3058 | TELEPHONE:7630 · LANDLINES | 31.23 | | 31.23 | 12.07 | 43.30 | |
| 12/4/2013 | 16306 | VERIZON - 3058 | 631-427-3058 | TELEPHONE:7630 · LANDLINES | 31.27 | | 31.27 | 11.93 | 43.20 | |
| 1/8/2014 | 16380 | VERIZON - 3058 | 631-427-3058 | TELEPHONE:7630 · LANDLINES | 31.27 | | 31.27 | 11.66 | 42.93 | |
| 2/12/2014 | 20045 | VERIZON - 3058 | 631-427-3058 | TELEPHONE:7630 · LANDLINES | 31.39 | | 31.39 | 11.43 | 42.82 | |
| 3/7/2014 | 20101 | VERIZON - 3058 | 631-427-3058 | TELEPHONE:7630 · LANDLINES | 31.46 | | 31.46 | 11.28 | 42.74 | |
| 4/1/2014 | 20158 | VERIZON - 3058 | 631-427-3058 | TELEPHONE:7630 · LANDLINES | 31.57 | | 31.57 | 11.12 | 42.69 | |
| 4/30/2014 | 20245 | VERIZON - 3058 | 631-427-3058 | TELEPHONE:7630 · LANDLINES | 31.37 | | 31.37 | 10.83 | 42.20 | |
| 6/5/2014 | 20343 | VERIZON - 3058 | 631-427-3058 | TELEPHONE:7630 · LANDLINES | 31.36 | | 31.36 | 10.55 | 41.91 | |
| 7/8/2014 | 20533 | VERIZON - 3058 | 631-427-3058 | TELEPHONE:7630 · LANDLINES | 31.36 | | 31.36 | 10.29 | 41.65 | |
| 7/23/2014 | 20607 | PSEG-LIPA - ARTS & CRAFTS (92-3) | 0025-9001-92-3 | 7280 · HEAT, LIGHT, & POWER () | 1,144.85 | | 1,144.85 | 371.50 | 1,516.35 | |
| 7/29/2014 | 20657 | VERIZON - 3058 | 631-427-3058 | TELEPHONE:7630 · LANDLINES | 31.72 | | 31.72 | 10.25 | 41.97 | |
| 8/27/2014 | 20791 | PSEG-LIPA - ARTS & CRAFTS (92-3) | 0025-9001-92-3 | 7280 · HEAT, LIGHT, & POWER () | 1,090.75 | | 1,090.75 | 344.53 | 1,435.28 | |
| 8/27/2014 | 20776 | ANTHONY SALERNO | STRIP MONTESSORI FLOORS AFTER CAMP | REPAIRS & MAINT:7481 · LANDLORD REPAIRS | 250.00 | | 250.00 | 78.97 | 328.97 | |
| 9/3/2014 | 20875 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 31.58 | | 31.58 | 9.92 | 41.50 | |
| 9/23/2014 | 20939 | PSEG-LIPA - ARTS & CRAFTS (92-3) | 0025-9001-92-3 | 7280 · HEAT, LIGHT, & POWER () | 774.25 | | 774.25 | 239.40 | 1,013.65 | |
| 9/30/2014 | 20954 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 31.58 | | 31.58 | 9.71 | 41.29 | |
| 11/1/2014 | 21027 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 31.52 | | 31.52 | 9.44 | 40.96 | |
| 12/4/2014 | 21105 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 31.54 | | 31.54 | 9.19 | 40.73 | |
| 1/2/2015 | 21151 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 31.54 | | 31.54 | 8.97 | 40.51 | |
| 2/4/2015 | 21220 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 31.64 | | 31.64 | 8.74 | 40.38 | |
| 3/3/2015 | 21317 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 31.60 | | 31.60 | 8.52 | 40.12 | |
| 4/1/2015 | 21380 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 31.60 | | 31.60 | 8.29 | 39.89 | |
| 4/1/2015 | 21381 | WEST HILLS MONTESSORI SCHOOL, INC. | RENTAL FOR OCTOBER 2013 - 01315 | 7240 · EQUIPMENT RENTAL | 4,800.00 | | 4,800.00 | 1,259.31 | 6,059.31 | |
| 4/1/2015 | 21381 | WEST HILLS MONTESSORI SCHOOL, INC. | RENTAL FOR FEBRUARY | 7240 · EQUIPMENT RENTAL | 300.00 | | 300.00 | 78.71 | 378.71 | |
| 4/1/2015 | 21381 | WEST HILLS MONTESSORI SCHOOL, INC. | RENTAL FOR MARCH | 7240 · EQUIPMENT RENTAL | 300.00 | | 300.00 | 78.71 | 378.71 | |
| 5/11/2015 | 21481 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 31.82 | | 31.82 | 8.03 | 39.85 | |
| 5/11/2015 | 21483 | WEST HILLS MONTESSORI SCHOOL, INC. | | 7240 · EQUIPMENT RENTAL | 300.00 | | 300.00 | 75.75 | 375.75 | |
| 5/13/2015 | 21498 | WEST HILLS MONTESSORI SCHOOL, INC. | RENTAL FOR MAY | 7240 · EQUIPMENT RENTAL | 300.00 | | 300.00 | 75.60 | 375.60 | |
| 6/2/2015 | 21541 | WEST HILLS MONTESSORI SCHOOL, INC. | RENTAL FOR JUNE | 7240 · EQUIPMENT RENTAL | 300.00 | | 300.00 | 74.12 | 374.12 | |
| 6/3/2015 | 21545 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 31.73 | | 31.73 | 7.83 | 39.56 | |
| 7/1/2015 | 21674 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 31.73 | | 31.73 | 7.61 | 39.34 | |
| 7/22/2015 | 21782 | PSEG-LIPA - ARTS & CRAFTS (92-3) | 0025-9001-92-3 | 7280 · HEAT, LIGHT, & POWER () | 807.83 | | 807.83 | 189.63 | 997.46 | |
| 7/22/2015 | 21787 | WEST HILLS MONTESSORI SCHOOL, INC. | | 7240 · EQUIPMENT RENTAL | 300.00 | | 300.00 | 70.42 | 370.42 | |
| 8/7/2015 | 21845 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 44.19 | | 44.19 | 10.20 | 54.39 | |
| 8/19/2015 | 21901 | PSEG-LIPA - ARTS & CRAFTS (92-3) | 0025-9001-92-3 | 7280 · HEAT, LIGHT, & POWER () | 832.66 | | 832.66 | 189.71 | 1,022.37 | |
| 9/1/2015 | 21960 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 42.46 | | 42.46 | 9.54 | 52.00 | |
| 9/17/2015 | 21999 | WEST HILLS MONTESSORI SCHOOL, INC. | | 7240 · EQUIPMENT RENTAL | 600.00 | | 600.00 | 132.41 | 732.41 | |
| 9/24/2015 | 22018 | PSEG-LIPA - ARTS & CRAFTS (92-3) | 0025-9001-92-3 | 7280 · HEAT, LIGHT, & POWER () | 651.67 | | 651.67 | 142.69 | 794.36 | |
| 10/7/2015 | 22034 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 42.46 | | 42.46 | 9.16 | 51.62 | |
| 10/13/2015 | 22046 | WEST HILLS MONTESSORI SCHOOL, INC. | | 7240 · EQUIPMENT RENTAL | 300.00 | | 300.00 | 64.28 | 364.28 | |
| 11/3/2015 | 22080 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 42.40 | | 42.40 | 8.87 | 51.27 | |
| 11/10/2015 | 22095 | WEST HILLS MONTESSORI SCHOOL, INC. | | 7240 · EQUIPMENT RENTAL | 300.00 | | 300.00 | 62.21 | 362.21 | |
| 12/7/2015 | 22137 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 42.42 | | 42.42 | 8.51 | 50.93 | |
| 12/7/2015 | 22138 | WEST HILLS MONTESSORI SCHOOL, INC. | | 7240 · EQUIPMENT RENTAL | 300.00 | | 300.00 | 60.21 | 360.21 | |
| 1/4/2016 | 22179 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 42.42 | | 42.42 | 8.22 | 50.64 | |
| 1/29/2016 | 22232 | WEST HILLS MONTESSORI SCHOOL, INC. | COPIER LEASE | 7240 · EQUIPMENT RENTAL | 359.41 | | 359.41 | 67.44 | 426.85 | |
| 2/3/2016 | 22243 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 42.64 | | 42.64 | 7.95 | 50.59 | |
| 3/3/2016 | 22294 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 42.55 | | 42.55 | 7.63 | 50.18 | |
| 3/30/2016 | 22355 | VERIZON - 3058 | | TELEPHONE:7630 · LANDLINES | 42.55 | | 42.55 | 7.34 | 49.89 | |
| 7/28/2016 | 22743 | PSEG-LIPA - ARTS & CRAFTS (92-3) | 0025-9001-92-3 | 7280 · HEAT, LIGHT, & POWER () | 861.57 | | 861.57 | 123.22 | 984.79 | |
| 8/23/2016 | 22857 | PSEG-LIPA - ARTS & CRAFTS (92-3) | 0025-9001-92-3 | 7280 · HEAT, LIGHT, & POWER () | 1,010.73 | | 1,010.73 | 138.07 | 1,148.80 | |
| 10/6/2016 | 22962 | PSEG-LIPA - ARTS & CRAFTS (92-3) | 0025-9001-92-3 | 7280 · HEAT, LIGHT, & POWER () | 963.64 | | 963.64 | 121.18 | 1,084.82 | |
| | | | | | $109,114 | $2,237 | $111,351 | $56,953 | $168,304 | |

Notes:
(1) To Exhibit C, Column D.
(2) Calculated a Barter Fee in the amount of 10% for NCE Barter transactions in which barter statement was not available.
(3) To Exhibit O, Column D.

- All totals have been rounded to the nearest dollar.
- There may be minor differences due to rounding.

**Exhibit H -**
**Gersh Academy Expenditures Paid by WHDC**
**June 5, 2009 through October 15, 2016**

Exhibit H

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Gersh Academy Expenditures Paid by WHDC
For the Period June 5, 2009 through October 15, 2016

| A | B | C | D | E | F | G | H (F + G) | I | J (H + I) | |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Check Number / Transaction Type | Name | QuickBooks Memo | QuickBooks Account | Gersh Academy Expenditures Paid by WHDC Before Statutory Interest and Barter Fees | Barter Fees (if applicable) | Gersh Academy Expenditures Paid by WHDC Before Statutory Interest[1] | Statutory Interest[2] | Gersh Academy Expenditures Paid by WHDC After Statutory Interest | Gettry Marcus Notes |
| 1/13/2009 | 10358 | GERSH ACAD. | due from Gersh Academy for Summer Program (INV# 2) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | $2,183.34 [3] | | $2,183.34 | $1,717.36 | $3,900.70 | |
| 2/18/2009 | 10414 | GERSH ACAD. | due from Gersh Academy for summer program (INV# 2) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 2,183.34 [3] | | $2,183.34 | $1,717.36 | $3,900.70 | |
| 12/22/2009 | 11475 | GERSH ACAD. | gersh academy van service by danny (INV# 2) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 50.48 [3] | | 50.48 | 37.22 | 87.70 | |
| 12/30/2009 | JE-PC | GERSH ACAD. | Diesel for Hauppauge - Peter (INV# 2009) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 60.00 [3] | | 60.00 | 44.12 | 104.12 | |
| 7/17/2010 | Wire | GERSH ACAD. | Gersh Academy: field day, staff appreciation day, graduation | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 1,259.09 [3] | | 1,259.09 | 864.01 | 2,123.10 | |
| 10/14/2010 | Wire | GERSH ACAD. | hauppauge all in one rental (INV# 11) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 165.76 [3] | | 165.76 | 110.11 | 275.87 | |
| 11/19/2010 | 12594 | GERSH ACAD. | 1/2 gorilla jackets & shipping (INV# 11) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 283.22 [3] | | 283.22 | 185.62 | 468.84 | |
| 12/14/2010 | Wire | GERSH ACAD. | ice melt hauppauge (INV# 17) | 7395 · MISC PROG-KARATE,MUSIC,TUTOR | 120.67 [3] | | 120.67 | 78.34 | 199.01 | |
| 4/10/2010 | 11659 | GERSH ACADEMY, INC. | INVOICE# 7078 | 7065 · ADVERTISING & MARKETING | $1,562.50 | | 1,562.50 | 1,109.97 | 2,672.47 | |
| 6/13/2010 | 11851 | GERSH ACADEMY, INC. | INVOICE# 7352 | 7065 · ADVERTISING & MARKETING | 500.00 | | 500.00 | 347.30 | 847.30 | |
| 7/17/2010 | Credit Card Charge | | Gersh Academy: field day, staff appreciation day, graduation | 7600 · OTHER PROG COSTS:7395 · MISC PROG-KARATE,MUSIC,TUTOR | 1,259.09 | | 1,259.09 | 864.01 | 2,123.10 | Originally classified to account # 1275-16, later expensed |
| 10/14/2010 | Credit Card Charge | | hauppauge all in one rental (INV# 11) | 7600 · OTHER PROG COSTS:7395 · MISC PROG-KARATE,MUSIC,TUTOR | 165.76 | | 165.76 | 110.11 | 275.87 | Originally classified to account # 1275-16, later expensed |
| 11/19/2010 | 12594 | RECREATION OUTLET | 1/2 gorilla jackets & shipping (INV# 11) | 7600 · OTHER PROG COSTS:7395 · MISC PROG-KARATE,MUSIC,TUTOR | 283.22 | | 283.22 | 185.62 | 468.84 | Originally classified to account # 1275-16, later expensed |
| 12/14/2010 | Credit Card Charge | | ice melt hauppauge (INV# 17) | 7600 · OTHER PROG COSTS:7395 · MISC PROG-KARATE,MUSIC,TUTOR | 120.67 | | 120.67 | 78.34 | 199.01 | Originally classified to account # 1275-16, later expensed |
| 12/31/2010 | NCE Barter | | NCE Gersh Academy Brochure | 7510 · STATIONARY & PRINTING | 911.00 | | 911.00 | 587.63 | 1,498.63 | |
| 2/23/2011 | NCE Barter | Dee Jay Carpet | GA: NCE carpet 2nd floor office (INV# 33) | 7376 · MISC BARTER EXPENSES | 4,400.00 | $440.00 | 4,840.00 | 3,057.55 | 7,897.55 | Includes $440 barter fee. Expensed separately. |
| 3/16/2011 | NCE Barter | Office Furniture Service | GA: NCE furniture 2nd floor office (INV# 35) | 7376 · MISC BARTER EXPENSES | 19,050.00 | | 19,050.00 | 11,935.74 | 30,985.74 | Expensed as $19,375 ($19,050 + $325). See 3/30/2011 transaction. |
| 3/30/2011 | NCE Barter | Office Furniture Service | GA: NCE furniture 2nd floor office (INV# 35) | 7376 · MISC BARTER EXPENSES | 325.00 | | 325.00 | 202.51 | 527.51 | Expensed as $19,375 ($19,050 + $325). See 3/16/2011 transaction. |
| 4/28/2011 | NCE Barter | South Shore Bus. Solution | GA: Toshiba Copier Glen Oaks | 7376 · MISC BARTER EXPENSES | 5,495.00 | 549.50 | 6,044.50 | 3,723.08 | 9,767.58 | Includes barter fee of $549.50. Expensed separately. |
| 5/3/2011 | NCE Barter | Office Furniture Service | GA: Office Furniture Store (2nd floor office renovation) | 7376 · MISC BARTER EXPENSES | 1,215.00 | | 1,215.00 | 746.88 | 1,961.88 | |
| 5/9/2011 | NCE Barter | Gift Basket Bowtique | GA: Gift Basket Bowtique (basket for school superintendent) | 7376 · MISC BARTER EXPENSES | 55.00 | | 55.00 | 33.73 | 88.73 | Includes barter fee of $5. Expensed separately. |
| 5/13/2011 | | HOME DEPOT | GA: Queens & 2nd floor | REPAIRS & MAINT:7480 · Grounds - Gen'l Prop Maint | 481.13 | | 481.13 | 294.57 | 775.70 | |
| 6/27/2011 | NCE Barter | Sweetheart Auto Sales | GA: Sweetheart Auto Sales ('00 Expedition Buffalo) | 7376 · MISC BARTER EXPENSES | 6,995.00 | 699.50 | 7,694.50 | 4,625.55 | 12,320.05 | Includes barter fee of $699.50. Expensed separately. |
| 8/31/2011 | NCE Barter | | GA: South Shore Business Copier Toner | 7376 · MISC BARTER EXPENSES | 773.00 | 77.30 | 850.30 | 497.53 | 1,347.83 | |
| 10/31/2011 | NCE Barter | | GA: South Shore Business-Toner Queens School | 7376 · MISC BARTER EXPENSES | 673.00 | 67.30 | 740.30 | 422.03 | 1,162.33 | |
| 12/31/2011 | NCE Barter | Canterbury's Oyster Bar & Grill | GA: Canterbury's Oyster Bar & Grill | 7376 · MISC BARTER EXPENSES | 254.00 | | 254.00 | 140.98 | 394.98 | |
| 5/11/2012 | 14190 | COSMOS RESTAURANT EQUIPMENT | | 1500 · FIXED ASSETS:1570 · EQUIPMENT | 1,500.00 | | 1,500.00 | 781.60 | 2,281.60 | |
| 7/2/2012 | 14432 | COSMOS RESTAURANT EQUIPMENT | | 1500 · FIXED ASSETS:1570 · EQUIPMENT | 1,500.00 | | 1,500.00 | 762.42 | 2,262.42 | |
| 8/27/2012 | Credit Card Charge | CHEVROLET OF HUNTINGTON | MUST BE REIMBURSED BY GA | 7370 · MISCELLANEOUS EXPENSE | 768.77 | | 768.77 | 380.16 | 1,148.93 | |
| 1/31/2013 | TradeWorks Barter | Acer's Home & Garden & Florist | Refrigerators-Tradeworks | 1500 · FIXED ASSETS:1570 · EQUIPMENT | 3,000.00 | 300.00 | 3,300.00 | 1,508.60 | 4,808.60 | |
| 2/7/2013 | TradeWorks Barter | Appliance World | Refrigerators-Tradeworks | 1500 · FIXED ASSETS:1570 · EQUIPMENT | 2,935.00 | 293.50 | 3,228.50 | 1,470.34 | 4,698.84 | |
| 2/13/2013 | Credit Card Charge | JOBTARGET | | 7640 · TRAVEL | 450.00 | | 450.00 | 204.28 | 654.28 | |
| 7/10/2013 | 15648 | CAYLA GANDOLFO | LIFEGUARD FOR PICNIC, B'DAY PARTIES, GERSH ACADEMY GRADUATION | 7600 · OTHER PROG COSTS:7502 · CAMP SPECIAL EVENTS | 125.00 | | 125.00 | 52.21 | 177.21 | Part of a $225 transaction. |
| 7/10/2013 | 15664 | KYLE LUQMAN | PICNIC, B'DAY PARTIES, GERSH ACADEMY GRADUATION | 7600 · OTHER PROG COSTS:7502 · CAMP SPECIAL EVENTS | 125.00 | | 125.00 | 52.21 | 177.21 | |
| 7/10/2013 | 15666 | MATTHEW GETZOFF | SCHOOL PARTY, AIR TECHNIQUES, GERSH ACADEMY GRADUATION | 7600 · OTHER PROG COSTS:7502 · CAMP SPECIAL EVENTS | 105.25 | | 105.25 | 43.96 | 149.21 | Part of a $225 transaction. |
| 7/10/2013 | 15674 | RENNE EPSTEIN | GERSH ACADEMY GRADUATION | 7600 · OTHER PROG COSTS:7502 · CAMP SPECIAL EVENTS | 106.25 | | 106.25 | 44.38 | 150.63 | |
| 7/10/2013 | 15675 | RICHARD MONTANO | GERSH ACADEMY GRADUATION | 7600 · OTHER PROG COSTS:7502 · CAMP SPECIAL EVENTS | 106.25 | | 106.25 | 44.38 | 150.63 | |
| 7/24/2013 | 15777 | SARAH HEERBRANDT | SAFETY MIRROR FOR W. HEMPSTEAD | 7244 · LUNCH PROGRAM COSTS:7520 · SUPPLIES | 6.48 | | 6.48 | 2.68 | 9.16 | |
| 8/20/2013 | Credit Card Charge | HOME DEPOT | GA EXPENSE - WEST HEMPSTEAD | 7480 · Grounds - Gen'l Prop Maint | 406.81 | | 406.81 | 165.81 | 572.62 | |
| 8/22/2013 | Credit Card Charge | HARBOR FREIGHT TOOLS | TOOLS FOR WEST HEMPSTEAD - GA | 7480 · Grounds - Gen'l Prop Maint | 43.44 | | 43.44 | 17.68 | 61.12 | |
| 9/30/2013 | 16138 | GERSH ACADEMY, INC. | IMS BARTER CASH FEE FOR ARMY VEHICLE | 7376 · MISC BARTER EXPENSES | 1,600.00 | | 1,600.00 | 635.97 | 2,235.97 | |
| 10/22/2013 | Credit Card Charge | HUNTINGTON PLUMBING SUPPLY | GERSH ACADEMY | REPAIRS & MAINT:7480 · Grounds - Gen'l Prop Maint | 43.85 | | 43.85 | 17.19 | 61.04 | |
| 11/18/2013 | Credit Card Charge | HOME DEPOT | GERSH ACADEMY | REPAIRS & MAINT:7480 · Grounds - Gen'l Prop Maint | 52.10 | | 52.10 | 20.08 | 72.18 | |
| 11/20/2013 | Credit Card Charge | HOME DEPOT | GERSH ACADEMY | REPAIRS & MAINT:7480 · Grounds - Gen'l Prop Maint | 114.64 | | 114.64 | 44.13 | 158.77 | |
| 2/12/2014 | 20033 | PROFESSIONAL COMMUNICATIONS | GERSH-2 | PROF FEES:7437 · Other Misc | 45.00 | | 45.00 | 16.39 | 61.39 | |
| 4/1/2014 | 20155 | PROFESSIONAL COMMUNICATIONS | GERSH-7 | PROF FEES:7437 · Other Misc | 15.00 | | 15.00 | 5.29 | 20.29 | |
| 4/16/2014 | 20198 | PROFESSIONAL COMMUNICATIONS | GERSH-12- Note: SOcial Club is part of Gersh Academy - they will pay this portion of #12 | PROF FEES:7437 · Other Misc | 25.00 | | 25.00 | 8.72 | 33.72 | |

Exhibit H

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Gersh Academy Expenditures Paid by WHDC**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E | F | G | H (F + G) | I | J (H + I) | |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Check Number / Transaction Type | Name | QuickBooks Memo | QuickBooks Account | Gersh Academy Expenditures Paid by WHDC Before Statutory Interest and Barter Fees | Barter Fees (if applicable) | Gersh Academy Expenditures Paid by WHDC Before Statutory Interest[1] | Statutory Interest[2] | Gersh Academy Expenditures Paid by WHDC After Statutory Interest | Gettry Marcus Notes |
| 8/29/2014 | Credit Card Charge | GERSH ACADEMY, INC. | ITEMS BOUGHT ON WHDC CREDIT CARD IN ERROR - BILLABLE TO GA | 7370 · MISCELLANEOUS EXPENSE | 226.72 | | 226.72 | 71.50 | 298.22 | |
| 10/31/2014 | 21032 | GERSH ACADEMY, INC. | TO REPLACE 3 COMPUTERS (HEATH, WENDY, ESTHER (NOW ROMELL)) THAT WERE GIVEN TO WH BY GA | 1500 · FIXED ASSETS:1650 · OFFICE EQUIPMENT | 1,244.97 | | 1,244.97 | 373.29 | 1,618.26 | |
| 6/17/2015 | 21614 | GERSH ACADEMY, INC. | 4/8 - 5/7/15 | POSTAGE:7430 · Postage | 334.21 | | 334.21 | 81.34 | 415.55 | |
| 6/17/2015 | 21614 | GERSH ACADEMY, INC. | 5/8 - 6/7/15 | POSTAGE:7430 · Postage | 65.50 | | 65.50 | 15.94 | 81.44 | |
| 7/29/2015 | 21813 | GERSH ACADEMY, INC. | 060815 - 070715 | POSTAGE:7430 · Postage | 90.01 | | 90.01 | 20.97 | 110.98 | |
| 8/19/2015 | 21895 | GERSH ACADEMY, INC. | 2015 LEASE | 7115 · BUS TRANSPORATION | 3,000.00 | | 3,000.00 | 683.51 | 3,683.51 | |
| 8/19/2015 | 21911 | GERSH ACADEMY, INC. | 070815 - 080715 | POSTAGE:7430 · Postage | 106.41 | | 106.41 | 24.24 | 130.65 | |
| 9/17/2015 | 22003 | GERSH ACADEMY, INC. | 080815 - 090615 | POSTAGE:7430 · Postage | 95.63 | | 95.63 | 21.10 | 116.73 | |
| 10/19/2015 | 22054 | GERSH ACADEMY, INC. | 090715 - 100715 | POSTAGE:7430 · Postage | 88.53 | | 88.53 | 18.84 | 107.37 | |
| 12/1/2015 | 22127 | GERSH ACADEMY, INC. | 100815-111515 | POSTAGE:7430 · Postage | 74.46 | | 74.46 | 15.06 | 89.52 | |
| 1/6/2016 | 22183 | GERSH ACADEMY, INC. | 111615-121515 | POSTAGE:7430 · Postage | 62.41 | | 62.41 | 12.03 | 74.44 | |
| 1/13/2016 | 22200 | GERSH ACADEMY, INC. | LOCKERS - 15043 | 1500 · FIXED ASSETS:1550 · FURNITURE & FIXTURES | 1,000.00 | | 1,000.00 | 191.07 | 1,191.07 | |
| 1/15/2016 | 22227 | GERSH ACADEMY, INC. | 121615-011516 | POSTAGE:7430 · Postage | 133.79 | | 133.79 | 25.50 | 159.29 | |
| 2/25/2016 | 22282 | GERSH ACADEMY, INC. | 011616-021416 | POSTAGE:7430 · Postage | 144.63 | | 144.63 | 26.10 | 170.73 | |
| 3/30/2016 | 22348 | GERSH ACADEMY, INC. | 021516-031416 | POSTAGE:7430 · Postage | 52.53 | | 52.53 | 9.04 | 61.57 | |
| 4/20/2016 | 22401 | CORBETT PUBLIC RELATIONS, INC | GA 416 | PROF FEES:7437 · Other Misc | 1,100.00 | | 1,100.00 | 183.66 | 1,283.66 | |
| 4/27/2016 | 22410 | GERSH ACADEMY, INC. | 031516-041416 | POSTAGE:7430 · Postage | 318.51 | | 318.51 | 52.63 | 371.14 | |
| 6/14/2016 | 22555 | CORBETT PUBLIC RELATIONS, INC | GA 516 | PROF FEES:7437 · Other Misc | 950.00 | | 950.00 | 145.77 | 1,095.77 | |
| 6/14/2016 | 22558 | GERSH ACADEMY, INC. | 041516-051516 | POSTAGE:7430 · Postage | 41.16 | | 41.16 | 6.32 | 47.48 | |
| 7/28/2016 | 22742 | GERSH ACADEMY, INC. | | POSTAGE:7430 · Postage | 201.69 | | 201.69 | 28.77 | 230.46 | |
| 7/31/2016 | 22788 | CORBETT PUBLIC RELATIONS, INC | GA 616 | PROF FEES:7437 · Other Misc | 1,000.00 | | 1,000.00 | 141.89 | 1,141.89 | |
| | | | | | **$74,230** | **$2,427** | **$76,657** | **$42,144** | **$118,801** | |

Notes:
(1) To Exhibit C, Column E.
(2) To Exhibit O, Column E.
(3) Each of these transactions was originally classified on WHDC's books in account # 1275-16 Gersh Academy, a loan account representing that these amounts were due to WHDC.  On 12/31/2010, a journal entry was made in the amount of $6,305.90 that classified each of these transactions to account # 7395 - MISC PROG-KARATE,MUSIC,TUTOR, an expense account of WHDC.

- All totals have been rounded to the nearest dollar.
- There may be minor differences due to rounding.
- Where the date of the transaction could not be determined, the end of the month in which the transaction occurred was used as the date.

# Exhibit I -
# Reconciliation of Total Management Fees Paid to Gersh Management and  Kevin Gersh and Excess Management Fees Disbursed
# June 5, 2009 through October 15, 2016

Exhibit I

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Reconciliation of Total Management Fees Paid to Gersh Management and  Kevin Gersh and Excess Management Fees Paid to Gersh Management and Kevin Gersh**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D (B + C) | E | F (D - E) | G | H (F + G) |
|---|---|---|---|---|---|---|---|
| Period | Management Fees Paid to Gersh Management[1] | Kevin Gersh Salary[2] | Total Management Fees Paid to Gersh Management and Kevin Gersh | Expected Management Fees | Excess Management Fees Before Adjustments | Adjustments[3] | Excess Management Fees Paid to Gersh Management and Kevin Gersh[4] |
| 2009 | $147,844 | Unknown | $147,844 | Unknown | - | - | - |
| 2010 | 300,000 | Unknown | 300,000 | $300,000 | - | - | - |
| 2011 | 268,334 | - | 268,334 | 250,000 | $18,334 | - | $18,334 |
| 2012 | 100,004 | - | 100,004 | - | 100,004 | - | 100,004 |
| 2013 | - | $119,318 | 119,318 | - | 119,318 | - | 119,318 |
| 2014 | 150,000 | 5,682 | 155,682 | 150,000 | 5,682 | - | 5,682 |
| 2015 | 300,000 | - | 300,000 | - | 300,000 | ($75,000) | 225,000 |
| 2016 (through Oct. 15) | 250,000 | - | 250,000 | - | 250,000 | (250,000) | - |
| | $1,368,338 | $125,000 | $1,493,338 | $700,000 | $793,338 | ($325,000) | $468,338 |

Notes:

(1)  Per WHDC's QuickBooks, account # 7398 - OUTSIDE SERVICES-GERSH MGMT PY.

(2) Excludes any amounts reclassified in WHDC's QuickBooks to account # 7398 - OUTSIDE SERVICES-GERSH MGMT PY. Paychex records were only available as of December 30, 2010.

(3) These transactions were not disbursed as of October 15, 2016; these transactions are included in Account Payable: Gersh Management Services, Inc., and are dealt with on Exhibit D.

(4) To Exhibit I(1), Column F.  The period relates to when the fees were charged rather than when they were paid.

- All totals have been rounded to the nearest dollar.

- There may be minor differences due to rounding.

# Exhibit I(1) -
# Excess Management Fees Paid to Gersh
# Management and Kevin Gersh
# June 5, 2009 through October 15, 2016

**Exhibit I(1)**

Ellynn Greenhaus, et al. v. Kevin Gersh, et al.
Excess Management Fees Paid to Gersh Management and Kevin Gersh
For the Period June 5, 2009 through October 15, 2016

| A | B | C | D | E | F | G | H (F + G) |
|---|---|---|---|---|---|---|---|
| Date | Check Number / Transaction Type | Name | QuickBooks Memo | QuickBooks Account | Excess Management Fees Paid to Gersh Management and Kevin Gersh Before Statutory Interest[1] | Statutory Interest[2] | Excess Management Fees Paid to Gersh Management and Kevin Gersh After Statutory Interest |
| 3/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | NOVEMBER MGMT FEES | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | $9,167.00 | $4,102.55 | $13,269.55 |
| 3/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | DECEMBER MGMT FEES | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | 9,167.00 | 4,102.55 | 13,269.55 |
| 3/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | JANUARY MGMT FEES | 1100 · Prepaid Exp:1140 · Management Fees | 9,167.00 | 4,102.55 | 13,269.55 |
| 3/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | FEBRUARY MGMT FEES | 1100 · Prepaid Exp:1140 · Management Fees | 9,167.00 | 4,102.55 | 13,269.55 |
| 3/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | MARCH MGMT FEES | 1100 · Prepaid Exp:1140 · Management Fees | 9,167.00 | 4,102.55 | 13,269.55 |
| 3/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | APRIL MGMT FEES | 1100 · Prepaid Exp:1140 · Management Fees | 9,167.00 | 4,102.55 | 13,269.55 |
| 3/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | MAY MGMT FEES | 1100 · Prepaid Exp:1140 · Management Fees | 9,167.00 | 4,102.55 | 13,269.55 |
| 3/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | JUNE MGMT FEES | 1100 · Prepaid Exp:1140 · Management Fees | 9,167.00 | 4,102.55 | 13,269.55 |
| 3/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | JULY MGMT FEES | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | 4,167.00 | 1,864.88 | 6,031.88 |
| 3/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | AUGUST MGMT FEES | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | 4,167.00 | 1,864.88 | 6,031.88 |
| 3/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | SEPT MGMT FEE | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | 9,167.00 | 4,102.55 | 13,269.55 |
| 3/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | OCTOBER MGMT FEE | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | 9,167.00 | 4,102.55 | 13,269.55 |
| 3/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | NOVEMBER MGMT FEE | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | 9,167.00 | 4,102.55 | 13,269.55 |
| 3/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | DECEMBER MGMT FEE | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | 9,167.00 | 4,102.55 | 13,269.55 |
| 3/22/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,527.40 | 8,209.22 |
| 4/5/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,507.78 | 8,189.60 |
| 4/19/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,488.17 | 8,169.99 |
| 5/3/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,468.56 | 8,150.38 |
| 5/17/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,448.94 | 8,130.76 |
| 5/31/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,429.33 | 8,111.15 |

Exhibit I(1)

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Excess Management Fees Paid to Gersh Management and Kevin Gersh**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E | F | G | H (F + G) |
|---|---|---|---|---|---|---|---|
| Date | Check Number / Transaction Type | Name | QuickBooks Memo | QuickBooks Account | Excess Management Fees Paid to Gersh Management and Kevin Gersh Before Statutory Interest[1] | Statutory Interest[2] | Excess Management Fees Paid to Gersh Management and Kevin Gersh After Statutory Interest |
| 6/14/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,409.71 | 8,091.53 |
| 6/28/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,390.10 | 8,071.92 |
| 7/12/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,370.49 | 8,052.31 |
| 7/26/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,350.87 | 8,032.69 |
| 8/9/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,331.26 | 8,013.08 |
| 8/23/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,311.64 | 7,993.46 |
| 9/6/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,292.03 | 7,973.85 |
| 9/20/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,272.42 | 7,954.24 |
| 10/4/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,252.80 | 7,934.62 |
| 10/18/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,233.19 | 7,915.01 |
| 11/1/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,213.57 | 7,895.39 |
| 11/15/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,193.96 | 7,875.78 |
| 11/29/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,174.35 | 7,856.17 |
| 12/13/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,154.73 | 7,836.55 |
| 12/27/2013 | Wire | Kevin Gersh | | | 5,681.82 | 2,135.12 | 7,816.94 |
| 1/10/2014 | Wire | Kevin Gersh | | | 5,681.82 | 2,115.51 | 7,797.33 |
| 3/30/2016 | 22349 | GERSH MANAGEMENT SERVICES, INC. | | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | 75,000.00 | 12,909.84 | 87,909.84 |
| 6/28/2016 | 22605 | GERSH MANAGEMENT SERVICES, INC. | | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | 150,000.00 | 22,500.00 | 172,500.00 |
| | | | | | **$468,338** | **$139,443** | **$607,781** |

Notes:
(1) From Exhibit I, Column H.  To Exhibit C, Column F.
(2) To Exhibit O, Column F.

- All totals have been rounded to the nearest dollar.
- There may be minor differences due to rounding.

# Exhibit J -
# Additional Gersh Management Disbursements
# June 5, 2009 through October 15, 2016

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Additional Gersh Management Disbursements**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E | F | G | H (F + G) |
|---|---|---|---|---|---|---|---|
| Date | Check Number / Transaction Type | Name | QuickBooks Memo | QuickBooks Account | Additional Disbursements to Gersh Management Before Statutory Interest[1] | Statutory Interest[2] | Additional Disbursements to Gersh Management Before After Statutory Interest |
| 05/14/2010 | 11724 | GERSH MANAGEMENT SERVICES, INC. | MARK PETRONE SALARY & BENEFITS 8/22/09-12/25/09 | 7365 · Main Bldg - Repairs & Maint | $17,038.96 | $11,961.35 | $29,000.31 |
| 06/01/2010 | 11795 | GERSH MANAGEMENT SERVICES, INC. | INVOICE# 875 | 7065 · ADVERTISING & MARKETING | 875.00 | 610.37 | 1,485.37 |
| 06/01/2010 | 11796 | GERSH MANAGEMENT SERVICES, INC. | INVOICE# 7247 | 7065 · ADVERTISING & MARKETING | 1,750.00 | 1,220.73 | 2,970.73 |
| 08/13/2010 | Credit Card Charge | GERSH MANAGEMENT SERVICES | 1/2 entrepreneur's organization annual member fees | 7600 · OTHER PROG COSTS:7395 · MISC PROG-KARATE,MUSIC,TUTOR | 1,600.00 | 1,087.30 | 2,687.30 |
| 11/09/2010 | 12519 | GERSH MANAGEMENT SERVICES, INC. | INVOICE# 290 | 7510 · STATIONARY & PRINTING | 402.15 | 264.56 | 666.71 |
| 12/17/2010 | 12646 | GERSH MANAGEMENT SERVICES, INC. | NOVEMBER MGMT | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 1,737.17 | 1,126.54 | 2,863.71 |
| 01/25/2011 | 12736 | GERSH MANAGEMENT SERVICES, INC. | INVOICE# 299 | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 2,196.36 | 1,403.20 | 3,599.56 |
| 01/25/2011 | 12737 | GERSH MANAGEMENT SERVICES, INC. | INVOICE# 298 | 7505 · STAFF MEETINGS & PARTIES | 195.58 | 124.95 | 320.53 |
| 02/23/2011 | 12846 | GERSH MANAGEMENT SERVICES, INC. | INVOICE# 302 | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 3,223.67 | 2,036.48 | 5,260.15 |
| 03/23/2011 | 12870 | GERSH MANAGEMENT SERVICES, INC. | INVOICE# 307 | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 866.67 | 541.51 | 1,408.18 |
| 04/12/2011 | 12944 | GERSH MANAGEMENT SERVICES | INVOICE# 309 | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 3,358.49 | 2,081.90 | 5,440.39 |
| 05/27/2011 | 13088 | GERSH MANAGEMENT SERVICES, INC. | | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 3,647.69 | 2,220.69 | 5,868.38 |
| 06/09/2011 | 13133 | GERSH MANAGEMENT SERVICES, INC. | MARTIN - MAY | REPAIRS & MAINT:7364 · OUTSIDE SERVICES-MARTIN | 1,302.64 | 788.86 | 2,091.50 |
| 06/09/2011 | 13133 | GERSH MANAGEMENT SERVICES, INC. | MAY | REPAIRS & MAINT:7364 · OUTSIDE SERVICES-MARTIN | 4,696.01 | 2,843.85 | 7,539.86 |
| 06/09/2011 | 13133 | GERSH MANAGEMENT SERVICES, INC. | MAY | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 3,816.78 | 2,311.40 | 6,128.18 |
| 02/27/2013 | 15177 | GERSH MANAGEMENT SERVICES, INC. | Special Mgt Fee for KG-TDA | SALARIES:ADMIN:7355 · Office - billed thru GM | 10,000.00 | 4,504.93 | 14,504.93 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | 1/2 Month Mar 2011 | SALARIES:ADMIN:7355 · Office - billed thru GM | 2,500.00 | 1,118.84 | 3,618.84 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | JUNE | SALARIES:ADMIN:7355 · Office - billed thru GM | 5,000.00 | 2,237.67 | 7,237.67 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | OCTOBER | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 3,661.44 | 1,638.62 | 5,300.06 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | DECMEBER | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 3,830.53 | 1,714.29 | 5,544.82 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | DECEMBER | REPAIRS & MAINT:7364 · OUTSIDE SERVICES-MARTIN | 4,221.11 | 1,889.09 | 6,110.20 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | JANUARY | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 3,901.27 | 1,745.95 | 5,647.22 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | FEBRUARY | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 3,556.65 | 1,591.72 | 5,148.37 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | MARCH | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 3,901.27 | 1,745.95 | 5,647.22 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | April | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 3,728.07 | 1,668.84 | 5,397.80 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | April | SALARIES:ADMIN:7355 · Office - billed thru GM | 5,000.00 | 2,237.67 | 7,237.67 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | May | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 4,073.57 | 1,823.06 | 5,896.63 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | May | SALARIES:ADMIN:7355 · Office - billed thru GM | 5,000.00 | 2,237.67 | 7,237.67 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | JUNE | SALARIES:ADMIN:7355 · Office - billed thru GM | 5,000.00 | 2,237.67 | 7,237.67 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | JUNE | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 3,740.96 | 1,674.21 | 5,415.17 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | JULY | SALARIES:ADMIN:7355 · Office - billed thru GM | 5,000.00 | 2,237.67 | 7,237.67 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | JULY | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 3,740.96 | 1,674.21 | 5,415.17 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | AUGUST | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 4,085.57 | 1,828.43 | 5,914.00 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | AUGUST | SALARIES:ADMIN:7355 · Office - billed thru GM | 5,000.00 | 2,237.67 | 7,237.67 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | SEPTEMBER | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 3,568.65 | 1,597.09 | 5,165.74 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | SEPTEMBER | SALARIES:ADMIN:7355 · Office - billed thru GM | 5,000.00 | 2,237.67 | 7,237.67 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | OCTOBER | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 4,085.57 | 1,828.43 | 5,914.00 |

Exhibit J

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Additional Gersh Management Disbursements**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E | F | G | H (F + G) |
|---|---|---|---|---|---|---|---|
| Date | Check Number / Transaction Type | Name | QuickBooks Memo | QuickBooks Account | Additional Disbursements to Gersh Management Before Statutory Interest[1] | Statutory Interest[2] | Additional Disbursements to Gersh Management Before After Statutory Interest |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | OCTOBER | SALARIES:ADMIN:7355 · Office - billed thru GM | 5,000.00 | 2,237.67 | 7,237.67 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | NOVEMBER | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 3,913.27 | 1,751.32 | 5,664.59 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | NOVEMBER | SALARIES:ADMIN:7355 · Office - billed thru GM | 5,000.00 | 2,237.67 | 7,237.67 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | DECEMBER | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 3,740.96 | 1,674.21 | 5,415.17 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | DECEMBER | SALARIES:ADMIN:7355 · Office - billed thru GM | 5,000.00 | 2,237.67 | 7,237.67 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | JANUARY | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 4,085.57 | 1,828.43 | 5,914.00 |
| 03/11/2013 | 15201 | GERSH MANAGEMENT SERVICES, INC. | JANUARY | SALARIES:ADMIN:7355 · Office - billed thru GM | 5,000.00 | 2,237.67 | 7,237.67 |
| 12/05/2013 | 16312 | GERSH MANAGEMENT SERVICES, INC. | NOV PR Billing from GM: PC and KS | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 3,367.59 | 1,283.74 | 4,651.33 |
| 12/05/2013 | 16312 | GERSH MANAGEMENT SERVICES, INC. | NOV PR Billing from GM: PC and KS | PROF FEES:7395-03 · Outside Srvc - Office | 7,503.53 | 2,860.39 | 10,363.92 |
| 12/19/2013 | 16345 | GERSH MANAGEMENT SERVICES, INC. | 12-13-13 PR Billing from GM:  KS | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 1,613.10 | 609.35 | 2,222.45 |
| 12/19/2013 | 16345 | GERSH MANAGEMENT SERVICES, INC. | 12-13-13 PR Billing from GM: PC | PROF FEES:7395-03 · Outside Srvc - Office | 3,610.38 | 1,363.83 | 4,974.21 |
| 01/08/2014 | 16374 | GERSH MANAGEMENT SERVICES, INC. | 1227 PR Billing from GM:  KS | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 1,754.48 | 654.11 | 2,408.59 |
| 01/08/2014 | 16374 | GERSH MANAGEMENT SERVICES, INC. | 1227 PR Billing from GM: PC | PROF FEES:7395-03 · Outside Srvc - Office | 3,893.14 | 1,451.45 | 5,344.59 |
| 01/17/2014 | 20001 | GERSH MANAGEMENT SERVICES, INC. | Pay Date 011014 PR Billing from GM:  KS-excess over accrual | REPAIRS & MAINT:7395-02 · MAINT - KEVIN STARK | 25.24 | 9.35 | 34.59 |
| 01/17/2014 | 20001 | GERSH MANAGEMENT SERVICES, INC. | Pay Date 011014 PR Billing from GM:  PC-excess over accrual | SALARIES:ADMIN:7355 · Office - billed thru GM | 90.15 | 33.41 | 123.56 |
| 01/17/2014 | 20001 | GERSH MANAGEMENT SERVICES, INC. | apply payment to accrual | 2081 · ACCRUED EXPENSE-MISC | 1,754.48 | 650.22 | 2,404.70 |
| 01/17/2014 | 20001 | GERSH MANAGEMENT SERVICES, INC. | apply payment to accrual | 2081 · ACCRUED EXPENSE-MISC | 3,893.14 | 1,442.81 | 5,335.95 |
| 02/12/2014 | 20006 | GERSH MANAGEMENT SERVICES, INC. | PC 012414 | SALARIES:ADMIN:7355 · Office - billed thru GM | 3,983.29 | 1,450.68 | 5,433.97 |
| 02/12/2014 | 20006 | GERSH MANAGEMENT SERVICES, INC. | PC 020714 | SALARIES:ADMIN:7355 · Office - billed thru GM | 4,266.05 | 1,553.66 | 5,819.71 |
| 02/28/2014 | 20076 | GERSH MANAGEMENT SERVICES, INC. | PC 022114 | SALARIES:ADMIN:7355 · Office - billed thru GM | 3,941.23 | 1,419.81 | 5,361.04 |
| 03/31/2014 | 20161 | GERSH MANAGEMENT SERVICES, INC. | PC 030714 | SALARIES:ADMIN:7355 · Office - billed thru GM | 3,599.98 | 1,269.36 | 4,869.34 |
| 03/31/2014 | 20161 | GERSH MANAGEMENT SERVICES, INC. | PC 032114 | SALARIES:ADMIN:7355 · Office - billed thru GM | 3,882.34 | 1,368.92 | 5,251.26 |
| 04/30/2014 | 20251 | GERSH MANAGEMENT SERVICES, INC. | PC 040414 | SALARIES:ADMIN:7355 · Office - billed thru GM | 3,599.98 | 1,242.73 | 4,842.71 |
| 04/30/2014 | 20251 | GERSH MANAGEMENT SERVICES, INC. | PC 041814 | SALARIES:ADMIN:7355 · Office - billed thru GM | 3,882.54 | 1,340.27 | 5,222.81 |
| 05/16/2014 | 20252 | GERSH MANAGEMENT SERVICES, INC. | PC 050214 | SALARIES:ADMIN:7355 · Office - billed thru GM | 3,599.98 | 1,228.53 | 4,828.51 |
| 05/16/2014 | 20252 | GERSH MANAGEMENT SERVICES, INC. | PC 051614 FINAL PAYROLL for PC | SALARIES:ADMIN:7355 · Office - billed thru GM | 3,882.54 | 1,324.96 | 5,207.50 |
| 10/09/2014 | 20973 | GERSH MANAGEMENT SERVICES, INC. | REIMBURSE GERSH MANAGEMENT FOR KG COSTA RICA TELEPHONE CHARGES | 7600 · OTHER PROG COSTS:9330 · TEEN TRAVEL EXPENSES | 1,062.08 | 324.21 | 1,386.29 |
| 02/11/2015 | 21281 | GERSH MANAGEMENT SERVICES, INC. | EXPENSES FOR CANADA CHARGED TO THE GERSH MANAGEMENT CREDIT CARD IN ERROR | 1100 · Prepaid Exp:1150 · Summer Exp:1151 · Teen Travel | 1,189.08 | 326.33 | 1,515.41 |
| 03/03/2016 | 22289 | GERSH MANAGEMENT SERVICES, INC. | REIMBURSEMENT FOR DEPOSIT TO CORBETT PUBLIC RELATIONS | PROF FEES:7437 · Other Misc | 1,000.00 | 178.77 | 1,178.77 |
| 03/04/2016 | 22298 | GERSH MANAGEMENT SERVICES, INC. | PETER DONOVAN - DECEMBER | SALARIES:ADMIN:7036.1 · MAINT - REIMBURSED | 3,487.70 | 622.64 | 4,110.34 |
| 03/17/2016 | 22305 | GERSH MANAGEMENT SERVICES, INC. | PETER DONOVAN - JANUARY | SALARIES:ADMIN:7036.1 · MAINT - REIMBURSED | 4,588.60 | 804.51 | 5,393.11 |
| 04/11/2016 | 22381 | GERSH MANAGEMENT SERVICES, INC. | PETER DONOVAN - FEBRUARY | SALARIES:ADMIN:7036.1 · MAINT - REIMBURSED | 4,553.67 | 770.39 | 5,324.06 |
| 04/20/2016 | 22391 | GERSH MANAGEMENT SERVICES, INC. | PETER DONOVAN - MARCH | SALARIES:ADMIN:7036.1 · MAINT - REIMBURSED | 4,497.61 | 750.95 | 5,248.56 |
| 05/11/2016 | 22444 | GERSH MANAGEMENT SERVICES, INC. | CONFERENCE TABLE PURCHASED BY GM | 7380 · OFFICE EXPENSE | 500.00 | 80.90 | 580.90 |
| 06/01/2016 | 22482 | GERSH MANAGEMENT SERVICES, INC. | PETER DONOVAN - APRIL | SALARIES:ADMIN:7036.1 · MAINT - REIMBURSED | 6,693.89 | 1,048.53 | 7,742.42 |
| 06/01/2016 | 22482 | GERSH MANAGEMENT SERVICES, INC. | BROCHURES | 7065 · ADVERTISING & MARKETING | 57.75 | 9.05 | 66.80 |

**Exhibit J**

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Additional Gersh Management Disbursements**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E | F | G | H (F + G) |
|---|---|---|---|---|---|---|---|
| Date | Check Number / Transaction Type | Name | QuickBooks Memo | QuickBooks Account | Additional Disbursements to Gersh Management Before Statutory Interest[1] | Statutory Interest[2] | Additional Disbursements to Gersh Management Before After Statutory Interest |
| 06/01/2016 | 22482 | GERSH MANAGEMENT SERVICES, INC. | CAMP DINNER WITH JOANNA | 7232 · ENTERTAINMENT-KG | 300.00 | 46.99 | 346.99 |
| 07/28/2016 | 22751 | GERSH MANAGEMENT SERVICES | REIMBURSEMENT FOR CHECK | 7370 · MISCELLANEOUS EXPENSE | 361.72 | 51.59 | 413.31 |
| | | | | | **$266,479** | **$116,107** | **$382,586** |

Notes:
(1) To Exhibit C, Column G.
(2) To Exhibit O, Column G.

- All totals have been rounded to the nearest dollar.
- There may be minor differences due to rounding.

**Exhibit K -**
**Barn Rent Paid by WHDC**
**June 5, 2009 through October 15, 2016**

Case 2:19-cv-03840-JS-ST   Document 1-2   Filed 09/18/19   Page 76 of 119   PageID #: 104

**Exhibit K**

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Barn Rent Paid by WHDC**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| Date | Check Number | Name | QuickBooks Memo | QuickBooks Account | Barn Rent Paid by WHDC Before Statutory Interest[1] | Statutory Interest[2] | Barn Rent Paid by WHDC After Statutory Interest |
| 06/12/2013 | 15483 | # KEVIN GERSH | 3SHR BARN RENTAL - JAN THRU JUNE 2013 | 7471 · RENT-BARN 3SHR | $6,000.00 | $2,547.62 | $8,547.62 |
| 06/26/2013 | 15588 | # KEVIN GERSH | 3SHR BARN RENTAL - JULY 2013 | 7471 · RENT-BARN 3SHR | 1,000.00 | 421.15 | 1,421.15 |
| 07/24/2013 | 15762 | # KEVIN GERSH | 3SHR BARN RENTAL - AUGUST 2013 | 7471 · RENT-BARN 3SHR | 1,000.00 | 414.25 | 1,414.25 |
| 08/28/2013 | 15996 | # KEVIN GERSH | 3SHR BARN RENTAL - SEPTEMBER 2013 | 7471 · RENT-BARN 3SHR | 1,000.00 | 405.62 | 1,405.62 |
| 09/25/2013 | 16132 | # KEVIN GERSH | 3SHR BARN RENTAL - OCTOBER 2013 | 7471 · RENT-BARN 3SHR | 1,000.00 | 398.71 | 1,398.71 |
| 10/29/2013 | 16220 | # KEVIN GERSH | 3SHR BARN RENTAL - NOVEMBER 2013 | 7471 · RENT-BARN 3SHR | 1,000.00 | 390.33 | 1,390.33 |
| 11/27/2013 | 16291 | # KEVIN GERSH | 3SHR BARN RENTAL - DECEMBER 2013 | 7471 · RENT-BARN 3SHR | 1,000.00 | 383.18 | 1,383.18 |
| 12/27/2013 | 16363 | # KEVIN GERSH | 3SHR BARN RENTAL - JANUARY 2014 | 7471 · RENT-BARN 3SHR | 1,000.00 | 375.78 | 1,375.78 |
| 01/21/2014 | 16403 | # KEVIN GERSH | 3SHR BARN RENTAL - FEBRUARY 2014 | 7471 · RENT-BARN 3SHR | 1,000.00 | 369.62 | 1,369.62 |
| 03/03/2014 | 20068 | # KEVIN GERSH | March 2013 Barn rental | 7471 · RENT-BARN 3SHR | 1,000.00 | 359.51 | 1,359.51 |
| 04/01/2014 | 20137 | # KEVIN GERSH | barn rental - April 2014 | 7471 · RENT-BARN 3SHR | 1,000.00 | 352.36 | 1,352.36 |
| 05/01/2014 | 20219 | # KEVIN GERSH | May 2014 | 7471 · RENT-BARN 3SHR | 1,000.00 | 344.96 | 1,344.96 |
| 06/05/2014 | 20333 | # KEVIN GERSH | JUNE 2014 | 7471 · RENT-BARN 3SHR | 1,000.00 | 336.33 | 1,336.33 |
| 07/09/2014 | 20540 | # KEVIN GERSH | JULY 2014 | 7471 · RENT-BARN 3SHR | 1,000.00 | 327.95 | 1,327.95 |
| 08/01/2014 | 20677 | # KEVIN GERSH | AUGUST 2014 | 7471 · RENT-BARN 3SHR | 1,000.00 | 322.27 | 1,322.27 |
| 09/01/2014 | 20836 | # KEVIN GERSH | SEPTEMBER 2014 | 7471 · RENT-BARN 3SHR | 1,000.00 | 314.63 | 1,314.63 |
| 10/01/2014 | 20957 | # KEVIN GERSH | OCTOBER 2014 | 7471 · RENT-BARN 3SHR | 1,000.00 | 307.23 | 1,307.23 |
| 11/01/2014 | 21023 | # KEVIN GERSH | NOVEMBER 2014 | 7471 · RENT-BARN 3SHR | 1,000.00 | 299.59 | 1,299.59 |
| | | | | | $23,000 | $8,671 | $31,671 |

Notes:

(1) To Exhibit C, Column H.

(2) To Exhibit O, Column H.

- All totals have been rounded to the nearest dollar.

- There may be minor differences due to rounding.

# Exhibit L -
# Other Non-WHDC Expenditures Paid by WHDC
# June 5, 2009 through October 15, 2016

Exhibit L

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Other Non-WHDC Expenditures Paid by WHDC**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E | F | G | H (F + G) | I | J (H + I) | |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Check Number / Transaction Type | Name | QuickBooks Memo | QuickBooks Account | Other Non-WHDC Expenditures Paid by WHDC Before Barter Fees and Statutory Interest | Barter Fee (If Applicable) | Other Non-WHDC Expenditures Paid by WHDC Before Statutory Interest[1] | Statutory Interest[2] | Other Non-WHDC Expenditures Paid by WHDC After Statutory Interest | Gettry Marcus Notes |
| 11/18/2009 | 11364 | MICHAEL MOLLO | November | 7600 · OTHER PROG COSTS:7395 · MISC PROG-KARATE,MUSIC,TUTOR | $2,000.00 | | $2,000.00 | $1,491.29 | $3,491.29 | |
| 6/15/2010 | ITEX Barter | Peggy Jennings | Itex Jennings Interior Office Design | 7600 · OTHER PROG COSTS:7395 · MISC PROG-KARATE,MUSIC,TUTOR | 6,500.00 | $390.00 | 6,890.00 | 4,782.42 | 11,672.42 | |
| 6/22/2010 | ITEX Barter | | Itex Golf Bags 2010 | 7195 · DONATIONS & GIFTS:7270 · GIFTS | 1,500.00 | 90.00 | 1,590.00 | 1,100.89 | 2,690.89 | |
| 12/21/2010 | 12679 | ALL WEATHER TIRES | wheels for climbing wall (INV# 12) | 7600 · OTHER PROG COSTS:7395 · MISC PROG-KARATE,MUSIC,TUTOR | 208.78 | | 208.78 | 135.19 | 343.97 | Listed QuickBooks as Gersh Experience. |
| 12/21/2010 | | COUNTY LINE SERVISTAR HARDWARE, IN | hardware for climbing wall (INV# 12) | 7600 · OTHER PROG COSTS:7395 · MISC PROG-KARATE,MUSIC,TUTOR | 28.56 | | 28.56 | 18.49 | 47.05 | Listed QuickBooks as Gersh Experience. |
| 2/15/2011 | NCE Barter | Van-Go Cleaning | Mold Remediation-25 | REPAIRS & MAINT:7480 · Grounds - Gen'l Prop Maint | 4,000.00 | 400.00 | 4,400.00 | 2,788.27 | 7,188.27 | |
| 5/17/2011 | NCE Barter | Embers | Embers Stove 25 | 7370 · MISCELLANEOUS EXPENSE | 2,000.00 | 200.00 | 2,200.00 | 1,344.77 | 3,544.77 | Expensed in larger transaction of $4,845. |
| 5/18/2011 | NCE Barter | | 1/2 Mollo Giftbasket | 7195 · DONATIONS & GIFTS:7270 · GIFTS | 62.50 | | 62.50 | 38.19 | 100.69 | |
| 5/31/2011 | NCE Barter | The Springs Resort | Springs Resort  Costa Rica | 7232 · ENTERTAINMENT-KG | 13,475.00 | 1,347.50 | 14,822.50 | 9,009.24 | 23,831.74 | |
| 6/13/2011 | NCE Barter | The Springs Resort | Springs Resort  Costa Rica | 7232 · ENTERTAINMENT-KG | 490.00 | 49.00 | 539.00 | 325.88 | 864.88 | |
| 7/19/2011 | NCE Barter | Paradise Furniture | Paradise Furniture 25 | 7244 · LUNCH PROGRAM COSTS:7520 · SUPPLIES | 373.50 | 37.35 | 410.85 | 244.75 | 655.60 | |
| 7/19/2011 | NCE Barter | Designer Limousine | 1/2 Designer Limo (Cletus match Queens) | 7115 · BUS TRANSPORATION | 400.00 | 40.00 | 440.00 | 262.12 | 702.12 | |
| 8/22/2011 | 13609 | RAFAEL RODRIGUEZ | Clean carpet upstairs | REPAIRS & MAINT:7481 · LANDLORD REPAIRS | 200.00 | | 200.00 | 117.47 | 317.47 | |
| 8/31/2011 | NCE Barter | The Springs Resort | The Springs Resort Credit Cancelled Rooms | 7232 · ENTERTAINMENT-KG | (5,586.00) | | (5,586.00) | (3,268.50) | (8,854.50) | |
| 1/27/2012 | ITEX Barter | Discount Blinds | | Undetermined | 2,500.00 | 150.00 | 2,650.00 | 1,453.22 | 4,103.22 | "Discount Blinds: rci week" |
| 3/1/2012 | 14049 | FAIRLAWN ADULT HOME | | 7200 · MEDICAL COSTS | 498.00 | | 498.00 | 268.92 | 766.92 | |
| 3/2/2012 | 14026 | CLETUS SELDIN | | 7370 · MISCELLANEOUS EXPENSE | 900.00 | | 900.00 | 485.78 | 1,385.78 | |
| 4/17/2012 | 14196 | FAIRLAWN ADULT HOME | | 7200 · MEDICAL COSTS | 498.00 | | 498.00 | 263.15 | 761.15 | |
| 5/3/2012 | 14150 | FAIRLAWN ADULT HOME | | 7200 · MEDICAL COSTS | 498.00 | | 498.00 | 261.18 | 759.18 | |
| 6/5/2012 | 14315 | FAIRLAWN ADULT HOME | | 7200 · MEDICAL COSTS | 488.00 | | 488.00 | 251.97 | 739.97 | |
| 7/2/2012 | 14437 | CLETUS SELDIN | | 7370 · MISCELLANEOUS EXPENSE | 400.00 | | 400.00 | 203.87 | 603.87 | |
| 7/11/2012 | 14456 | FAIRLAWN ADULT HOME | | 7200 · MEDICAL COSTS | 498.00 | | 498.00 | 252.71 | 750.71 | |
| 8/2/2012 | 14592 | CLETUS SELDIN | | 7370 · MISCELLANEOUS EXPENSE | 5,000.00 | | 5,000.00 | 2,510.14 | 7,510.14 | |
| 8/10/2012 | NCE Barter | Mr'Tique | | Undetermined | 2,741.02 | 274.10 | 3,015.12 | 1,507.73 | 4,522.85 | See journal entry 123112c, dated 12/31/2012. Either in REPAIRS & MAINT:7365 · Main Bldg - Repairs & Maint or 7600 · OTHER PROG COSTS:7502 · CAMP SPECIAL EVENTS |
| 8/20/2012 | NCE Barter | Ms'Tique | | Undetermined | 663.00 | 66.30 | 729.30 | 362.89 | 1,092.19 | See journal entry 123112c, dated 12/31/2012. Either in REPAIRS & MAINT:7365 · Main Bldg - Repairs & Maint or 7600 · OTHER PROG COSTS:7502 · CAMP SPECIAL EVENTS |
| 8/23/2012 | NCE Barter | Anthony De Franco & Co | | Undetermined | 12,750.00 | | 12,750.00 | 6,334.83 | 19,084.83 | Transaction amount was for $25,500.  Entered here at 50%. |
| 8/24/2012 | NCE Barter | Fair Harbor, Fire Island rental | | Undetermined | 2,000.00 | 200.00 | 2,200.00 | 1,092.53 | 3,292.53 | See journal entry 123112c, dated 12/31/2012. Either in REPAIRS & MAINT:7365 · Main Bldg - Repairs & Maint or 7600 · OTHER PROG COSTS:7502 · CAMP SPECIAL EVENTS |
| 8/24/2012 | 17769 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 187.70 | | 187.70 | 93.21 | 280.91 | |
| 9/21/2012 | 17883 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 187.70 | | 187.70 | 91.92 | 279.62 | |
| 9/24/2012 | NCE Barter | East End Interiors | | Undetermined | 1,385.30 | 138.53 | 1,523.83 | 745.09 | 2,268.92 | See journal entry 123112c, dated 12/31/2012. Either in REPAIRS & MAINT:7365 · Main Bldg - Repairs & Maint or 7600 · OTHER PROG COSTS:7502 · CAMP SPECIAL EVENTS |
| 9/27/2012 | ITEX Barter | Monmouth Entertainment | | Undetermined | 3,000.00 | 225.00 | 3,225.00 | 1,574.51 | 4,799.51 | "Monmouth Entertainment: Aerosmith/Cheap trick tix" |
| 10/12/2012 | 14888 | STAR BOXING | | 7370 · MISCELLANEOUS EXPENSE | 1,500.00 | | 1,500.00 | 726.78 | 2,226.78 | |
| 11/2/2012 | 17910 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 187.70 | | 187.70 | 89.97 | 277.67 | |
| 11/16/2012 | 17918 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 187.70 | | 187.70 | 89.32 | 277.02 | |
| 11/20/2012 | NCE Barter | Cleansing Concepts | | Undetermined | 165.00 | 16.50 | 181.50 | 86.20 | 267.70 | See journal entry 123112c, dated 12/31/2012. Either in REPAIRS & MAINT:7365 · Main Bldg - Repairs & Maint or 7600 · OTHER PROG COSTS:7502 · CAMP SPECIAL EVENTS |
| 11/29/2012 | NCE Barter | Cleansing Concepts | | Undetermined | 85.00 | 8.50 | 93.50 | 44.20 | 137.70 | See journal entry 123112c, dated 12/31/2012. Either in REPAIRS & MAINT:7365 · Main Bldg - Repairs & Maint or 7600 · OTHER PROG COSTS:7502 · CAMP SPECIAL EVENTS |
| 11/30/2012 | 17926 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 187.70 | | 187.70 | 88.68 | 276.38 | |
| 12/3/2012 | NCE Barter | Cleansing Concepts | | Undetermined | 262.00 | 26.20 | 288.20 | 135.94 | 424.14 | See journal entry 123112c, dated 12/31/2012. Either in REPAIRS & MAINT:7365 · Main Bldg - Repairs & Maint or 7600 · OTHER PROG COSTS:7502 · CAMP SPECIAL EVENTS |
| 12/14/2012 | 17931 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 187.70 | | 187.70 | 88.03 | 275.73 | |
| 12/28/2012 | 17939 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 187.70 | | 187.70 | 87.38 | 275.08 | |

Exhibit L

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Other Non-WHDC Expenditures Paid by WHDC**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E | F | G | H (F + G) | I | J (H + I) | |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Check Number / Transaction Type | Name | QuickBooks Memo | QuickBooks Account | Other Non-WHDC Expenditures Paid by WHDC Before Barter Fees and Statutory Interest | Barter Fee (If Applicable) | Other Non-WHDC Expenditures Paid by WHDC Before Statutory Interest[1] | Statutory Interest[2] | Other Non-WHDC Expenditures Paid by WHDC After Statutory Interest | Gettry Marcus Notes |
| 2/7/2013 | Credit Card Charge | JETBLUE AIRWAYS | CLETUS SELDIN | 9330 · TEEN TRAVEL EXPENSES | 349.80 | | 349.80 | 159.31 | 509.11 | |
| 2/8/2013 | 17968 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 183.70 | | 183.70 | 83.62 | 267.32 | |
| 2/14/2013 | 15140 | THE DUNCAN GROUP | | PROF FEES:7437 · Other Misc | 9,600.00 | | 9,600.00 | 4,355.51 | 13,955.51 | |
| 2/22/2013 | ITEX Barter | | Outdoor furniture itex | 1500 · FIXED ASSETS:1550 · FURNITURE & FIXTURES | 44,500.00 | 3,337.50 | 47,837.50 | 21,609.44 | 69,446.94 | |
| 2/22/2013 | 17977 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 183.70 | | 183.70 | 82.98 | 266.68 | |
| 2/27/2013 | 15175 | CLETUS SELDIN | | 7600 · OTHER PROG COSTS:7395 · MISC PROG-KARATE,MUSIC,TUTOR | 7,500.00 | | 7,500.00 | 3,378.70 | 10,878.70 | |
| 3/21/2013 | NCE Barter | NCE-INVENTORY | | 1275 · I/C Accounts Rec:1275-16 · Gersh Academy | 1,274.58 | 127.46 | 1,402.04 | 624.00 | 2,026.04 | |
| 3/22/2013 | 17999 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 183.70 | | 183.70 | 81.71 | 265.41 | |
| 4/5/2013 | 18011 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 183.70 | | 183.70 | 81.08 | 264.78 | |
| 4/12/2013 | NCE Barter | Frederick's | | Undetermined | 484.75 | 48.48 | 533.23 | 234.43 | 767.66 | |
| 4/19/2013 | 18028 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 183.70 | | 183.70 | 80.45 | 264.15 | |
| 5/31/2013 | 18103 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 183.70 | | 183.70 | 78.54 | 262.24 | |
| 6/10/2013 | NCE Barter | Dee Jay Carpet | | Undetermined | 889.00 | 88.90 | 977.90 | 415.70 | 1,393.60 | |
| 6/14/2013 | 18128 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 183.70 | | 183.70 | 77.91 | 261.61 | |
| 6/28/2013 | 18155 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 183.70 | | 183.70 | 77.27 | 260.97 | |
| 7/12/2013 | 18185 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 183.70 | | 183.70 | 76.64 | 260.34 | |
| 7/26/2013 | 18261 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 183.70 | | 183.70 | 76.01 | 259.71 | |
| 10/4/2013 | 18938 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 183.70 | | 183.70 | 72.84 | 256.54 | |
| 10/7/2013 | NCE Barter | South Shore Business Solutions | | Undetermined | 495.00 | 49.50 | 544.50 | 215.49 | 759.99 | |
| 10/9/2013 | NCE Barter | Camelot Rentals | | Undetermined | 883.50 | 88.35 | 971.85 | 384.13 | 1,355.98 | |
| 10/10/2013 | NCE Barter | Mr'tique | | Undetermined | 1,731.00 | 173.10 | 1,904.10 | 752.15 | 2,656.25 | |
| 10/11/2013 | 18947 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 183.70 | | 183.70 | 72.52 | 256.22 | |
| 10/21/2013 | NCE Barter | Park Avenue Studio | | Undetermined | 795.00 | 79.50 | 874.50 | 343.07 | 1,217.57 | |
| 10/29/2013 | Credit Card Charge | WEBSTER'S BISTRO | GERSH EXPERIENCE | 7640 · TRAVEL | 116.66 | | 116.66 | 45.54 | 162.20 | |
| 10/30/2013 | NCE Barter | Anthony De Franco & Co | | Undetermined | 3,013.00 | 301.30 | 3,314.30 | 1,292.85 | 4,607.15 | |
| 10/30/2013 | NCE Barter | Anthony De Franco & Co | | Undetermined | 1,410.00 | 141.00 | 1,551.00 | 605.02 | 2,156.02 | |
| 10/30/2013 | NCE Barter | Anthony De Franco & Co | | Undetermined | 4,763.60 | 476.36 | 5,239.96 | 2,044.02 | 7,283.98 | |
| 10/30/2013 | Credit Card Charge | CRAZY JAKE'S | GERSH EXPERIENCE | 7640 · TRAVEL | 73.02 | | 73.02 | 28.48 | 101.50 | |
| 10/31/2013 | Credit Card Charge | DNC TRAVEL | GERSH EXPERIENCE | 7640 · TRAVEL | 44.64 | | 44.64 | 17.40 | 62.04 | |
| 11/1/2013 | 18953 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 183.70 | | 183.70 | 71.57 | 255.27 | |
| 11/4/2013 | Credit Card Charge | SWIMCO | KS - GERSH EXPERIENCE | REPAIRS & MAINT:7480 · Grounds - Gen'l Prop Maint | 401.71 | | 401.71 | 156.20 | 557.91 | |
| 11/13/2013 | Credit Card Charge | CRAZY JAKE'S | GERSH EXPERIENCE | 7640 · TRAVEL | 72.48 | | 72.48 | 28.02 | 100.50 | |
| 11/14/2013 | Credit Card Charge | FAMILY DOLLAR | GERSH EXPERIENCE | 7600 · OTHER PROG COSTS:9330 · TEEN TRAVEL EXPENSES | 10.80 | | 10.80 | 4.17 | 14.97 | |
| 11/15/2013 | Credit Card Charge | DNC TRAVEL | GERSH EXPERIENCE | 7640 · TRAVEL | 46.60 | | 46.60 | 17.99 | 64.59 | |
| 11/15/2013 | 18961 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 183.70 | | 183.70 | 70.93 | 254.63 | |
| 11/19/2013 | NCE Barter | Anthony De Franco & Co | | Undetermined | 60.00 | 6.00 | 66.00 | 25.42 | 91.42 | |
| 11/29/2013 | 18967 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 183.70 | | 183.70 | 70.30 | 254.00 | |
| 12/4/2013 | Credit Card Charge | NOCO EXPRESS | KS - GERSH EXPERIENCE | AUTO:7080 · GENERAL | 38.00 | | 38.00 | 14.50 | 52.50 | |
| 12/20/2013 | 18976 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 183.70 | | 183.70 | 69.35 | 253.05 | |
| 12/31/2013 | NCE Barter | Park Avenue Studio | | Undetermined | 2,000.00 | 200.00 | 2,200.00 | 824.55 | 3,024.55 | "Photo and Video - Wedding (7/19/14)" |
| 1/9/2014 | 16383 | GERSH INTERNATIONAL PR LLC | | 7600 · OTHER PROG COSTS:9330 · TEEN TRAVEL EXPENSES | 300.00 | | 300.00 | 111.77 | 411.77 | |
| 1/24/2014 | 18985 | CLETUS SELDIN | | 1075 · CASH-PAYROLL-CAPITAL ONE #3223 | 183.70 | | 183.70 | 67.76 | 251.46 | |
| 2/4/2014 | 100000 | CLETUS SELDIN | | 1091 · CHASE-PAYROLL #535335587 | 183.70 | | 183.70 | 67.26 | 250.96 | |
| 3/18/2014 | 20106 | EXXON MOBIL | CLETUS - last Cletus gas charge | AUTO:7080 · GENERAL | 86.19 | | 86.19 | 30.67 | 116.86 | |
| 3/19/2014 | NCE Barter | Anthony De Franco & Co | | Undetermined | 245.00 | 24.50 | 269.50 | 95.82 | 365.32 | "Boville 01/11/14" |
| 4/7/2014 | NCE Barter | Anthony De Franco & Co | | Undetermined | 72.00 | 7.20 | 79.20 | 27.79 | 106.99 | "03/07/14" |
| 6/4/2014 | TradeWorks Barter | NY State Energy Corp | DEPOSIT ON SOLAR PANELS | 1325 · Barter Exchange:1325c · Tradeworks | 2,500.00 | 250.00 | 2,750.00 | 925.58 | 3,675.58 | "Deposit on Solar Panels: 156 Falconer St LLC" |
| 6/11/2014 | NCE Barter | The Showplace | | Undetermined | 4,000.00 | 400.00 | 4,400.00 | 1,473.34 | 5,873.34 | |
| 6/11/2014 | NCE Barter | Anthony De Franco & Co | | Undetermined | 28.00 | 2.80 | 30.80 | 10.31 | 41.11 | |
| 6/24/2014 | NCE Barter | Anthony De Franco & Co | | Undetermined | 361.00 | 36.10 | 397.10 | 131.70 | 528.80 | "4/5 & 4/25/14 Boville" |
| 6/24/2014 | NCE Barter | Anthony De Franco & Co | | Undetermined | 28.00 | 2.80 | 30.80 | 10.21 | 41.01 | "5/3/14 Boville" |
| 7/11/2014 | NCE Barter | Del-Mir Caterers | | Undetermined | 14,392.91 | 1,439.29 | 15,832.20 | 5,184.29 | 21,016.49 | "Wedding 7/19/14" |
| 7/11/2014 | NCE Barter | The Showplace | | Undetermined | 7,542.00 | 754.20 | 8,296.20 | 2,716.61 | 11,012.81 | "Décor/Wedding 7/19/14" |
| 7/14/2014 | NCE Barter | Pugliese Vineyards | | Undetermined | 3,345.84 | 334.58 | 3,680.42 | 1,202.44 | 4,882.86 | |
| 7/15/2014 | NCE Barter | Hart to Hart | | Undetermined | 6,129.90 | 612.99 | 6,742.89 | 2,201.32 | 8,944.21 | "7/19/2014" |
| 7/18/2014 | NCE Barter | All Island Tents | | Undetermined | 13,231.80 | 1,323.18 | 14,554.98 | 4,740.94 | 19,295.92 | "Gersh Wedding/West Hills" |
| 7/23/2014 | NCE Barter | The Finishing Touch | | Undetermined | 1,325.00 | 132.50 | 1,457.50 | 472.95 | 1,930.45 | "7/19/14 Gersh Wedding" |
| 7/23/2014 | NCE Barter | Anthony De Franco & Co | | Undetermined | 245.00 | 24.50 | 269.50 | 87.45 | 356.95 | "6/6/14" |
| 8/1/2014 | Credit Card Charge | Gersh Experience | | 7370 · MISCELLANEOUS EXPENSE | 177.99 | | 177.99 | 57.36 | 235.35 | |
| 8/12/2014 | NCE Barter | Park Avenue Studio | | Undetermined | 5,590.00 | 559.00 | 6,149.00 | 1,964.98 | 8,113.98 | |
| 9/26/2014 | NCE Barter | Anthony De Franco & Co | | 1275.1 · EXCHANGE - KG | 245.00 | 24.50 | 269.50 | 83.13 | 352.63 | "8/2/14" |
| 10/27/2014 | NCE Barter | Anthony De Franco & Co | | Undetermined | 71.00 | 7.10 | 78.10 | 23.49 | 101.59 | "9/14" |
| 11/17/2014 | 21073 | GURNEY'S MONTAUK RESORT & SPA | RECORD STAFF LEADERSHIP CONFRENENCE DEPO | 7505 · STAFF MEETINGS & PARTIES | 3,600.00 | | 3,600.00 | 1,064.32 | 4,664.32 | |

Exhibit L

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Other Non-WHDC Expenditures Paid by WHDC**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E | F | G | H (F + G) | I | J (H + I) | |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Check Number / Transaction Type | Name | QuickBooks Memo | QuickBooks Account | Other Non-WHDC Expenditures Paid by WHDC Before Barter Fees and Statutory Interest | Barter Fee (If Applicable) | Other Non-WHDC Expenditures Paid by WHDC Before Statutory Interest[1] | Statutory Interest[2] | Other Non-WHDC Expenditures Paid by WHDC After Statutory Interest | Gettry Marcus Notes |
| 3/13/2015 | 21329 | GURNEY'S MONTAUK RESORT & SPA | LEADERSHIP CONFERENCE 2/27 - 3/1 | 7505 · STAFF MEETINGS & PARTIES | 11,036.22 | | 11,036.22 | 2,947.12 | 13,983.34 | |
| 4/8/2015 | 21390 | MANZELLA MARKETING GROUP | | 7065 · ADVERTISING & MARKETING | 1,875.00 | | 1,875.00 | 488.68 | 2,363.68 | Marketing company located outside Buffalo, NY |
| 5/11/2015 | 21491 | MANZELLA MARKETING GROUP | GOOGLE ADWORDS 4/1 - 4/31/15 | 7065 · ADVERTISING & MARKETING | 202.71 | | 202.71 | 51.18 | 253.89 | Marketing company located outside Buffalo, NY |
| 5/26/2015 | TradeWorks Barter | Blank Slate Media | HALF PAGE VERTICLE AD 6/5, 6/12 | 7065 · ADVERTISING & MARKETING | 1,554.00 | 155.40 | 1,709.40 | 425.29 | 2,134.69 | "Great Neck News, Manhasset Times, Roslyn Times, Half Page Vertical, 2x, Insertion Dates: 6/5, 6/12" |
| 11/6/2015 | 22086 | MANZELLA MARKETING GROUP | | 7065 · ADVERTISING & MARKETING | 915.00 | | 915.00 | 190.65 | 1,105.65 | |
| 11/6/2015 | 22086 | MANZELLA MARKETING GROUP | SETTLEMENT PER MARISSA AND GEORGE | 7065 · ADVERTISING & MARKETING | 6,585.00 | | 6,585.00 | 1,372.03 | 7,957.03 | |
| 2/10/2016 | NCE Barter | Pomodorino | POMODORINO | 7232 · ENTERTAINMENT-KG | 45.98 | 4.60 | 50.58 | 9.34 | 59.92 | |
| 2/10/2016 | NCE Barter | Pomodorino | POMODORINO | 7232 · ENTERTAINMENT-KG | 135.00 | 13.50 | 148.50 | 27.43 | 175.93 | |
| 3/18/2016 | NCE Barter | Pomodorino | POMODORINO | 7232 · ENTERTAINMENT-KG | 55.97 | 5.60 | 61.57 | 10.81 | 72.38 | |
| 3/18/2016 | NCE Barter | Pomodorino | POMODORINO | 7232 · ENTERTAINMENT-KG | 73.97 | 7.40 | 81.37 | 14.29 | 95.66 | |
| 4/19/2016 | Repayment | | REIMBURSEMENT FOR PERSONAL EXPENSES | 1275.1 · EXCHANGE - KG | (68,459.99) | | (68,459.99) | (11,478.77) | (79,938.76) | Repayment by Kevin Gersh |
| 5/6/2016 | NCE Barter | Pomodorino | POMODORINO | 7232 · ENTERTAINMENT-KG | 109.08 | 10.91 | 119.99 | 19.62 | 139.61 | |
| 5/6/2016 | NCE Barter | Pomodorino | POMODORINO | 7232 · ENTERTAINMENT-KG | 155.86 | 15.59 | 171.45 | 28.03 | 199.48 | |
| 5/12/2016 | 22446 | KEVIN GERSH | BEDDING FOR INTERNATIONAL STAFF | 9348 · INTERNATIONAL STAFF | 119.47 | | 119.47 | 19.35 | 138.82 | |
| 5/25/2016 | NCE Barter | Furniture Not Just 4 Kids | 4 BEDS/MATTRESSES | 7600 · OTHER PROG COSTS:9348 · INTERNATIONAL STAFF | 3,596.00 | 359.60 | 3,955.60 | 628.13 | 4,583.73 | "(4) Mattress Sets and Frames" |
| 7/19/2016 | NCE Barter | Pomodorino | POMODORINO | 7232 · ENTERTAINMENT-KG | 258.38 | 25.84 | 284.22 | 41.28 | 325.50 | |
| 7/19/2016 | NCE Barter | Pomodorino | POMODORINO | 7232 · ENTERTAINMENT-KG | 350.00 | 35.00 | 385.00 | 55.91 | 440.91 | |
| 7/26/2016 | NCE Barter | Pomodorino | POMODORINO | 7232 · ENTERTAINMENT-KG | 258.38 | 25.84 | 284.22 | 40.79 | 325.01 | |
| 10/14/2016 | NCE Barter | Pomodorino | POMODORINO | 7232 · ENTERTAINMENT-KG | 51.97 | 5.20 | 57.17 | 7.08 | 64.25 | |
| | | | | | $169,091 | $15,376 | $184,467 | $94,029 | $278,496 | |

Notes:
(1) To Exhibit C, Column I.
(2) To Exhibit O, Column I.

- There was an entry on 4/19/2016 for $64,390.09 with the memo "KG ADVANCES". It is my understanding that this transaction relates to some of the charges that WHDC incurred for Kevin Gersh's wedding on July 19, 2014, but I have not been provided an itemized list for which amounts the $64,390.09 relates to.
- All totals have been rounded to the nearest dollar.
- There may be minor differences due to rounding.

**Exhibit M -
Kevin Gersh Camper Discounts
June 5, 2009 through October 15, 2016**

Case 2:19-cv-03240-JS-ST   Document 1-2   Filed 09/16/19   Page 82 of 119 PageID #: 131

**Exhibit M**

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Kevin Gersh Camper Discounts**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E | F (D + E) |
|---|---|---|---|---|---|
| Date | Name | QuickBooks Memo | Kevin Gersh Discounts Before Statutory Interest[1] | Statutory Interest[2] | Kevin Gersh Discounts After Statutory Interest |
| 1/1/2014 | SCHERMER, MADISON | KG discount | $10,000.00 | $3,745.48 | $13,745.48 |
| 2/28/2014 | VLACANCICH, JEREMY, BRANDON, & LAUREN | KG discount | 560.00 | 201.74 | 761.74 |
| 2/28/2014 | VLACANCICH, JEREMY, BRANDON, & LAUREN | KG discount | 560.00 | 201.74 | 761.74 |
| 3/31/2014 | STARK, JAYDEN | KG discount | 6,400.00 | 2,256.66 | 8,656.66 |
| 3/31/2014 | MAURO (STARK), KJ, NICHOLAS & SOPHIA | | 10,150.00 | 3,578.92 | 13,728.92 |
| 4/1/2014 | BUCKHARDT, JAKE & RYAN | KG discount | 5,750.00 | 2,026.05 | 7,776.05 |
| 6/10/2014 | JOYCE, JOHNNY & JAYDEN | PERSONAL BARTER FOR HOME CONSTRUCTION | 11,600.00 | 3,887.11 | 15,487.11 |
| 6/20/2014 | ETHERIDGE/DILLARD, JEREMIAH | GERSH EMPLOYEE | 1,950.00 | 648.63 | 2,598.63 |
| 6/25/2014 | BUCKHARDT, JAKE & RYAN | PERSONAL BARTER FOR DRYCLEANING | 500.00 | 165.70 | 665.70 |
| 7/23/2014 | WILLIAMSON, CALEB | BARTER FOR IT WORK (NETWORK HANDLERS - GA COMPANY) | 3,000.00 | 973.48 | 3,973.48 |
| 8/11/2014 | FEHRER, ABEL & SIMON | KEVIN'S FRIEND FROM HUNGARY | 2,200.00 | 703.58 | 2,903.58 |
| 8/31/2014 | | TO RECORD 2014 WHM DISCOUNTS | 1,705.00 | 536.86 | 2,241.86 |
| 9/12/2014 | ERTLE, JOHN & THOMAS | PARENT DOES WORK FOR GERSH ACADEMY | 4,000.00 | 1,247.67 | 5,247.67 |
| 10/15/2014 | STARK, JAYDEN | PER KG...PART OF KEVIN STARK'S SEVERANCE | 180.00 | 54.68 | 234.68 |
| 10/15/2014 | MAURO (STARK), KJ, NICHOLAS & SOPHIA | PER KG, PART OF KEVIN STARK'S SEVERANCE | 3,790.00 | 1,151.33 | 4,941.33 |
| 3/31/2015 | SCHERMER, MADISON | EVAN SCHERMER'S CHILD | 5,700.00 | 1,496.84 | 7,196.84 |
| 5/20/2015 | JOYCE, JOHNNY & JAYDEN | | 13,200.00 | 3,303.62 | 16,503.62 |
| 6/9/2015 | BUCKHARDT, JAKE & RYAN | | 8,600.00 | 2,109.95 | 10,709.95 |
| 8/31/2015 | | TO RECORD 2014 WHM DISCOUNTS | 6,779.20 | 1,524.48 | 8,303.68 |
| 11/9/2015 | SCHERMER, MADISON | | 6,600.00 | 1,370.27 | 7,970.27 |
| 4/12/2016 | MAURO (STARK), KJ, NICHOLAS & SOPHIA | | 4,950.00 | 838.52 | 5,788.52 |
| 5/23/2016 | MAURO (STARK), KJ, NICHOLAS & SOPHIA | | 3,125.23 | 497.81 | 3,623.04 |
| 8/19/2016 | | TO RECORD 2014 WHM DISCOUNTS | 5,308.25 | 730.36 | 6,038.61 |
| | | | **$116,607** | **$33,252** | **$149,859** |

Notes:
(1) To Exhibit C, Column J.
(2) To Exhibit O, Column J.

- All totals have been rounded to the nearest dollar
- There may be minor differences due to rounding.

**Exhibit N-**
**Interest Due for Interest-Free Loans**
**June 5, 2009 through October 15, 2016**

**Exhibit N**

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Interest-Free Loans**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|
| Date of Loan Disbursement | Date of Loan Repayment | Number of Days Loan Outstanding | Beneficiary of Loan | QuickBooks Classification | Amount of Loan | Statutory Interest Due for Interest-Free Loans[1] |
| 5/3/2011 | 7/22/2011 | 80 | Gersh Academy | 1275 · I/C Accounts Rec:1275-16 · Gersh Academy | $100,000.00 | $1,664 [2] |
| 3/11/2013 | 7/3/2013 | 114 | Gersh Academy | 1276 · I/C EXCHANGES:1276-15 · Gersh Academy - 2014 Tuition | $28,500.00 | 801 |
| 4/22/2013 | 5/18/2015 | 756 | Gersh Management | 1267 · Loan Receivable - Gersh Mgmt | $200,000.00 | 25,447 [2] |
| | | | | | | **$27,912** |

Notes:

(1) To Exhibit O, Column K.

(2) From Exhibit N(1) and Exhibit N(2).


- All totals have been rounded to the nearest dollar.

- There may be minor differences due to rounding.

# Exhibit N(1) -
## Calculated of Statutory Interest Due to WHDC for
## $100,000 Interest-Free Loan
## June 5, 2009 through October 15, 2016

Case 2:21-cv-03840-JS-ST   Document 1-2   Filed 09/18/21   Page 86 of 119 PageID #: 135

**Exhibit N(1)**

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Calculation of Statutory Interest Due to WHDC for $100,000 Interest-Free Loan**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E |
|---|---|---|---|---|
| Date | Loan Disbursement/(Repayment) Amount | Loan Balance | Number of Days | Statutory Interest[1] |
| 5/3/2011 | $100,000.00 | $100,000.00 | 55 | $1,356.16 |
| 6/27/2011 | (50,000.00) | 50,000.00 | 25 | 308.22 |
| 7/22/2011 | (50,000.00) | - | - | - |
| | | | 80 | $1,664 |

Notes:
(1) To Exhibit N, Column G.

- All totals have been rounded to the nearest dollar.
- There may be minor differences due to rounding.

# Exhibit N(2) -
# Calculated of Statutory Interest Due to WHDC for
# $200,000 Interest-Free Loan
# June 5, 2009 through October 15, 2016

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Calculation of Statutory Interest Due to WHDC for $200,000 Interest-Free Loan**
**For the Period June 5, 2009 through October 15, 2016**

| A | B | C | D | E |
|---|---|---|---|---|
| Date | Loan Disbursement/(Repayment) Amount | Loan Balance | Number of Days | Statutory Interest[1] |
| 04/22/2013 | $200,000.00 | $200,000.00 | 231 | $11,391.78 |
| 12/09/2013 | (9,000.00) | 191,000.00 | 85.00 | 4,003.15 |
| 03/04/2014 | (9,000.00) | 182,000.00 | 15.00 | 673.15 |
| 03/19/2014 | (9,000.00) | 173,000.00 | 14.00 | 597.21 |
| 04/02/2014 | (9,000.00) | 164,000.00 | 36.00 | 1,455.78 |
| 05/08/2014 | (9,000.00) | 155,000.00 | 43.00 | 1,643.42 |
| 06/20/2014 | (9,000.00) | 146,000.00 | 24.00 | 864.00 |
| 07/14/2014 | (9,000.00) | 137,000.00 | 23.00 | 776.96 |
| 08/06/2014 | (9,000.00) | 128,000.00 | 28.00 | 883.73 |
| 09/03/2014 | (9,000.00) | 119,000.00 | 28.00 | 821.59 |
| 10/01/2014 | (9,000.00) | 110,000.00 | 33.00 | 895.07 |
| 11/03/2014 | (9,000.00) | 101,000.00 | 7.00 | 174.33 |
| 11/10/2014 | (50,000.00) | 51,000.00 | 22.00 | 276.66 |
| 12/02/2014 | (9,000.00) | 42,000.00 | 36.00 | 372.82 |
| 01/07/2015 | (9,000.00) | 33,000.00 | 30.00 | 244.11 |
| 02/06/2015 | (9,000.00) | 24,000.00 | 35.00 | 207.12 |
| 03/13/2015 | (9,000.00) | 15,000.00 | 31.00 | 114.66 |
| 04/13/2015 | (9,000.00) | 6,000.00 | 35.00 | 51.78 |
| 05/18/2015 | (6,000.00) | - | - | - |
|  |  |  | 756 | $25,447 |

Notes:
(1) To Exhibit N, Column G.

- All totals have been rounded to the nearest dollar.
- There may be minor differences due to rounding.

Case 2:21-cv-04340-JS-ST Document 1-2 Filed 09/16/21 Page 89 of 119 PageID #: 138

# Exhibit O -
## Statutory Interest
## Calculated through February 28, 2018

Case 2:19-cv-03240-JS-ST Document 1-2 Filed 09/16/19 Page 90 of 119 PageID #: 139

**Ellynn Greenhaus, et al. v. Kevin Gersh, et al.**
**Statutory Interest**
**Calculated through February 28, 2018**

| A | B | C | D | E | F | G | H | I | J | K | L (B + C + D + E + F + G + H + I + J + K) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Year | Lost Net Revenue From Comanche Campers[1] | West Hills Montessori Start Up Costs Paid by WHDC[2] | Additional West Hills Montessori Expenditures Paid by WHDC[3] | Gersh Academy Expenditures Paid by WHDC[4] | Excess Management Fees Paid to Gersh Management and Kevin Gersh[5] | Additional Gersh Management Disbursements[6] | Barn Rent Paid by WHDC[7] | Other Non-WHDC Expenditures Paid by WHDC[8] | Kevin Gersh Camper Discounts[9] | Interest-Free Loans[10] | Total Statutory Interest[11] |
| 2009 | - | $22,831 | - | $3,516 | - | - | - | $1,491 | - | - | $27,838 |
| 2010 | $186,344 | 61,382 | $23,584 | $4,521 | - | $16,271 | - | 6,037 | - | - | 298,139 |
| 2011 | 156,857 | 640 | 3,813 | 25,680 | - | 14,353 | - | 10,862 | - | $1,664 | 213,869 |
| 2012 | 131,731 | - | 15,905 | 1,924 | - | - | - | 19,190 | - | - | 168,750 |
| 2013 | 198,251 | - | 9,352 | 4,324 | $101,917 | 64,029 | $5,337 | 38,800 | - | 26,248 | 448,258 |
| 2014 | 142,098 | - | 1,160 | 475 | 2,116 | 16,764 | 3,334 | 22,751 | $21,380 | - | 210,078 |
| 2015 | 87,304 | - | 2,658 | 881 | - | 326 | - | 5,475 | 9,805 | - | 106,449 |
| 2016 | 61,940 | - | 481 | 823 | 35,410 | 4,364 | - | (10,577) | 2,067 | - | 94,508 |
| | $964,525 | $84,853 | $56,953 | $42,144 | $139,443 | $116,107 | $8,671 | $94,029 | $33,252 | $27,912 | $1,567,889 |

Notes:
(1) From Exhibit E.
(2) From Exhibit F.
(3) From Exhibit G.
(4) From Exhibit H.
(5) From Exhibit I(1).
(6) From Exhibit J.
(7) From Exhibit K.
(8) From Exhibit L.
(9) From Exhibit M.
(10) From Exhibit N.
(11) To Exhibit C, Column L. Statutory Interest listed for each year relates to the year the associated transactions occurred.

- All totals have been rounded to the nearest dollar.
- There may be minor differences due to rounding.

# APPENDICES

## Fees Paid to Gersh Management 2010 - 2014

| Date Paid | Check # | Amount | Mgmt Fee Paid | GM Mgmt Fee | Total Due To GM |
|---|---|---|---|---|---|
| **2010** | | | | | |
| 01/02/2010 | 11474 | 23,800 | 01/01/2010 | | |
| 01/29/2010 | 11511 | 24,200 | 02/01/2010 | | |
| 02/23/2010 | 11572 | 24,200 | 03/01/2010 | | |
| 03/22/2010 | 11614 | 24,200 | 04/01/2010 | | |
| 04/26/2010 | 11699 | 24,200 | 05/01/2010 | | |
| 05/21/2010 | 11771 | 24,200 | 06/01/2010 | | |
| 06/17/2010 | 11867 | 23,800 | 07/01/2010 | | |
| 07/20/2010 | 12015 | 24,200 | 08/01/2010 | | |
| 08/16/2010 | 12178 | 24,200 | 09/01/2010 | | |
| 09/22/2010 | 12390 | 24,200 | 10/01/2010 | | |
| 10/20/2010 | 12472 | 24,200 | 11/01/2010 | | |
| 11/22/2010 | 12595 | 23,800 | 12/01/2010 | | |
| | | **289,200** | | **300,000** | **10,800** |
| **2011** | | | | | |
| 12/21/2010 | 12649 | 24,200 | 01/01/2011 | | |
| 02/01/2011 | 12782 | 24,200 | 02/01/2011 | | |
| 02/22/2011 | 12810 | 24,200 | 03/01/2011 | | |
| 03/23/2011 | 12869 | 24,200 | 04/01/2011 | | |
| 04/26/2011 | 12977 | 24,200 | 05/01/2011 | | |
| 05/27/2011 | 13088 | 24,200 | 06/01/2011 | | |
| 06/30/2011 | 13248 | 25,600 | 07/01/2011 | | |
| 08/01/2011 | 13559 | 25,000 | 08/01/2011 | | |
| 09/06/2011 | 13666 | 25,000 | 09/01/2011 | | |
| 10/06/2011 | 13741 | 25,000 | 10/01/2011 | | |
| 03/11/2013 | 15201 | 9,167 | 11/01/2011 | | |
| 03/11/2013 | 15201 | 9,167 | 12/01/2011 | | |
| | | **264,134** | | **300,000** | **35,866** |
| **2012** | | | | | |
| 03/11/2013 | 15201 | 9,167 | 01/01/2012 | | |
| 03/11/2013 | 15201 | 9,167 | 02/01/2012 | | |
| 03/11/2013 | 15201 | 9,167 | 03/01/2012 | | |
| 03/11/2013 | 15201 | 9,167 | 04/01/2012 | | |
| 03/11/2013 | 15201 | 9,167 | 05/01/2012 | | |
| 03/11/2013 | 15201 | 9,167 | 06/01/2012 | | |
| 03/11/2013 | 15201 | 9,167 | 07/01/2012 | | |
| 03/11/2013 | 15201 | 9,167 | 08/01/2012 | | |
| 03/11/2013 | 15201 | 9,167 | 09/01/2012 | | |
| 03/11/2013 | 15201 | 9,167 | 10/01/2012 | | |
| 03/11/2013 | 15201 | 9,167 | 11/01/2012 | | |
| 03/11/2013 | 15202 | 9,167 | 12/01/2012 | | |
| | | **110,004** | | **300,000** | **189,996** |
| **2013** | | | | | |
| | | **No Checks Paid** | | | |
| | | | | **300,000** | **300,000** |
| **2014** | | | | | |
| 11/05/2014 | 21047 | 150,000 | 1/1/14 - 6/30/14 | **300,000** | **150,000** |
| | | **813,338** | | **1,500,000** | **686,662** |

**D-75**

Case 2:21-cv-04360-JS-ST Document 13-2 Filed 09/16/22 Page 93 of 119 PageID #: 1421
Appendix 2
Commercial Lease Agreement between WHDC and West Hills Montessori
142
1 of 7



PLAINTIFF'S
EXHIBIT
5
2/21/17

# COMMERCIAL LEASE AGREEMENT

## West Hills Montessori School, Inc. at West Hills Day Camp Inc.

This Commercial Lease Agreement (Lease) is entered into on this **1st day of September, 2010**, by and between **West Hills Day Camp, Inc.**(Landlord) and **West Hills Montessori School, Inc.** (Tenant). Landlord is the owner of land and improvements whose address is: **21 Sweet Hollow Road, Huntington NY 11743.** Landlord makes available for lease a portion of the Property and Buildings designated as **West Hills Day Camp- Arts and Craft Building and Nursery Classroom** (Leased Premises).

Landlord desires to lease the Leased Premises to Tenant, and Tenant desires to lease the Leased Premises from Landlord for the term, at the rental and upon the provisions set forth herein.

THEREFORE, in consideration of the mutual promises contained herein, and for other good and valuable consideration, it is agreed:

Term.

The Initial Term of the Lease shall begin on the **1st day of September, 2010**, and end on the **31st day of August, 2015**. Landlord shall use its best efforts to put Tenant in possession of the Leased Premises on the beginning of the Lease term. If Landlord is unable to timely provide the Leased Premises, rent shall abate for the period of delay. Tenant shall make no other claim against Landlord for any such delay.

Renewal Option

At the end of the initial five year term, Tenant, upon giving ninety day advance notice to the Landlord, shall have the option to renew the Lease for an addition five year term. All terms and conditions during the renewal period shall be the same as was in effect during the initial term of the Lease.

Rent.

Tenant shall pay to Landlord during the Initial Term rent of **$50,000.04** per year, payable in installments of **$4,166.67** per month. **Tenant is also responsible for all utilities used, as outlined separately below**. Each installment payment shall be due in advance on the first day of each calendar month during the lease term to Landlord at the following address:

The rental payment amount for any partial calendar months included in the lease term shall be prorated on a daily basis.

1

Case 2:21-cv-04360-JS-ST Document 1-32 Filed 09/16/21 Page 94 of 119 PageID #: 2

Prohibited Uses.

Notwithstanding the forgoing, Tenant shall not use the Leased Premises for the purposes of storing, manufacturing or selling any explosives, flammables or other inherently dangerous substance, chemical, thing or device.

Sublease and Assignment.

Tenant shall have the right without Landlord's consent, to assign this Lease to a business with which Tenant may merge or consolidate, to any subsidiary of Tenant, to any corporation under common control with Tenant, or to a purchaser of substantially all of Tenant's assets.

Except as set forth above, Tenant shall not sublease all or any part of the Leased Premises, or assign this Lease in whole or in part without Landlord's consent, such consent not to be unreasonably withheld or delayed.

Repairs.

During the Lease term, Tenant shall make, at Tenant's expense, all necessary repairs to the Leased Premises. Repairs shall include such items as routine repairs of floors, walls, ceilings, and other parts of the Leased Premises damaged or worn through normal occupancy, except for major mechanical systems or the roof, subject to the obligations of the parties otherwise set forth in this Lease.

Alterations and Improvements.

Tenant, at Tenant's expense, shall have the right, upon obtaining Landlord's consent, to remodel, redecorate, and make additions, improvements and replacements of and to all or any part of the Leased Premises from time to time as Tenant may deem desirable, provided the same are made in a workmanlike manner and utilizing good quality materials. Tenant shall have the right to place and install personal property, trade fixtures, equipment and other temporary installations in and upon the Leased Premises, and fasten the same to the premises. All personal property, equipment, machinery, trade fixtures and temporary installations, whether acquired by Tenant at the commencement of the Lease term or placed or installed on the Leased Premises by Tenant thereafter, shall remain Tenant's property free and clear of any claim by Landlord. Tenant shall have the right to remove the same at any time during the term of this Lease provided that Tenant shall repair, at Tenant's expense, all damage to the Leased Premises caused by such removal.

Property Taxes.

Landlord shall pay, prior to delinquency, all general real estate taxes and installments of special assessments coming due during the Lease term on the Leased Premises, and all personal property taxes with respect to Landlord's personal property, if any, on the Leased Premises. Tenant shall be responsible for paying all personal property taxes with respect to Tenant's personal property at the Leased Premises.

Insurance.

If the Leased Premises or any other part of the Building is damaged by fire or other casualty resulting from any act of negligence by Tenant or by any of Tenant's agents, employees or

2

Case 2:21-cv-04360-JS-ST Document 13-2 Filed 09/16/22 Page 95 of 119 PageID #23
Appendix 2
Commercial Lease Agreement between WHDC and West Hills Montessori
144
3 of 7

invitees, rent shall not be diminished or abated while such damages are under repair, and Tenant shall be responsible for the costs of repair not covered by insurance.

Landlord shall maintain fire and extended coverage insurance on the Building and the Leased Premises in such amount as Landlord shall deem appropriate. Tenant shall be responsible, at its expense, for fire and extended coverage insurance on all of its personal property, including removable trade fixtures, located in the Leased Premises.

Tenant and Landlord shall, each at its own expense, maintain a policy or policies of comprehensive general liability insurance with respect to the particular activities of each in the Building with the premiums thereon fully paid on or before due date. Such insurance policy shall be issued by and binding upon an insurance company approved by Landlord, and shall afford minimum protection of not less than $1,000,000 combined single limit coverage of bodily injury, property damage or combination thereof. Tenant shall provide Landlord with current Certificates of Insurance evidencing Tenant's compliance with this Paragraph.

Utilities.

**Tenant shall pay all charges for water, sewer, gas, electricity, telephone and other services and utilities used by Tenant on the Leased Premises during the term of this Lease unless otherwise expressly agreed in writing by Landlord. In the event that any utility or service provided to the Leased Premises is not separately metered, Landlord shall pay the amount due and separately invoice Tenant for Tenant's pro rata share of the charges.**

Tenant shall pay such all such utility charges prior to the due date. Tenant acknowledges that the Leased Premises are designed to provide standard office use electrical facilities and standard office lighting. Tenant shall not use any equipment or devices that utilizes excessive electrical energy or which may, in Landlord's reasonable opinion, over load the wiring or interfere with electrical services to other tenants.

Signs.

Following Landlord's consent, Tenant shall have the right to place on the Leased Premises, at locations selected by Tenant, any signs which are permitted by applicable zoning ordinances and private restrictions. Landlord may refuse consent to any proposed signage that is in Landlord's opinion too large, deceptive, unattractive or otherwise inconsistent with or inappropriate to the Leased Premises or use of any other tenant. Landlord shall assist and cooperate with Tenant in obtaining any necessary permission from governmental authorities or adjoining owners and occupants for Tenant to place or construct the foregoing signs. Tenant shall repair all damage to the Leased Premises resulting from the removal of signs installed by Tenant.

Entry.

Landlord shall have the right to enter upon the Leased Premises at reasonable hours to inspect the same, provided Landlord shall not thereby unreasonably interfere with Tenant's business on the Leased Premises.

Parking.

During the term of this Lease, Tenant shall have the non-exclusive use in common with Landlord, other tenants of the Building, their guests and invitees, of the non-reserved common automobile parking areas, driveways, and footways, subject to rules and regulations for the use thereof as prescribed from time to time by Landlord. Landlord reserves the right to designate parking areas

3

Case 2:21-cv-04360-JS-ST Document 1-32 Filed 09/16/21 Page 96 of 119 PageID #: 124
Appendix 2
Commercial Lease Agreement between WHDC and West Hills Montessori
145
4 of 7

for Tenant and Tenant's agents and employees. Tenant shall provide Landlord with a list of all license numbers for the cars owned by Tenant, its agents and employees.

Building Rules.

Tenant will comply with the rules of the Building adopted and altered by Landlord from time to time and will cause all of its agents, employees, invitees and visitors to do so; all changes to such rules will be sent by Landlord to Tenant in writing. The initial rules for the Building are attached hereto as Exhibit "A" and incorporated herein for all purposes.

Damage and Destruction.

If the Leased Premises or any part thereof or any appurtenance thereto is so damaged by fire, casualty or structural defects, such damage or defects not being the result of any act of negligence by Tenant or by any of Tenant's agents, employees or invitees, that the same cannot be used for Tenant's purposes, then Tenant shall have the right within ninety (90) days following damage to elect by notice to Landlord to terminate this Lease as of the date of such damage. In the event of minor damage to any part of the Leased Premises, and if such damage does not render the Leased Premises unusable for Tenant's purposes, Landlord shall promptly repair such damage at the cost of the Landlord. In making the repairs called for in this paragraph, Landlord shall not be liable for any delays resulting from strikes, governmental restrictions, inability to obtain necessary materials or labor or other matters which are beyond the reasonable control of Landlord. Tenant shall be relieved from paying rent and other charges during any portion of the Lease term that the Leased Premises are inoperable or unfit for occupancy, or use, in whole or in part, for Tenant's purposes. Rentals and other charges paid in advance for any such periods shall be credited on the next ensuing payments, if any, but if no further payments are to be made, any such advance payments shall be refunded to Tenant. The provisions of this paragraph extend not only to the matters aforesaid, but also to any occurrence which is beyond Tenant's reasonable control and which renders the Leased Premises, or any appurtenance thereto, inoperable or unfit for occupancy or use, in whole or in part, for Tenant's purposes.

Default.

In the event of a default made by Tenant in the payment of rent when due to Landlord, Tenant shall have fifteen (15) days after receipt of written notice thereof to cure such default. In the event of a default made by Tenant in any of the other covenants or conditions to be kept, observed and performed by Tenant, Tenant shall have thirty (30) days after receipt of written notice thereof to cure such default. In the event that the Tenant shall fail to cure any default within the time allowed under this paragraph, Landlord may declare the term of this Lease ended and terminated by giving Tenant written notice of such intention, and if possession of the Leased Premises is not surrendered, Landlord may reenter said premises. Landlord shall have, in addition to the remedy above provided, any other right or remedy available to Landlord on account of any Tenant default, either in law or equity. Landlord shall use reasonable efforts to mitigate its damages.

Quiet Possession.

Landlord covenants and warrants that upon performance by Tenant of its obligations hereunder, Landlord will keep and maintain Tenant in exclusive, quiet, peaceable and undisturbed and uninterrupted possession of the Leased Premises during the term of this Lease.

Condemnation.

4

If any legally, constituted authority condemns the Building or such part thereof which shall make the Leased Premises unsuitable for leasing, this Lease shall cease when the public authority takes possession, and Landlord and Tenant shall account for rental as of that date. Such termination shall be without prejudice to the rights of either party to recover compensation from the condemning authority for any loss or damage caused by the condemnation. Neither party shall have any rights in or to any award made to the other by the condemning authority.

Subordination.

Tenant accepts this Lease subject and subordinate to any mortgage, deed of trust or other lien presently existing or hereafter arising upon the Leased Premises, or upon the Building and to any renewals, refinancing and extensions thereof, but Tenant agrees that any such mortgagee shall have the right at any time to subordinate such mortgage, deed of trust or other lien to this Lease on such terms and subject to such conditions as such mortgagee may deem appropriate in its discretion. Landlord is hereby irrevocably vested with full power and authority to subordinate this Lease to any mortgage, deed of trust or other lien now existing or hereafter placed upon the Leased Premises of the Building. Tenant agrees that it will from time to time upon request by Landlord execute and deliver to such persons as Landlord shall request a statement in recordable form certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as so modified), stating the dates to which rent and other charges payable under this Lease have been paid, stating that Landlord is not in default hereunder (or if Tenant alleges a default stating the nature of such alleged default) and further stating such other matters as Landlord shall reasonably require.

Notice.

Any notice required or permitted under this Lease shall be deemed sufficiently given or served if sent by United States certified mail, return receipt requested, addressed as follows:

Landlord:
West Hills Day Camp, Inc.
21 Sweet Hollow Road
Huntington, NY 11743

Tenant:
West Hills Montessori School, Inc.
150 Broadhollow Road, Suite 120
Melville, NY 11747

Landlord and Tenant shall each have the right from time to time to change the place notice is to be given under this paragraph by written notice thereof to the other party.

Brokers.

5

Tenant represents that Tenant was not shown the Premises by any real estate broker or agent and that Tenant has not otherwise engaged in, any activity which could form the basis for a claim for real estate commission, brokerage fee, finder's fee or other similar charge, in connection with this Lease.

Waiver.

No waiver of any default of Landlord or Tenant hereunder shall be implied from any omission to take any action on account of such default if such default persists or is repeated, and no express waiver shall affect any default other than the default specified in the express waiver and that only for the time and to the extent therein stated. One or more waivers by Landlord or Tenant shall not be construed as a waiver of a subsequent breach of the same covenant, term or condition.

Memorandum of Lease.

The parties hereto contemplate that this Lease should not and shall not be filed for record, but in lieu thereof, at the request of either party, Landlord and Tenant shall execute a Memorandum of Lease to be recorded for the purpose of giving record notice of the appropriate provisions of this Lease.

Headings.

The headings used in this Lease are for convenience of the parties only and shall not be considered in interpreting the meaning of any provision of this Lease.

Successors.

The provisions of this Lease shall extend to and be binding upon Landlord and Tenant and their respective legal representatives, successors and assigns.

Consent.

Landlord shall not unreasonably withhold or delay its consent with respect to any matter for which Landlord's consent is required or desirable under this Lease.

Performance.

If there is a default with respect to any of Landlord's covenants, warranties or representations under this Lease, and if the default continues more than fifteen (15) days after notice in writing from Tenant to Landlord specifying the default, Tenant may, at its option and without affecting any other remedy hereunder, cure such default and deduct the cost thereof from the next accruing installment or installments of rent payable hereunder until Tenant shall have been fully reimbursed for such expenditures, together with interest thereon at a rate equal to the lesser of 10% per annum or the then highest lawful rate. If this Lease terminates prior to Tenant's receiving full reimbursement, Landlord shall pay the un-reimbursed balance plus accrued interest to Tenant on demand.

Compliance with Law.

Tenant and Landlord each shall comply with all laws, orders, ordinances and other public requirements now or hereafter affecting the Leased Premises.

6

Final Agreement.

This Agreement terminates and supersedes all prior understandings or agreements on the subject matter hereof. This Agreement may be modified only by a further writing that is duly executed by both parties.

IN WITNESS WHEREOF, the parties have executed this Lease as of the day and year first above written.

**Tenant:**   (West Hills Montessori School Inc.)

_____
Signature                              date

_____
Print Name and Title

**Landlord:** (West Hills Day Camp, Inc.)

_____
Signature                              date

_____
Print Name and Title

7

Case 2:21-cv-05249-JS-ST Document 1-2 Filed 09/08/27 Page 100 of 119 PageID 28
Appendix 3
Commercial Lease Agreement between WHDC and Gersh Management
# 149
1 of 7

PLAINTIFF'S
EXHIBIT
9
2/21/17



## COMMERCIAL LEASE AGREEMENT

### Gersh Management Services Inc. at West Hills Day Camp

This Commercial Lease Agreement (Lease) is entered into on this **1st day of September, 2010**, by and between **West Hills Day Camp, Inc.**(Landlord) and **Gersh Management Services, Inc.** (Tenant). Landlord is the owner of land and improvements whose address is: **21 Sweet Hollow Road, Huntington NY 11743**. Landlord makes available for lease a portion of the Property and Buildings designated as **West Hills Day Camp- Main Building – 2nd Floor.** (Leased Premises).

Landlord desires to lease the Leased Premises to Tenant, and Tenant desires to lease the Leased Premises from Landlord for the term, at the rental and upon the provisions set forth herein.

THEREFORE, in consideration of the mutual promises contained herein, and for other good and valuable consideration, it is agreed:

### Term.

The Initial Term of the Lease shall begin on the **1st day of April, 2011**, and end on the **31st day of March, 2016**. Landlord shall use its best efforts to put Tenant in possession of the Leased Premises on the beginning of the Lease term. If Landlord is unable to timely provide the Leased Premises, rent shall abate for the period of delay. Tenant shall make no other claim against Landlord for any such delay.

### Renewal Option

At the end of the initial five year term, Tenant, upon giving ninety day advance notice to the Landlord, shall have the option to renew the Lease for an addition five year term. All terms and conditions during the renewal period shall be the same as was in effect during the initial term of the Lease.

### Rent.

Tenant shall pay to Landlord during the Initial Term rent of **$50,000.04** per year, payable in installments of **$4,166.67** per month. **Tenant is also responsible for all utilities used, as outlined separately below**. Each installment payment shall be due in advance on the first day of each calendar month during the lease term to Landlord at the following address:

The rental payment amount for any partial calendar months included in the lease term shall be prorated on a daily basis.

1

## Prohibited Uses.

Notwithstanding the forgoing, Tenant shall not use the Leased Premises for the purposes of storing, manufacturing or selling any explosives, flammables or other inherently dangerous substance, chemical, thing or device.

## Sublease and Assignment.

Tenant shall have the right without Landlord's consent, to assign this Lease to a business with which Tenant may merge or consolidate, to any subsidiary of Tenant, to any corporation under common control with Tenant, or to a purchaser of substantially all of Tenant's assets.

Except as set forth above, Tenant shall not sublease all or any part of the Leased Premises, or assign this Lease in whole or in part without Landlord's consent, such consent not to be unreasonably withheld or delayed.

## Repairs.

During the Lease term, Tenant shall make, at Tenant's expense, all necessary repairs to the Leased Premises. Repairs shall include such items as routine repairs of floors, walls, ceilings, and other parts of the Leased Premises damaged or worn through normal occupancy, except for major mechanical systems or the roof, subject to the obligations of the parties otherwise set forth in this Lease.

## Alterations and Improvements.

Tenant, at Tenant's expense, shall have the right, upon obtaining Landlord's consent, to remodel, redecorate, and make additions, improvements and replacements of and to all or any part of the Leased Premises from time to time as Tenant may deem desirable, provided the same are made in a workmanlike manner and utilizing good quality materials. Tenant shall have the right to place and install personal property, trade fixtures, equipment and other temporary installations in and upon the Leased Premises, and fasten the same to the premises. All personal property, equipment, machinery, trade fixtures and temporary installations, whether acquired by Tenant at the commencement of the Lease term or placed or installed on the Leased Premises by Tenant thereafter, shall remain Tenant's property free and clear of any claim by Landlord. Tenant shall have the right to remove the same at any time during the term of this Lease provided that Tenant shall repair, at Tenant's expense, all damage to the Leased Premises caused by such removal.

## Property Taxes.

Landlord shall pay, prior to delinquency, all general real estate taxes and installments of special assessments coming due during the Lease term on the Leased Premises, and all personal property taxes with respect to Landlord's personal property, if any, on the Leased Premises. Tenant shall be responsible for paying all personal property taxes with respect to Tenant's personal property at the Leased Premises.

## Insurance.

If the Leased Premises or any other part of the Building is damaged by fire or other casualty resulting from any act of negligence by Tenant or by any of Tenant's agents, employees or invitees, rent shall not be diminished or abated while such damages are under repair, and Tenant shall be responsible for the costs of repair not covered by insurance.

2

Landlord shall maintain fire and extended coverage insurance on the Building and the Leased Premises in such amount as Landlord shall deem appropriate. Tenant shall be responsible, at its expense, for fire and extended coverage insurance on all of its personal property, including removable trade fixtures, located in the Leased Premises.

Tenant and Landlord shall, each at its own expense, maintain a policy or policies of comprehensive general liability insurance with respect to the particular activities of each in the Building with the premiums thereon fully paid on or before due date. Such insurance policy shall be issued by and binding upon an insurance company approved by Landlord, and shall afford minimum protection of not less than $1,000,000 combined single limit coverage of bodily injury, property damage or combination thereof. Tenant shall provide Landlord with current Certificates of Insurance evidencing Tenant's compliance with this Paragraph.

Utilities.

**Tenant shall pay all charges for water, sewer, gas, electricity, telephone and other services and utilities used by Tenant on the Leased Premises during the term of this Lease unless otherwise expressly agreed in writing by Landlord. In the event that any utility or service provided to the Leased Premises is not separately metered, Landlord shall pay the amount due and separately invoice Tenant for Tenant's pro rata share of the charges.**

Tenant shall pay such all such utility charges prior to the due date. Tenant acknowledges that the Leased Premises are designed to provide standard office use electrical facilities and standard office lighting. Tenant shall not use any equipment or devices that utilizes excessive electrical energy or which may, in Landlord's reasonable opinion, over load the wiring or interfere with electrical services to other tenants.

Signs.

Following Landlord's consent, Tenant shall have the right to place on the Leased Premises, at locations selected by Tenant, any signs which are permitted by applicable zoning ordinances and private restrictions. Landlord may refuse consent to any proposed signage that is in Landlord's opinion too large, deceptive, unattractive or otherwise inconsistent with or inappropriate to the Leased Premises or use of any other tenant. Landlord shall assist and cooperate with Tenant in obtaining any necessary permission from governmental authorities or adjoining owners and occupants for Tenant to place or construct the foregoing signs. Tenant shall repair all damage to the Leased Premises resulting from the removal of signs installed by Tenant.

Entry.

Landlord shall have the right to enter upon the Leased Premises at reasonable hours to inspect the same, provided Landlord shall not thereby unreasonably interfere with Tenant's business on the Leased Premises.

Parking.

During the term of this Lease, Tenant shall have the non-exclusive use in common with Landlord, other tenants of the Building, their guests and invitees, of the non-reserved common automobile parking areas, driveways, and footways, subject to rules and regulations for the use thereof as prescribed from time to time by Landlord. Landlord reserves the right to designate parking areas for Tenant and Tenant's agents and employees. Tenant shall provide Landlord with a list of all license numbers for the cars owned by Tenant, its agents and employees.

3

Building Rules.

Tenant will comply with the rules of the Building adopted and altered by Landlord from time to time and will cause all of its agents, employees, invitees and visitors to do so; all changes to such rules will be sent by Landlord to Tenant in writing. The initial rules for the Building are attached hereto as Exhibit "A" and incorporated herein for all purposes.

Damage and Destruction.

If the Leased Premises or any part thereof or any appurtenance thereto is so damaged by fire, casualty or structural defects, such damage or defects not being the result of any act of negligence by Tenant or by any of Tenant's agents, employees or invitees, that the same cannot be used for Tenant's purposes, then Tenant shall have the right within ninety (90) days following damage to elect by notice to Landlord to terminate this Lease as of the date of such damage. In the event of minor damage to any part of the Leased Premises, and if such damage does not render the Leased Premises unusable for Tenant's purposes, Landlord shall promptly repair such damage at the cost of the Landlord. In making the repairs called for in this paragraph, Landlord shall not be liable for any delays resulting from strikes, governmental restrictions, inability to obtain necessary materials or labor or other matters which are beyond the reasonable control of Landlord. Tenant shall be relieved from paying rent and other charges during any portion of the Lease term that the Leased Premises are inoperable or unfit for occupancy, or use, in whole or in part, for Tenant's purposes. Rentals and other charges paid in advance for any such periods shall be credited on the next ensuing payments, if any, but if no further payments are to be made, any such advance payments shall be refunded to Tenant. The provisions of this paragraph extend not only to the matters aforesaid, but also to any occurrence which is beyond Tenant's reasonable control and which renders the Leased Premises, or any appurtenance thereto, inoperable or unfit for occupancy or use, in whole or in part, for Tenant's purposes.

Default.

In the event of a default made by Tenant in the payment of rent when due to Landlord, Tenant shall have fifteen (15) days after receipt of written notice thereof to cure such default. In the event of a default made by Tenant in any of the other covenants or conditions to be kept, observed and performed by Tenant, Tenant shall have thirty (30) days after receipt of written notice thereof to cure such default. In the event that the Tenant shall fail to cure any default within the time allowed under this paragraph, Landlord may declare the term of this Lease ended and terminated by giving Tenant written notice of such intention, and if possession of the Leased Premises is not surrendered, Landlord may reenter said premises. Landlord shall have, in addition to the remedy above provided, any other right or remedy available to Landlord on account of any Tenant default, either in law or equity. Landlord shall use reasonable efforts to mitigate its damages.

Quiet Possession.

Landlord covenants and warrants that upon performance by Tenant of its obligations hereunder, Landlord will keep and maintain Tenant in exclusive, quiet, peaceable and undisturbed and uninterrupted possession of the Leased Premises during the term of this Lease.

Condemnation.

If any legally, constituted authority condemns the Building or such part thereof which shall make the Leased Premises unsuitable for leasing, this Lease shall cease when the public authority takes possession, and Landlord and Tenant shall account for rental as of that date. Such termination shall be without prejudice to the rights of either party to recover compensation from

4

Case 2:21-cv-05264-JS-ST Document 1-1 Filed 09/08/27 Page 104 of 119 PageID #: 153

the condemning authority for any loss or damage caused by the condemnation. Neither party shall have any rights in or to any award made to the other by the condemning authority.

Subordination.

Tenant accepts this Lease subject and subordinate to any mortgage, deed of trust or other lien presently existing or hereafter arising upon the Leased Premises, or upon the Building and to any renewals, refinancing and extensions thereof, but Tenant agrees that any such mortgagee shall have the right at any time to subordinate such mortgage, deed of trust or other lien to this Lease on such terms and subject to such conditions as such mortgagee may deem appropriate in its discretion. Landlord is hereby irrevocably vested with full power and authority to subordinate this Lease to any mortgage, deed of trust or other lien now existing or hereafter placed upon the Leased Premises of the Building. Tenant agrees that it will from time to time upon request by Landlord execute and deliver to such persons as Landlord shall request a statement in recordable form certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as so modified), stating the dates to which rent and other charges payable under this Lease have been paid, stating that Landlord is not in default hereunder (or if Tenant alleges a default stating the nature of such alleged default) and further stating such other matters as Landlord shall reasonably require.

Notice.

Any notice required or permitted under this Lease shall be deemed sufficiently given or served if sent by United States certified mail, return receipt requested, addressed as follows:

Landlord:
West Hills Day Camp, Inc.
21 Sweet Hollow Road
Huntington, NY 11743

Tenant:
Gersh Management Services, Inc.
150 Broadhollow Road, Suite 120
Melville, NY 11747

Landlord and Tenant shall each have the right from time to time to change the place notice is to be given under this paragraph by written notice thereof to the other party.

Brokers.

Tenant represents that Tenant was not shown the Premises by any real estate broker or agent and that Tenant has not otherwise engaged in, any activity which could form the basis for a claim for real estate commission, brokerage fee, finder's fee or other similar charge, in connection with this Lease.

5

Case 2:21-cv-05264-JS-ST Document 1-1 Filed 09/08/21 Page 105 of 119 PageID # 154

Waiver.

No waiver of any default of Landlord or Tenant hereunder shall be implied from any omission to take any action on account of such default if such default persists or is repeated, and no express waiver shall affect any default other than the default specified in the express waiver and that only for the time and to the extent therein stated. One or more waivers by Landlord or Tenant shall not be construed as a waiver of a subsequent breach of the same covenant, term or condition.

Memorandum of Lease.

The parties hereto contemplate that this Lease should not and shall not be filed for record, but in lieu thereof, at the request of either party, Landlord and Tenant shall execute a Memorandum of Lease to be recorded for the purpose of giving record notice of the appropriate provisions of this Lease.

Headings.

The headings used in this Lease are for convenience of the parties only and shall not be considered in interpreting the meaning of any provision of this Lease.

Successors.

The provisions of this Lease shall extend to and be binding upon Landlord and Tenant and their respective legal representatives, successors and assigns.

Consent.

Landlord shall not unreasonably withhold or delay its consent with respect to any matter for which Landlord's consent is required or desirable under this Lease.

Performance.

If there is a default with respect to any of Landlord's covenants, warranties or representations under this Lease, and if the default continues more than fifteen (15) days after notice in writing from Tenant to Landlord specifying the default, Tenant may, at its option and without affecting any other remedy hereunder, cure such default and deduct the cost thereof from the next accruing installment or installments of rent payable hereunder until Tenant shall have been fully reimbursed for such expenditures, together with interest thereon at a rate equal to the lesser of 10% per annum or the then highest lawful rate. If this Lease terminates prior to Tenant's receiving full reimbursement, Landlord shall pay the un-reimbursed balance plus accrued interest to Tenant on demand.

Compliance with Law.

Tenant and Landlord each shall comply with all laws, orders, ordinances and other public requirements now or hereafter affecting the Leased Premises.

Final Agreement.

This Agreement terminates and supersedes all prior understandings or agreements on the subject matter hereof. This Agreement may be modified only by a further writing that is duly executed by both parties.

6

IN WITNESS WHEREOF, the parties have executed this Lease as of the day and year first above written.

**Tenant:** (Gersh Management Services Inc.)

_____
Signature                                date

_____
Print Name and Title

**Landlord:** (West Hills Day Camp, Inc.)

_____
Signature                                date

_____
Print Name and Title

7



### Phil Caparotta

| | |
|---|---|
| **From:** | Phil Caparotta |
| **Sent:** | Friday, March 23, 2012 4:01 PM |
| **To:** | ~~Valerie Vlacancich~~ |
| **Subject:** | additional agenda items for meeting with KG |
| **Attachments:** | Phil Caparotta.vcf |

- If the rent for GM and WHM ends beginning Nov 1 ( when WHDC Mgt fee ended), then an agreement is needed to cancel the leases. Otherwise the leases are still in effect and legally we cannot stop the rent expense, As an alternative, we could offset the rent expense by getting a Management Fee from WHDC for the same amount ( $10K) each month. This is actually a better option, as we should really show rent expense on the books, and the management fee increases our revenue – better for INC 500, Valley National etc.

- Does the new "accounting management fee' of $50,000 annually begin 1/1/12? If so we will book it at $4,166.67 per month.

**Phil Caparotta**
Gersh Educational Services
Controller

(631) 385-3342 Work
pcaparotta@gershaca
21 Sweet Hollow Road
Huntington, NY 11743
www.gershacademy.orgemy.org

1

GREENHAUS002606

Appendix 5
Case 2:21-cv-05240-JSS-ST Document 31-2 Filed 09/16/27/ Page 108 of 119 Page ID #: 157
Case 2:21-cv-05240-JSST Document 31-2 Filed 09/16/27 Page 108 of 119 Page ID
QuickBooks Audit Trail – $25,000 10.1.11 - 12.31.11
1 of 1

**7:41 AM**

**01/26/18**

## WEST HILLS DAY CAMP

## Audit Trail

**Entered/Last Modified October through December 2011**

| Num | Entered/Last Modified | Last modified by | State | Date | Name | Memo | Account | Split | Debit | Credit |
|---|---|---|---|---|---|---|---|---|---|
| **Transactions entered or modified by Admin** | | | | | | | | | |
| **General Journal Gersh Mgmt** | | | | | | | | | |
| Gersh ... | 10/04/2011 17:29:07 | Admin | Latest | 10/01/2011 | | Accrue Gersh Mgnt Fee | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | 1100 · Prepaid Exp:1140 · Management Fees | 25,000.00 | |
| | | | | | | Accrue Gersh Mgnt Fee | 1100 · Prepaid Exp:1140 · Management Fees | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | | 25,000.00 |
| **Transactions entered or modified by Megan** | | | | | | | | | |
| **Bill OCTOBER MGMT FEES** | | | | | | | | | |
| OCTO... | 10/06/2011 12:08:37 | Megan | Latest | 10/01/2011 | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | 1100 · Prepaid Exp:1140 · Management Fees | | 25,000.00 |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | OCTOBER MGMT FEES | 1100 · Prepaid Exp:1140 · Management Fees | 2000 · Accounts Payable | 25,000.00 | |
| **Bill NOVEMBER MGMT FEES** | | | | | | | | | |
| NOVE... | 02/14/2012 12:12:50 | *phil [Delete...* | Latest | 11/01/2011 | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | *1100 · Prepaid Exp:1140 · ...* | *0.00* | |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | NOVEMBER MGMT FEES | *1100 · Prepaid Exp:1140 · Mana...* | 2000 · Accounts Payable | *0.00* | |
| NOVE... | 11/16/2011 10:31:40 | Megan | Prior | 11/01/2011 | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | 1100 · Prepaid Expenses:1140 · Prepaid Management Fees | | 25,000.00 |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | NOVEMBER MGMT FEES | 1100 · Prepaid Expenses:1140 · Prepaid Management Fees | 2000 · Accounts Payable | 25,000.00 | |
| **Bill Pmt -Check 13741** | | | | | | | | | |
| 13741 | 10/06/2011 12:11:36 | Megan | Latest | 10/06/2011 | GERSH MANAGEMENT SERVICES, INC. | | 1025 · CASH-CAPITAL ONE CHECKING #3207 | 2000 · Accounts Payable | | 25,000.00 |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | 1025 · CASH-CAPITAL ONE CHECKING #3207 | 25,000.00 | |
| **Transactions entered or modified by phil [Deleted User]** | | | | | | | | | |
| **Bill NOVEMBER MGMT FEES** | | | | | | | | | |
| NOVE... | 02/14/2012 12:12:50 | *phil [Delete...* | Latest | 11/01/2011 | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | *1100 · Prepaid Exp:1140 · ...* | *0.00* | |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | NOVEMBER MGMT FEES | *1100 · Prepaid Exp:1140 · Mana...* | 2000 · Accounts Payable | *0.00* | |
| NOVE... | 11/16/2011 10:31:40 | Megan | Prior | 11/01/2011 | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | 1100 · Prepaid Expenses:1140 · Prepaid Management Fees | | 25,000.00 |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | NOVEMBER MGMT FEES | 1100 · Prepaid Expenses:1140 · Prepaid Management Fees | 2000 · Accounts Payable | 25,000.00 | |
| **General Journal Gersh Mgnt** | | | | | | | | | |
| Gersh ... | 02/14/2012 11:11:13 | phil [Deleted User] | *Del...* | | | | | | 0.00 | |
| Gersh ... | 11/02/2011 12:12:25 | phil [Deleted User] | Prior | 11/01/2011 | | Accrue Gersh Mgnt Fee | 2. · ADMINISTRATIVE EXPENSES:7398 · OUTSIDE SERVICES-GE... | 1100 · Prepaid Expenses:1140 · Prepaid Management Fees | 25,000.00 | |
| | | | | | | Accrue Gersh Mgnt Fee | 1100 · Prepaid Expenses:1140 · Prepaid Management Fees | 2. · ADMINISTRATIVE EXPENSES:7398 · OUTSIDE SERVI... | | 25,000.00 |
| **General Journal Gersh Mgnt** | | | | | | | | | |
| Gersh ... | 02/14/2012 11:10:18 | phil [Deleted User] | *Del...* | | | | | | 0.00 | |
| Gersh ... | 12/01/2011 09:39:42 | phil [Deleted User] | Prior | 12/01/2011 | | Accrue Gersh Mgnt Fee | 2. · ADMINISTRATIVE EXPENSES:7398 · OUTSIDE SERVICES-GE... | 1100 · Prepaid Expenses:1140 · Prepaid Management Fees | 25,000.00 | |
| | | | | | | Accrue Gersh Mgnt Fee | 1100 · Prepaid Expenses:1140 · Prepaid Management Fees | 2. · ADMINISTRATIVE EXPENSES:7398 · OUTSIDE SERVI... | | 25,000.00 |

Page 1

EXHIBIT 12
Caparotta
3/30/17
PENGAD 800-631-6989

West Hills Day Camp
Management Fee to GM  (to Offset Rents)

These Management Fees Begin in November 2011

West Hills Day Camp to Pay Gersh Management $9,167 per month

| | | | |
|---|---|---|---|
| **Grsh Mgt:** | Feb-12 | Record Mgt Fee Income For: | |
| | | Nov-11 | 9,167.00 |
| | | Dec-11 | 9,167.00 |
| | | Jan-12 | 9,167.00 |
| | | Feb-12 | 9,167.00 |
| | **Total to Record in Feb:** | | **36,668.00** |
| | | Mar-12 | 9,167.00 |
| | | Apr-12 | 9,167.00 |
| | | MAY 12 | |

*all booked as income on Gersh Mgt*

| | | | |
|---|---|---|---|
| **WHDC:** | | Record Mgt Fee Expense For: | |
| | | Nov-11 | 9,167.00 |
| | | Dec-11 | 9,167.00 |
| | | Jan-12 | 9,167.00 |
| | | Feb-12 | 9,167.00 |
| | | Mar-12 | 9,167.00 |
| | | Apr-12 | 9,167.00 |
| | | MAY 12 | 9167.00 |

*These have not yet been ... check with Val.*

*Rental Income Booked in WHDC Thru April*

*offsets rents 5000 - 4166.67 / $9166.67 /*

*M Questions / Issues for VAL:*

*(1) WHDC Needs to record expense for The Mgt Fee (Rent offset) for Nov → April*

*(2) Beginning (Yes) in April - record The $5K per month Management Fee for Acctg services Now That KB off The payroll ?*

*(3) — STARK STILL ONLY 50% for Spring/Summer/Fall ?*

GREENHAUS002363

6:25 AM

01/26/18

**WEST HILLS DAY CAMP**

**Audit Trail**

**Entered/Last Modified April 9, 2012**

| Num | Entered/Last Modified | Last modified by | State | Date | Name | Memo | Account | Split | Debit | Credit |
|---|---|---|---|---|---|---|---|---|---|
| **Transactions entered or modified by Megan** | | | | | | | | | |
| **Bill 338** | | | | | | | | | |
| 338 | 08/21/2012 17:33:30 | *phil [Deleted U...* | Latest | 11/30/2011 | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | *7398 · OUTSIDE SERVICE...* | | 9,167.00 |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | NOVEMBER MGMT FEES | *7398 · OUTSIDE SERVICES...* | 2000 · Accounts Payable | 9,167.00 | |
| 338 | 04/09/2012 10:07:54 | Megan | Prior | 11/30/2011 | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | 1100 · Prepaid Expenses:1140 · Prepaid Mana... | | 9,167.00 |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | NOVEMBER MGMT FEES | 1100 · Prepaid Expenses:1140 · Prepaid Manage... | 2000 · Accounts Payable | 9,167.00 | |
| **Bill 338** | | | | | | | | | |
| 338 | 08/21/2012 17:34:23 | *phil [Deleted U...* | Latest | 12/31/2011 | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | *7398 · OUTSIDE SERVICE...* | | 9,167.00 |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | DECEMBER MGMT FEES | *7398 · OUTSIDE SERVICES...* | 2000 · Accounts Payable | 9,167.00 | |
| 338 | 04/09/2012 10:08:18 | Megan | Prior | 12/31/2011 | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | 1100 · Prepaid Expenses:1140 · Prepaid Mana... | | 9,167.00 |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | DECEMBER MGMT FEES | 1100 · Prepaid Expenses:1140 · Prepaid Manage... | 2000 · Accounts Payable | 9,167.00 | |
| **Bill 338** | | | | | | | | | |
| 338 | 04/09/2012 10:08:40 | Megan | Latest | 01/31/2012 | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | 1100 · Prepaid Exp:1140 · Management Fees | | 9,167.00 |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | JANUARY MGMT FEES | 1100 · Prepaid Exp:1140 · Management Fees | 2000 · Accounts Payable | 9,167.00 | |
| **Bill 338** | | | | | | | | | |
| 338 | 04/09/2012 10:09:14 | Megan | Latest | *02/29/20* | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | *1100 · Prepaid Exp:1140 · ...* | | 9,167.00 |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | FEBRUARY MGMT FEES | *1100 · Prepaid Exp:1140 · ...* | 2000 · Accounts Payable | 9,167.00 | |
| 338 | 04/09/2012 10:09:02 | Megan | Prior | 02/28/2012 | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | 1100 · Prepaid Expenses:1140 · Prepaid Mana... | | 9,167.00 |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | FEBRUARY MGMT FEES | 1100 · Prepaid Expenses:1140 · Prepaid Manage... | 2000 · Accounts Payable | 9,167.00 | |
| **Bill 339** | | | | | | | | | |
| 339 | 04/09/2012 10:09:37 | Megan | Latest | 03/31/2012 | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | 1100 · Prepaid Exp:1140 · Management Fees | | 9,167.00 |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | MARCH MGMT FEES | 1100 · Prepaid Exp:1140 · Management Fees | 2000 · Accounts Payable | 9,167.00 | |
| **Bill 340** | | | | | | | | | |
| 340 | 04/09/2012 10:10:02 | Megan | Latest | 04/30/2012 | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | 1100 · Prepaid Exp:1140 · Management Fees | | 9,167.00 |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | APRIL MGMT FEES | 1100 · Prepaid Exp:1140 · Management Fees | 2000 · Accounts Payable | 9,167.00 | |
| **Transactions entered or modified by phil [Deleted User]** | | | | | | | | | |
| **Bill 338** | | | | | | | | | |
| 338 | 08/21/2012 17:33:30 | *phil [Deleted U...* | Latest | 11/30/2011 | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | *7398 · OUTSIDE SERVICE...* | | 9,167.00 |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | NOVEMBER MGMT FEES | *7398 · OUTSIDE SERVICES...* | 2000 · Accounts Payable | 9,167.00 | |
| 338 | 04/09/2012 10:07:54 | Megan | Prior | 11/30/2011 | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | 1100 · Prepaid Expenses:1140 · Prepaid Mana... | | 9,167.00 |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | NOVEMBER MGMT FEES | 1100 · Prepaid Expenses:1140 · Prepaid Manage... | 2000 · Accounts Payable | 9,167.00 | |
| **Bill 338** | | | | | | | | | |
| 338 | 08/21/2012 17:34:23 | *phil [Deleted U...* | Latest | 12/31/2011 | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | *7398 · OUTSIDE SERVICE...* | | 9,167.00 |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | DECEMBER MGMT FEES | *7398 · OUTSIDE SERVICES...* | 2000 · Accounts Payable | 9,167.00 | |
| 338 | 04/09/2012 10:08:18 | Megan | Prior | 12/31/2011 | GERSH MANAGEMENT SERVICES, INC. | | 2000 · Accounts Payable | 1100 · Prepaid Expenses:1140 · Prepaid Mana... | | 9,167.00 |
| | | | | | GERSH MANAGEMENT SERVICES, INC. | DECEMBER MGMT FEES | 1100 · Prepaid Expenses:1140 · Prepaid Manage... | 2000 · Accounts Payable | 9,167.00 | |

**6:36 AM**

**01/26/18**

**Accrual Basis**

# WEST HILLS DAY CAMP
## Transaction Detail By Account
**January through December 2012**

| Type | Date | Num | Name | Memo | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|
| **7398 · OUTSIDE SERVICES-GERSH MGMT PY** | | | | | | | | |
| Bill | 07/31/2012 | 073112 | GERSH MANAGEMENT SERVICES, INC. | JULY MGMT FEES | 2000 · Accounts Payable | 4,167.00 | | 4,167.00 |
| General Journal | 08/31/2012 | JE-PC | | Jan-June 2012 Mgt fee @9167 per month | 7115 · BUS TRANSPORATION | 55,002.00 | | 59,169.00 |
| Bill | 08/31/2012 | 083112 | GERSH MANAGEMENT SERVICES, INC. | AUGUST MGMT FEES | 2000 · Accounts Payable | 4,167.00 | | 63,336.00 |
| Bill | 09/30/2012 | 093012-MGMT | GERSH MANAGEMENT SERVICES, INC. | SEPT MGMT FEE | 2000 · Accounts Payable | 9,167.00 | | 72,503.00 |
| Bill | 10/31/2012 | 103112-MGMT | GERSH MANAGEMENT SERVICES, INC. | OCTOBER MGMT FEE | 2000 · Accounts Payable | 9,167.00 | | 81,670.00 |
| Bill | 11/30/2012 | 113012-MGMT | GERSH MANAGEMENT SERVICES, INC. | NOVEMBER MGMT FEE | 2000 · Accounts Payable | 9,167.00 | | 90,837.00 |
| Bill | 12/31/2012 | 123112-MGMT | GERSH MANAGEMENT SERVICES, INC. | DECEMBER MGMT FEE | 2000 · Accounts Payable | 9,167.00 | | 100,004.00 |
| Total 7398 · OUTSIDE SERVICES-GERSH MGMT PY | | | | | | 100,004.00 | 0.00 | 100,004.00 |
| **TOTAL** | | | | | | **100,004.00** | **0.00** | **100,004.00** |

Case 2:21-cv-05849-SST Document 131-1 Filed 09/08/27 Page 112 of 119 Page ID #: 161

6:46 AM

01/26/18

**WEST HILLS DAY CAMP**

**Audit Trail**

**Entered/Last Modified**

| Num | Entered/Last Modified | Last modified by | State | Date | Memo | Account | Split | Debit | Credit |
|---|---|---|---|---|---|---|---|---|---|
| **Transactions entered or modified by phil [Deleted User]** | | | | | | | | | |
| **General Journal JE-PC** | | | | | | | | | |
| JE-PC | 07/12/2013 11:53:33 | phil [Deleted User] | Latest | 08/31/2012 | reclass prepaid transportation to expense | 7115 · BUS TRANSPORATION | -SPLIT- | 45,939.68 | |
| | | | | | reclass prepaid transportation to expense | 1100 · Prepaid Exp:1115 · Transportation | 7115 · BUS TRANSPORATI... | | 45,939.68 |
| | | | | | reclass lunch deposits to lunch revenue | 2089.5 · DEPOSITS - Misc:2091 · DEPOSIT... | 7115 · BUS TRANSPORATI... | | 240.01 |
| | | | | | reclass lunch deposits to lunch revenue | OTHER PROG REV:3022 · LUNCH | 7115 · BUS TRANSPORATI... | 240.01 | |
| | | | | | Jan-June 2012 Mgt fee @9167 per month | 7398 · OUTSIDE SERVICES-GERSH MGMT... | 7115 · BUS TRANSPORATI... | 55,002.00 | |
| | | | | | Jan-June 2012 Mgt fee @9167 per month | 1100 · Prepaid Exp:1140 · Management Fees | 7115 · BUS TRANSPORATI... | | 55,002.00 |
| | | | | | reclass prepaid teen travel to expense | 7600 · OTHER PROG COSTS:9330 · TEEN ... | 7115 · BUS TRANSPORATI... | 135,182.36 | |
| | | | | | reclass prepaid teen travel to expense | 1100 · Prepaid Exp:1150 · Summer Exp:11... | 7115 · BUS TRANSPORATI... | | 144,632.36 |
| | | | | | reclass prepaid jr travel to expense | 7600 · OTHER PROG COSTS:9335 · JR. T... | 7115 · BUS TRANSPORATI... | 50,630.83 | |
| | | | | | reclass prepaid jr travel to expense | 1100 · Prepaid Exp:1150 · Summer Exp:11... | 7115 · BUS TRANSPORATI... | | 1,945.00 |
| | | | | | reclass prepaid jr travel to expense | 1100 · Prepaid Exp:1150 · Summer Exp:11... | 7115 · BUS TRANSPORATI... | | 41,180.83 |
| | | | | | reclass soccer club deposits to revenue | 2089.5 · DEPOSITS - Misc:2093 · DEPOSIT... | 7115 · BUS TRANSPORATI... | | 525.00 |
| | | | | | reclass soccer club deposits to revenue | OTHER PROG REV:3044 · FOOTBALL CL... | 7115 · BUS TRANSPORATI... | 525.00 | |
| | | | | | reclass mom tots deposits to revenue | 2089.5 · DEPOSITS - Misc:2094 · DEPOSIT... | 7115 · BUS TRANSPORATI... | | 37.50 |
| | | | | | reclass mom tots deposits to revenue | OTHER PROG REV:3023 · MOMS & TOTS ... | 7115 · BUS TRANSPORATI... | 37.50 | |
| | | | | | reclass prepaid special events to expense | 7600 · OTHER PROG COSTS:7502 · CAMP... | 7115 · BUS TRANSPORATI... | 300.00 | |
| | | | | | reclass prepaid special events to expense | 1100 · Prepaid Exp:1150 · Summer Exp:11... | 7115 · BUS TRANSPORATI... | | 300.00 |
| | | | | | reclass prepaid special events to expense | 7600 · OTHER PROG COSTS:9334 · PRE-T... | 7115 · BUS TRANSPORATI... | 1,945.00 | |
| JE-PC | 01/08/2013 16:40:35 | phil [Deleted User] | Prior | 08/31/2012 | reclass prepaid transportation to expense | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | -SPLIT- | 45,939.68 | |
| | | | | | reclass prepaid transportation to expense | 1100 · Prepaid Expenses:1115 · Prepaid Transportation | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | | 45,939.68 |
| | | | | | reclass lunch deposits to lunch revenue | 2091 · DEPOSITS-LUNCH | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | | 240.01 |
| | | | | | reclass lunch deposits to lunch revenue | OTHER CAMP & PROGRAM REVENUE:3022 · LUNCH REVENUE | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | 240.01 | |
| | | | | | reclass prepaid management fees to expense | 2. · ADMINISTRATIVE EXPENSES:7398 · OUTSIDE SERVICES-GERSH MGMT | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | 55,002.00 | |
| | | | | | reclass prepaid management fees to expense | 1100 · Prepaid Expenses:1140 · Prepaid Management Fees | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | | 55,002.00 |
| | | | | | reclass prepaid teen travel to expense | 1. · OPERATING EXPENSES:9330 · TEEN TRAVEL EXPENSES | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | 144,632.36 | |
| | | | | | reclass prepaid teen travel to expense | 1100 · Prepaid Expenses:1150 · Prepaid Travel Expenses:1151 · Teen Travel | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | | 144,632.36 |
| | | | | | reclass prepaid jr travel to expense | 1. · OPERATING EXPENSES:9335 · JR. TRAVEL EXPENSES | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | 41,180.83 | |
| | | | | | reclass prepaid jr travel to expense | 1100 · Prepaid Expenses:1150 · Prepaid Travel Expenses:1153 · Pre-teen Travel | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | | 1,945.00 |
| | | | | | reclass prepaid jr travel to expense | 1100 · Prepaid Expenses:1150 · Prepaid Travel Expenses:1152 · Junior Travel | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | | 41,180.83 |
| | | | | | reclass soccer club deposits to revenue | 2093 · DEPOSIT-CAMP ECHO | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | | 525.00 |
| | | | | | reclass soccer club deposits to revenue | OTHER CAMP & PROGRAM REVENUE:3044 · FOOTBALL CLUB (ECHO) REVENUE | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | 525.00 | |
| | | | | | reclass mom tots deposits to revenue | 2094 · DEPOSITS-MOMS & TOTS | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | | 37.50 |
| | | | | | reclass mom tots deposits to revenue | OTHER CAMP & PROGRAM REVENUE:3023 · SUMMER CAMP-MOMS & TOTS TGTHR | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | 37.50 | |
| | | | | | reclass prepaid special events to expense | 1. · OPERATING EXPENSES:7600 · OTHER CAMP & PROGRAM EXPENSES:7502 · SPE... | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | 300.00 | |
| | | | | | reclass prepaid special events to expense | 1100 · Prepaid Expenses:1160 · Prepaid Special Events | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | | 300.00 |
| | | | | | reclass prepaid special events to expense | 1. · OPERATING EXPENSES:7600 · OTHE... | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | 1,945.00 | |
| JE-PC | 09/14/2012 09:47:21 | phil [Deleted User] | Prior | 08/31/2012 | reclass prepaid transportation to expense | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | -SPLIT- | 45,939.68 | |
| | | | | | reclass prepaid transportation to expense | 1100 · Prepaid Expenses:1115 · Prepaid Transportation | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | | 45,939.68 |
| | | | | | reclass lunch deposits to lunch revenue | 2091 · DEPOSITS-LUNCH | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | | 240.01 |
| | | | | | reclass lunch deposits to lunch revenue | OTHER CAMP & PROGRAM REVENUE:3022 · LUNCH REVENUE | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | 240.01 | |
| | | | | | reclass prepaid management fees to expense | 2. · ADMINISTRATIVE EXPENSES:7398 · OUTSIDE SERVICES-GERSH MGMT | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | 55,002.00 | |
| | | | | | reclass prepaid management fees to expense | 1100 · Prepaid Expenses:1140 · Prepaid Management Fees | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | | 55,002.00 |
| | | | | | reclass prepaid teen travel to expense | 1. · OPERATING EXPENSES:9330 · TEEN TRAVEL EXPENSES | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | 144,632.36 | |
| | | | | | reclass prepaid teen travel to expense | 1100 · Prepaid Expenses:1150 · Prepaid Travel Expenses:1151 · Teen Travel | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | | 144,632.36 |
| | | | | | reclass prepaid jr travel to expense | 1. · OPERATING EXPENSES:9335 · JR. TRAVEL EXPENSES | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | 43,125.83 | |
| | | | | | reclass prepaid jr travel to expense | 1100 · Prepaid Expenses:1150 · Prepaid Travel Expenses:1153 · Pre-teen Travel | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | | 1,945.00 |
| | | | | | reclass prepaid jr travel to expense | 1100 · Prepaid Expenses:1150 · Prepaid Travel Expenses:1152 · Junior Travel | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | | 41,180.83 |
| | | | | | reclass soccer club deposits to revenue | 2093 · DEPOSIT-CAMP ECHO | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | | 525.00 |
| | | | | | reclass soccer club deposits to revenue | OTHER CAMP & PROGRAM REVENUE:3044 · FOOTBALL CLUB (ECHO) REVENUE | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | 525.00 | |
| | | | | | reclass mom tots deposits to revenue | 2094 · DEPOSITS-MOMS & TOTS | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | | 37.50 |
| | | | | | reclass mom tots deposits to revenue | OTHER CAMP & PROGRAM REVENUE:3023 · SUMMER CAMP-MOMS & TOTS TGTHR | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | 37.50 | |
| | | | | | reclass prepaid special events to expense | 1. · OPERATING EXPENSES:7600 · OTHER CAMP & PROGRAM EXPENSES:7502 · SPE... | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | 300.00 | |
| | | | | | reclass prepaid special events to expense | 1100 · Prepaid Expenses:1160 · Prepaid Special Events | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | | 300.00 |
| | | | | | | 1265 · Affiliates:1265a · 1 | 1. · OPERATING EXPENSES:7115 · BUS TRANSPORATION | 0.00 | |

# PAYROLL JOURNAL

**WEST HILLS DAY CAMP INC - J270**

CHECK DATES 03/31/2011 TO 12/30/2011
PERIOD BEGIN 12/30/2010 PERIOD END 12/23/2011

**07/20/2017**
**PAGE 16**

| EMPLOYEE NAME ID SSN STATE/FRQ STS LOCATION | EARNINGS DESCR | PAY RATE | CURRENT HOURS | CURRENT AMOUNT | YTD HOURS | YTD AMOUNT | DEDUCTIONS DESCR | CURRENT AMOUNT | YTD AMOUNT | TAXES DESCR | CURRENT AMOUNT | YTD AMOUNT | NET PAY CHECK NO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **GERSH, KEVIN** 2785 XXX-XX-XXXX NY NY NY 26 S0/S0 200 400.00 Salary Last Check Date 06/10/2011 | 1 REGULAR 5 SALARY | | | 240000 | | 420000 | MD MEDICAL (PO | 30000 | 52500 | FEDERAL OASDI MEDICARE NY STATE NY SDI | 19152 10080 3480 3162 720 | 33112 17640 6090 52700 1300 | 173406 1 MANUAL 03/31/2011 |
| EMPLOYEE TOTAL | | | | 240000 | | 420000 | | 30000 | 52500 | | 36594 | 63412 | |
| **GERSH, KEVIN** 2785 XXX-XX-XXXX NY NY NY 26 S0/S0 200 400.00 Salary Last Check Date 06/10/2011 | 1 REGULAR 5 SALARY | | | 180000 | | 420000 | MD MEDICAL (PO | 22500 | 52500 | FEDERAL OASDI MEDICARE NY STATE NY SDI | 13960 7560 2610 2108 580 | 33112 17640 6090 52700 1300 | 130682 2 MANUAL 06/10/2011 |
| EMPLOYEE TOTAL | | | | 180000 | | 420000 | | 22500 | 52500 | | 26818 | 63412 | |
| **HARRINGTON, WENDY** 2918 XXX-XX-XXXX NY NY NY 26 M5/M5 200 2561.09 Salary Last Check Date 12/30/2011 | 1 REGULAR 5 SALARY | | | | | 2139411 | C1 CHECKING 1 MD MEDICAL (PO | | 1645445 10677 | FEDERAL OASDI MEDICARE NY STATE NY SDI | | 50786 89857 31021 64789 2365 | 000 1 MANUAL 03/31/2011 |
| EMPLOYEE TOTAL | | | | | | 2139411 | | | 1656122 | | | 238818 | |
| **HARRINGTON, WENDY** 2918 XXX-XX-XXXX NY NY NY 26 M5/M5 200 2561.09 Salary Last Check Date 12/30/2011 | 1 REGULAR 5 SALARY | | | 153000 | | 2139411 | C1 CHECKING 1 MD MEDICAL (PO | | 1645445 10677 | FEDERAL OASDI MEDICARE NY STATE NY SDI | 6426 2219 565 | 50786 89857 31021 64789 2365 | 143790 2 MANUAL 06/10/2011 |

PAYCHEX000016

# PAYROLL JOURNAL

**WEST HILLS DAY CAMP INC - J270**

CHECK DATES 01/04/2013 TO 12/27/2013
PERIOD BEGIN 12/22/2012 PERIOD END 12/20/2013

07/20/2017
PAGE 17

| EMPLOYEE NAME / ID SSN STATE/FRQ STS LOCATION | EARNINGS DESCR | PAY RATE | CURRENT HOURS | CURRENT AMOUNT | YTD HOURS | YTD AMOUNT | DEDUCTIONS DESCR | CURRENT AMOUNT | YTD AMOUNT | TAXES DESCR | CURRENT AMOUNT | YTD AMOUNT | NET PAY CHECK NO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **COACHES** **DEPARTMENT TOTALS** 3 EMPLOYEES 72 CHECKS | 1 HOURLY 5 SALARY | | 25000 | 500000 6098469 | 25000 | 500000 6098469 | 1C CHILD SUPPO C1 CHECKING 1 G1 GARNISH 1-P | 558105 3371862 102697 | 558105 3371862 102697 | FEDERAL OASDI MEDICARE NY STATE NY SDI | 293254 409108 95676 213437 7780 1019255 | 293254 409108 95676 213437 7780 1019255 | 1546550 |
| | | | | | | | | | | ER OASDI ER MEDCR ER FUI NY ER SUI NY RE-EMP 2009-MCTM | 409108 95676 11399 139150 1653 5358 662344 | 409105 95678 11400 139151 1651 5359 662344 | |
| DEPARTMENT TOTAL | | | 25000 | 6598469 | 25000 | 6598469 | | 4032664 | 4032664 | | 1681599 | 1681599 | |
| **GERSH, KEVIN** 2785 XXX-XX-XXXX NY NY NY 26 S0/S0 200 5681.82 Salary Last Check Date 12/27/2013 | 1 HOURLY 5 SALARY | | | 568182 | | 11931822 | C1 CHECKING 1 | 357118 | 7534311 | FEDERAL OASDI MEDICARE NY STATE NY SDI | 130927 35227 8239 36551 120 | 2749467 704939 173014 767571 2520 | 000 DIRDEP 03/22/2013 |
| EMPLOYEE TOTAL | | | | 568182 | | 11931822 | | 357118 | 7534311 | | 211064 | 4397511 | |
| **GERSH, KEVIN** 2785 XXX-XX-XXXX NY NY NY 26 S0/S0 200 5681.82 Salary Last Check Date 12/27/2013 | 1 HOURLY 5 SALARY | | | 568182 | | 11931822 | C1 CHECKING 1 | 357118 | 7534311 | FEDERAL OASDI MEDICARE NY STATE NY SDI | 130927 35227 8239 36551 120 | 2749467 704939 173014 767571 2520 | 000 DIRDEP 04/05/2013 |
| EMPLOYEE TOTAL | | | | 568182 | | 11931822 | | 357118 | 7534311 | | 211064 | 4397511 | |
| **GERSH, KEVIN** 2785 XXX-XX-XXXX NY NY NY 26 S0/S0 200 5681.82 Salary | 1 HOURLY 5 SALARY | | | 568182 | | 11931822 | C1 CHECKING 1 | 357118 | 7534311 | FEDERAL OASDI MEDICARE NY STATE | 130927 35227 8239 36551 | 2749467 704939 173014 767571 | 000 DIRDEP 04/19/2013 |

PAYCHEX000690

Case 2:21-cv-05849-SST Document 51-2 Filed 09/08/27 Page 115 of 119 Page #: 143
# 164

**7:09 AM**

**01/26/18**

**WEST HILLS DAY CAMP**

**Audit Trail**

**Entered/Last Modified January through December 2015**

| Num | Entered/Last Modified | Last modified by | State | Date | Memo | Account | Split | Debit | Credit |
|---|---|---|---|---|---|---|---|---|---|
| **Transactions entered or modified by Megan** | | | | | | | | | |
| **Bill 010115-063015** | | | | | | | | | |
| 010115-063015 | 07/30/2015 10:49:23 | Megan | Latest | 07/01/2015 | | 2000 · Accounts Payable | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | | 150,000.00 |
| | | | | | 010115-063015 | 7398 · OUTSIDE SERVICES-GERSH MGM... | 2000 · Accounts Payable | 150,000.00 | |

Case 2:21-cv-05849-SST Document 151-2 Filed 09/08/27 Page 116 of 119 Page ID # 165

7:13 AM

01/26/18

**WEST HILLS DAY CAMP**
**Audit Trail**

**Entered/Last Modified January 1, 2015 through January 6, 2016**

| Num | Entered/Last Modified | Last modified by | State | Date | Memo | Account | Split | Debit | Credit |
|---|---|---|---|---|---|---|---|---|---|
| **Transactions entered or modified by Megan** | | | | | | | | | |
| **Bill 070115-073115** | | | | | | | | | |
| 070115-073115 | 07/30/2015 10:49:42 | Megan | Latest | 07/31/2015 | | 2000 · Accounts Payable | 7398 · OUTSIDE SERVICES-GERSH MGMT ... | | 25,000.00 |
| | | | | | 073115 | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | 2000 · Accounts Payable | 25,000.00 | |
| **Bill 080115-083115** | | | | | | | | | |
| 080115-083115 | 09/14/2015 11:56:45 | Megan | Latest | 08/31/2015 | | 2000 · Accounts Payable | 7398 · OUTSIDE SERVICES-GERSH MGMT ... | | 25,000.00 |
| | | | | | 083115 | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | 2000 · Accounts Payable | 25,000.00 | |
| **Bill 090115-093015** | | | | | | | | | |
| 090115-093015 | 09/28/2015 14:37:04 | Megan | Latest | 09/30/2015 | | 2000 · Accounts Payable | 7398 · OUTSIDE SERVICES-GERSH MGMT ... | | 25,000.00 |
| | | | | | 093015 | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | 2000 · Accounts Payable | 25,000.00 | |
| **Bill 100115-103115** | | | | | | | | | |
| 100115-103115 | 11/09/2015 14:45:02 | Megan | Latest | 10/31/2015 | | 2000 · Accounts Payable | 7398 · OUTSIDE SERVICES-GERSH MGMT ... | | 25,000.00 |
| | | | | | 103115 | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | 2000 · Accounts Payable | 25,000.00 | |
| **Bill 110115-113015** | | | | | | | | | |
| 110115-113015 | 11/30/2015 12:25:59 | Megan | Latest | 11/30/2015 | | 2000 · Accounts Payable | 7398 · OUTSIDE SERVICES-GERSH MGMT ... | | 25,000.00 |
| | | | | | 113015 | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | 2000 · Accounts Payable | 25,000.00 | |
| **Bill 120115-123115** | | | | | | | | | |
| 120115-123115 | 01/06/2016 10:03:11 | Megan | Latest | 12/31/2015 | | 2000 · Accounts Payable | 7398 · OUTSIDE SERVICES-GERSH MGMT ... | | 25,000.00 |
| | | | | | 123115 | 7398 · OUTSIDE SERVICES-GERSH MGMT PY | 2000 · Accounts Payable | 25,000.00 | |

# MANAGEMENT AGREEMENT

PLAINTIFF'S EXHIBIT
4
2/21/17

This AGREEMENT (the "Agreement"), effective as of _10/19/09_ is by and between West Hills Day Camp, Inc. (the "Camp"), a New York Corporation and Gersh Management Services, Inc. (the "Company"), a New York Corporation. In consideration of the mutual covenants contained in this agreement, the Camp and the Company agree as follows:

1.        Reference is made to the Employment Agreement by and between the Camp and Edward I. Gersh dated January 1, 2007, a copy of which is attached.  It is the intention of the parties that this Employment Agreement becomes part of this Agreement.

2.        Edward I. Gersh amends his compensation agreement to adjust his base salary from $600,000 to $300,000. _340,000 EFFECTIVE 1/1/10_

3.        Edward I. Gersh and the Camp, in accordance with Section 7 of the Employment Agreement, assign to the Company all rights and obligations under the Employment Agreement except that:
          (a)        The Company will perform its obligations under the Agreement for a fee of $300,000 per annum.   _EFFECTIVE 1/1/10_

          (b)        Edward I. Gersh will retain his rights and obligations under the Employment Agreement, except as amended in Section 2 of this Agreement.

4.        It is the intention of the parties that Edward I. Gersh and the Company have equal rights and responsibilities under the Employment Agreement.

IN WITNESS WHEREOF, this Agreement has been executed as a sealed instrument by the Camp, and its duly authorized officer, and by the Company and its duly authorized officer.

WEST HILLS DAY CAMP, INC.

BY: _____
Edward I. Gersh
Title: President

BY: _____
Kevin Gersh, Trustee
Title: Shareholder


BY: _____
Edward I. Gersh, as individual

BY: _____
Kevin Gersh, as individual

GERSH MANAGEMENT SERVICES, INC.

BY: _____
Kevin Gersh
Title: President

**D-80**







**60** The Roslyn Times, Friday, June 5, 2015      RT

## SCHOOL & CAMP DIRECTORY

### A unique learning environment for your unique child



When the traditional classroom isn't working, West Hills Academy provides a customized education. With 25 years of experience in education, we know how to help your child achieve the potential you know he or she is capable of. Come to our Open House to meet our staff, tour the grounds, enjoy refreshments, and find out more.

**Open House—Tuesday, June 16th**
6:30 to 8:30 pm

21 Sweet Hollow Road
Huntington, NY 11743
(Located on the grounds
of West Hills Day Camp)

RSVP to **631-901-3470** or
**info@westhillsacademy.com**.
Or simply stop by—walk-ins
are welcome.



**West Hills Academy**

WestHillsAcademy.com/learnmore



**Summer**
at the
**WALDORF SCHOOL**
of GARDEN CITY

**SOME GROUPS CLOSED**
PLEASE CALL FOR MORE INFORMATION

Register now for
## summer camp!

Some groups closing soon

## Monday, June 29 through
## Friday, August 7

* Ages 3-13
* Flexible Enrollment
* CIT Program for 14 – 16 year olds
* Optional aftercare to 6:00 p.m.

For information please call:
**516.742.3434 ext. 327**
225 Cambridge Avenue, Garden City, NY 11530
www.waldorfgarden.org/summerprogram



Gordon Burdie's

**CHECKMATE LACROSSE**

www.checkmatelacrosse.com

**Now registering for
Summer 2015!**